has suffered injury and will continue to suffer injury ; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

## COUNT XVII: UTILIZING STANDARDS OF CRITERIA, OR METHODS OF ADMINISTRATION THAT PERPETUATE THE DISCRIMINATION OF OTHERS THAT ARE SUBJECT TO COMMON ADMINISTRATIVE CONTROL: 42 U.S.C. s. 12112 (3)(B)

130. Plaintiff here repeats and realleges the allegations of paragraph 6 through 129 of this Complaint, the same as if said Paragraphs were expressly restated here.

131. In formal investigation proceedings held on April 4, 2002, April 23, 2002, April 24, 2002 and May 7, 2002, members of the TART admitted that Defendant's TART team concluded that the Defendant's Workplace Violence Policy required TART to regard mental illness as a threat whether or not TART perceived a threat.

132. In formal investigation proceedings held on April 4, 2002, April 23, 2002, April 24, 2002 and May 7, 2002, members of the TART admitted that Defendant's TART concluded that the Defendant's Workplace Violence Policy required TART to regard any person accused of threatening behavior to be regarded as having mental illness whether or not TART perceived threatening behavior..

133. In formal investigation proceedings held on April 4, 2002, April 23, 2002, April 24, 2002 and May 7, 2002, members of the TART admitted that Defendant's TART concluded that the Defendant's Workplace Violence Policy required TART to have any person accused of threatening behavior medically examined for mental illness whether or not TART perceived a threat.

134. By virtue of the willful conduct of Green, Warrington, Dunn, DePhillips, and DeModena, Defendant, through its agents, servants and employees, has designed, administered and interpreted Defendant's Workplace Violence Policy with arbitrary criteria and methods of administration that permit Defendant to arbitrarily and falsely

accuse employees of violent behavior and regard said employees as mentally ill in violation of 42 U.S.C. s. 12112 (3)(A). As a direct and Proximate result of Defendant's application of such arbitrary and false assertions against Plaintiff: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury ; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

### COUNT XVIII: LIMITING, SEGREGATING, OR CLASSIFYING AN EMPLOYEE IN A WAY THAT ADVERSELY AFFECTS THE OPPORTUNITIES OR STATUS OF SUCH APPLICANT OR EMPLOYEE BECAUSE OF THE DISABILITY OF SUCH APPLICANT OR EMPLOYEE: 42 U.S.C. 12112 (b)(1);

135. Plaintiff here repeats and realleges the allegations of paragraph 6 through 134 of this Complaint, the same as if said Paragraphs were expressly restated here.

136. On or about April 13, 2001, DePhillips sent copies of Plaintiff's alleged writings by electronic transfer to Defendant's Health Services Department to be reviewed by Dr. Tim Pinsky, Defendant's Director of Health Services.

137. On or before May 2, 2001, DePhillips directed Suzanne Allan, Defendant's Manager of Human Resources, to have Plaintiff medically disqualified from Plaintiff's position as Locomotive Engineer.

138. On or about May 2, 2001, Suzanne Allan, telephoned Marianne Letterio, RN, BSN, Defendant's Manager of Health Services, and directed Letterio to disqualify Plaintiff on the basis of Mental Disability posing a direct threat to Plaintiff and others.

139. On or about May 2, 2001, Letterio advised Suzanne Allan that Dr. Pinsky had reviewed materials that were reportedly written by Plaintiff and electronically transferred to Defendant's Health Services Department by DePhillips on or about April 11, 2001.

140. On or about May 2, 2001, Letterio advised Suzanne Allan that Dr. Pinsky and Defendant's Health Services Department had not found basis for medical disqualification in materials that were reportedly written by Plaintiff and electronically transferred to Defendant's Health Services Department on or about April 11, 2001.

141. On or about May 2, 2001, DePhillips contacted Larry Hriczak and Pat Dogerty of Amtrak's Corporate Labor Relations office at 30th Street Station in Philadelphia, Pennsylvania and asked for Hriczak and Dogerty to intervene and convince Defendant's Law Department officials and Pinsky to medically disqualify Plaintiff.

142. On or about May 3, 2001 DePhillips, Hriczak, Dogerty and officials of Defendant's Law Department directed Dr. Pinsky to medically disqualify Plaintiff. DePhillips instructed Dr. Pinsky to report Plaintiff with a mental disability that poses a direct threat to Plaintiff himself and others.

143. On or about, May 3, 2001, after receiving directions from DePhillips, Hriczak, Dogerty and officials of Defendant's Law Department to disqualify Plaintiff, Pinsky alleged in medical reports to various of Defendant's employees in Defendant's Health Services department and Corporate Headquarters stating that Plaintiff suffered form Bi-polar disorder and/or Personality disorder.

144. On or about May 3, 2001, Pinsky directed Letterio to advise O'Malley, DePhillips, Suzanne Allen and DeModena that Pinsky deemed Plaintiff medically disqualified pending a psychiatric evaluation and psychological testing.

145. On or about May 3, 2001 and at various times thereafter Dr. Pinsky alleged in reports to O'Malley, DeModena, DePhillips, Suzanne Allen and other of Defendant's

employees that Plaintiff's alleged Bi-polar and/or Personality disorder posed a direct threat to Plaintiff's self and others.

146. On or about May 3, 2001, Letterio, acting under the direction of Pinsky, sent an electronic mail to O'Malley, DeModena, DePhillips and Suzanne Allan informing various employees of the Defendant that Dr. Pinsky supported medical disqualification of Plaintiff because Plaintiff allegedly had Bi-polar and/or Personality disorder which allegedly posed a direct threat to Plaintiff's self and others.

147. On or about May 4, 2001 O'Malley medically disqualified Plaintiff from service in his position as Locomotive Engineer in Commuter Rail because Plaintiff allegedly had Bi-polar and/or Personality disorder which allegedly posed a direct threat to Plaintiff's self and others.

148. In investigation held on April 23, 2002 O'Malley admitted that when O'Malley disqualified Plaintiff from service in Plaintiff's position as Locomotive Engineer in commuter rail, O'Malley did not believe that any materials written by Plaintiff were threatening in any way.

149. In investigation held on April 23, 2002 O'Malley admitted that when O'Malley disqualified Plaintiff from service in Plaintiff's position as Locomotive Engineer in Commuter Rail, O'Malley did not believe that any materials written by Plaintiff were intended to communicate threats.

150. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff as suffering from mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder.

151. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff to be suffering from mental illness.

152. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff with having an impairment caused by mental

illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder.

153. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff as having an impairment due to mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder that substantially limits Plaintiff's ability to work.

154. On or about May 4, 2001, O'Malley disqualified Plaintiff from service in his position as Locomotive engineer in Commuter Rail because O'Malley regarded Plaintiff as having an impairment due to mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder that substantially limits Plaintiff's ability to work.

155. By virtue of the willful conduct of Pinsky, Hriczak, Dogerty, Suzanne Allen, and other of Defendants employees, Defendant, through its agents, servants and employees, has medically disqualified Plaintiff from his position as Locomotive Engineer in commuter rail service and by so doing Defendant has limited, segregated and classified Plaintiff in a way that adversely affects his opportunities and status as Locomotive Engineer on the basis of the alleged mental disability of Plaintiff with which Defendant regards Plaintiff. As a direct and proximate result of Defendant's actions: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury ; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

COUNT XIX: LIBEL AND DEFAMATION OF CHARACTER; COUNT XX:
RETALIATION FOR INDIVIDUAL AND SYSTEMIC ADVOCACY AND
COMMUNITY INVOLVEMENT: 29 U.S.C. 701 (c)(5); COUNT XXI: INVASION OF
PRIVACY: M.G.L.c. 214 s. 1B COUNT XXII: UNFAIR INFORMATION
PRACTICES: M.G.L. 66A; COUNT XXIII: DISCLOSURE OF PRIVILEGED
COMMUNICATION: M.G.L.c. 233 s. 20B; COUNT XXIV: PERSONAL INJURY:
45 U.S.C. s. 51 et seq.

156. Plaintiff here repeats and realleges the allegations of paragraph 6 through
155 of this Complaint, the same as if said Paragraphs were expressly restated here.

157. Beginning on or about May 3, 2001, Defendant's Medical Director, Dr. Tim
Pinsky began publishing a series of documents within various of Defendant's
organizational departments alleging Plaintiff to be suffering from a "severe psychiatric
disorder that presents a threat to not only [Plaintiff's] co-workers but to [Plaintiff] himself
and the traveling public". Dr. Pinsky repeated such allegations orally to various of
Defendant's administrative staff. including, but not limited to, DePhillips, O'Malley,
DeModena, and O'Bryan.

158. By virtue of the willful conduct of Pinsky, the Defendant, through its agent,
servant and employee, has written and distributed false statements regarding Plaintiff's
medical condition, state of mind and performance abilities. Defendant has maliciously
and menacingly used its authority as medical practitioner and holder of confidential
information to further enhance the credibility of written false statements regarding
medical condition, state of mind and performance abilities of Plaintiff. The Defendant
has: maliciously, menacingly, and unreasonably interfered with Plaintiffs privacy; abused
its authority as holder of confidential private information by allowing unauthorized access
to private information concerning Plaintiff in violation of M.G.L. s. 66A; and disclosed
privileged communications about the Plaintiff in order to enhance the credibility of false
statements regarding medical condition, state of mind and performance abilities of
Plaintiff. The Defendant, NRPC, through its agent, servant and employee, has
knowingly, willingly and intentionally libeled and defamed Plaintiff intending to

27

prejudice Plaintiff in his reputation, community standing, office, trade, business, or means of livelihood in order to undermine and disable employee. Defendant has disrespected Plaintiff's individual dignity, personal responsibility, self-determination, and pursuit of meaningful career. As a direct and Proximate result of Defendant's actions: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

### COUNT XXV: LIBEL AND DEFAMATION OF CHARACTER; COUNT XXVI: RETALIATION FOR INDIVIDUAL AND SYSTEMIC ADVOCACY AND COMMUNITY INVOLVEMENT: 29 U.S.C. 701 (c)(5); COUNT XXVII: UNFAIR LABOR PRACTICE, 45 U.S.C. s. 151 et seq.

159. Plaintiff here repeats and realleges the allegations of paragraph 6 through 158 of this Complaint, the same as if said Paragraphs were expressly restated here.

160. Beginning on or about May 4, 2001, O'Malley mailed, copied and distributed various letters primarily directed to the Brotherhood of Locomotive Engineers falsely stating: that Plaintiff was suffering from mental disorder and that said mental disorder justified a charge of workplace violence because the mental disorder which O'Malley alleged Plaintiff was suffering from posed a direct threat to Plaintiff and others.

161. By virtue of the willful conduct of O'Malley, the Defendant, through its agent, servant and employee, has written and distributed false statements regarding Plaintiff's medical condition, state of mind and performance abilities in order to discredit Plaintiff in union activities and community involvement. The Defendant, NRPC, through its agent, servant and employee, has knowingly, willingly and intentionally libeled and

defamed Plaintiff intending to prejudice Plaintiff in his reputation, community standing, office, trade, business, or means of livelihood. Defendant has disrespected Plaintiff's individual dignity, personal responsibility, self-determination, and pursuit of meaningful career. As a direct and Proximate result of Defendant's actions: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury ; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

COUNT XXVIII: LIBEL AND DEFAMATION OF CHARACTER;
COUNT XXIX: RETALIATION FOR INDIVIDUAL AND SYSTEMIC ADVOCACY
AND COMMUNITY INVOLVEMENT: 29 U.S.C. 701 (c)(5);
COUNT XXX: UNFAIR LABOR PRACTICE: 45 U.S.C. s. 151 et seq.

162. Plaintiff here repeats and realleges the allegations of paragraph 6 through 161 of this Complaint, the same as if said Paragraphs were expressly restated here.

163. Beginning on or about May 4, 2001, O'Malley mailed, copied and distributed various letters primarily directed to the Brotherhood of Locomotive Engineers alleging that Plaintiff's alleged writings indicated an obvious mental disorder that precluded the ability of Plaintiff to perform his duties.

164. On or about September 16, 2002, Delvine Okereke, Defendant's Manager of EEO Compliance, wrote and mailed a letter to the Massachusetts Commission Against Discrimination and falsely stated that Plaintiff "would like to see physical harm, if not death, come to Mr. DeModena".

165. Defendant has made no complaints regarding O'Bryan's publication or distribution of documents directed to Plaintiff which O'Bryan publicized and distributed on Defendant's property.

166. Defendant has made no complaints regarding publication or distribution of cartoons, altered newspaper articles, altered photographs or other documents depicting and identifying various of Defendant's employees when said documents were copied distributed publicized and distributed by employees other than Plaintiff on or off of Defendant's property.

167. By virtue of the conduct of O'Malley, Pinsky, Gaines and Okereke and other employees of Defendant, the Defendant, through its agents, servants and employees, has written false statements regarding Plaintiff's medical condition, state of mind and performance abilities. Defendant has discriminated generally against Plaintiff as regards to terms, conditions and privileges of employment in that Plaintiff's alleged writings were singled out for retribution in violation of 42 U.S.C. s. 21112. The Defendant, NRPC, through its agents, servants and employees, has libeled, slandered and defamed Plaintiff intending to prejudice Plaintiff in his reputation, community standing, office, trade, business, or means of livelihood. Plaintiff has suffered injury and will continue to suffer injury, because of Defendant's actions. As a result of Defendant's actions Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment. As a result of Defendant's actions: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; and Plaintiff is deprived of opportunities of community involvement. As a result of Defendant's actions Plaintiff is deprived of the usual terms and access to terms conditions and privileges of employment and opportunities for community involvement. As a result of Defendant's actions Plaintiff is deprived of gainful employment generally and Plaintiff is suffering from severe emotional distress with physical repercussions.

30

COUNT XXXI: LIBEL AND DEFAMATION OF CHARACTER;
XXXII: RETALIATION FOR INDIVIDUAL AND SYSTEMIC ADVOCACY AND
COMMUNITY INVOLVEMENT: 29 U.S.C. 701 (c)(5);

168.  Plaintiff here repeats and realleges the allegations of paragraph 6 through
167 of this Complaint, the same as if said Paragraphs were expressly restated here.

189.  Beginning on or about May 13, 2002, Deborah Gaines, Defendant's hearing
officer published a "Decision Letter" alleging that Plaintiff's alleged writings indicated
Plaintiff believed Plaintiff to be Lucifer.

190.  By virtue of the willful conduct of Gaines, the Defendant, through its agent,
servant and employee, has written and distributed false statements regarding Plaintiff's
medical condition, state of mind and performance abilities in order to discredit Plaintiff in
union activities and community involvement.  The Defendant, NRPC, through its agent,
servant and employee, has knowingly, willingly and intentionally libeled and defamed
Plaintiff intending to prejudice Plaintiff in his reputation, community standing, office,
trade, business, or means of livelihood.  Defendant has disrespected Plaintiff's individual
dignity, personal responsibility, self-determination, and pursuit of meaningful career.  As
a direct and Proximate result of Defendant's actions:  Plaintiff has suffered damage to his
professional reputation and reputation generally;  Plaintiff is deprived of gainful
employment in his chosen profession;  Plaintiff is deprived of opportunities of community
involvement;  Plaintiff is deprived of access to the usual  terms, conditions and privileges
of employment;  Plaintiff is deprived of gainful employment generally;  Plaintiff is
suffering from severe emotional distress with physical repercussions;  Plaintiff has
suffered injury and will continue to suffer injury ;  Plaintiff requires medical treatment,
will continue to require medical treatment and is deprived of means of such treatment.

COUNT XXXIII: EXAMINATIONS AND INQUIRIES DESIGNED TO SCREEN OUT
INDIVIDUALS WITH A DISABILITY, 42 U.S.C. s. 12112 (b) (7);
COUNT XXXIV : MEDICAL EXAMINATIONS AND INQUIRIES DESIGNED TO
SCREEN OUT AND DISCRIMINATE AGAINST INDIVIDUALS WITH A
DISABILITY, 42 U.S.C. s. 12112 (d) (1), 42 U.S.C. s. 12112 (d) (4);

31

COUNT XXXV:  DISRESPECT FOR INDIVIDUAL DIGNITY AND PERSONAL
RESPONSIBILITY: 29 U.S.C. s. 701 (c)(1);
COUNT XXXVI: DISRESPECT FOR PRIVACY, RIGHTS AND EQUAL ACCESS: 29
U.S.C. 701 (c)(2);
COUNT XXXVII:  UNFAIR INFORMATION PRACTICES M.G.L.c. 66a;
COUNT XXIII:  DISCLOSURE OF PRIVILEGED MEDICAL COMMUNICATIONS:
M.G.L.c. 233 S. 20B,
COUNT XXXVIII:  INVASION OF PRIVACY: M.G.L.c. 214 s. 1B

191. Plaintiff here repeats and realleges the allegations of paragraph 6 through 190 of this Complaint, the same as if said Paragraphs were expressly restated here.

192. On various occasions between on or about May 4, 2001 and on or about September 10, 2001 O'Malley and Pinsky (through his subordinate Letterio) directed Plaintiff to undergo psychiatric evaluations and extensive psychological testing to be conducted and arranged by Dr. Russell Vasile.

193. Dr. Russell Vasile is a practicing psychiatrist licensed to practice psychiatry by the Commonwealth of Massachusetts Board of Registration in Medicine.

194. On or about May 20, 2001, Plaintiff's personal Physician advised him against submitting to Defendant's requirements for psychiatric evaluation and extensive psychological testing.

195. On or about May 24, 2001, Plaintiff wrote to Pinsky at 30th Street Station in Philadelphia, Pennsylvania and asked Pinsky for Plaintiff's medical file.

196. On or about May 24, 2001, Plaintiff wrote to Pinsky and asked Pinsky to substantiate specific medical basis for Defendant to disqualify Plaintiff.

197. On or about May 24, 2001, Plaintiff wrote to Pinsky and asked Pinsky to substantiate specific medical credentials qualifying Defendant and Pinsky to disqualify Plaintiff.

198. Plaintiff's Requests to Pinsky specified in allegations 163, 162 and 1694 were repeated as Freedom of Information Act requests on July 27, 2001.

199. Neither Defendant nor Pinsky answered requests made of Defendant and Pinsky in allegations 163 to 164.

32

200.  As a direct and proximate result of Pinsky's and O'Malley's actions and omissions, the Defendant, through its agents, servants and employees has: obstructed and impeded Plaintiff's access to information which is necessary to address personal health maintenance and remedies; wantonly and maliciously invaded Plaintiff's personal and private affairs; attempted to expose Plaintiff's personal emotions, shames, fears and feelings up to scorn, ridicule and humiliation in violation of M.G.L. 214 s. 1B; interfered with Plaintiff's personal health maintenance and treatment in violation of 42 U.S.C. s. 12112 (b) (7); endangered Plaintiff with frivolous neglectful medical intervention; distorted and released confidential medical information in violation of M.G.L.c. 20B in order to exacerbate and disable Plaintiff's medical condition; and drive Plaintiff from usual means of employment.  As a direct and proximate result of Defendant's actions Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; Plaintiff is deprived of gainful employment generally; and Plaintiff is suffering from severe emotional distress with physical repercussions.  Plaintiff requires medical treatment and is deprived of medical treatment and is unable to procure medical treatment.

### COUNT XXXIX:  HARASSMENT AND DENIAL OF REQUESTS FOR REASONABLE ACCOMMODATION: 42 U.S.C. s. 12112 (5) (A) XL: NEGLIGENCE: 45 U.S.C. s. 51 et seq.

201.  Plaintiff here repeats and realleges the allegations of paragraph 6 through 200 of this Complaint, the same as if said Paragraphs were expressly restated here.

202.  On or about June 14, 2001, Plaintiff advised O'Malley that O'Malley's intervention in Plaintiff's medical affairs was medically harmful.

203.  On or about June 27, 2001, Plaintiff and O'Bryan met with Dr. Russell Vasile and Plaintiff asked Vasile for an explanation of specific medical basis for disqualification of Plaintiff.

204. On or about June 27, 2001 Plaintiff and O'Bryan met with Vasile and Plaintiff asked Vasile for reasonable accommodation in evaluating Plaintiff's medical condition. Specifically, besides asking for explanation of specific medical basis for disqualification of Plaintiff, Plaintiff asked for the opportunity to confront Defendant employee's directly to answer any concerns about "materials reportedly written by [Plaintiff]".

205. On or about June 27, 2001 Vasile told Plaintiff and O'Bryan that Vasile would have to speak to Defendant to suggest that Defendant should find some other resolution to Defendant's disagreements with Plaintiff that would not require Plaintiff to undergo a forced, non-confidential psychiatric evaluation and extensive psychological testing.

206. On or about July 16, 2001 Vasile suggested to Pinsky that Defendant should find resolution to Defendant's disagreements with Plaintiff that would not require Plaintiff to undergo a forced, non-confidential psychiatric evaluation and extensive psychological testing.

207. On or about July 16, 2001 Pinsky refused to accept Vasile's suggestion and asked Vasile to write a letter stating that Plaintiff refused to undergo psychiatric evaluation.

208. On or about July 16, 2001 Vasile wrote a letter to Defendant's Health Services Department stating that Plaintiff declined to submit to psychiatric evaluation.

209. On or about July 24, 2001 O'Malley refused Plaintiff's requests for reasonable accommodation and accused Plaintiff of refusing to cooperate with "the physician" on June 27, 2001.

210. As a direct and proximate result of Defendant's intentional denial of reasonable accommodation in violation of 42 U.S.C. s. 12112 (5) (A), Plaintiff is exposed to intentional defamation and stigmatization by Defendant. Plaintiff is deprived of means to guarantee protection of Plaintiff's own health and well-being, Plaintiff has suffered

damage to his professional reputation and reputation generally, Plaintiff is deprived of gainful employment in his chosen profession, Plaintiff is deprived of gainful employment generally and Plaintiff is suffering from severe emotional distress with physical repercussions.

COUNT XLI: RETALIATION: COERCION, INTERFERENCE AND
INTIMIDATION: SABOTAGE OF MITIGATING MEASURES: 42 U.S.C. s. 12112 (5)
(B),
COUNT XLII: 42 U.S.C. s. 12203 (a),  COUNT XLIII: 42 U.S.C. s. 12203 (b),

211.  Plaintiff here repeats and realleges the allegations of paragraph 6 through 210 of this Complaint, the same as if said Paragraphs were expressly restated here.

212.  Beginning on or about January 25, 1985, Plaintiff consulted with Dr. Martha Stark of 4 Ripley Road in Newton, Massachusetts.

213.  At various times from on or about January 25, 1985, Plaintiff has consulted Dr. Martha Stark for medical evaluations and assistance in monitoring, controlling and treating for possible signs and symptoms of mental illness.

214.  At various times from 1983 until on or about May 17, 2001, Plaintiff advised Defendant that he was monitoring his mental health by consulting professional resources.

215.  At various times from on or about February 1, 1995 Plaintiff has consulted with Dr. Ann Gurion of Cambridge, Massachusetts while continuing to consult with Dr. Martha Stark and Plaintiff consulted with both doctors in order to continue monitoring and maintaining his mental health.

216.  On or about June 27, 2001, Plaintiff spoke with Vasile to request reasonable accommodation militating against any threat to Plaintiff that might be caused by psychiatric evaluation and extensive psychological testing.  As part of such accommodation Plaintiff requested that he be able to discuss concerns of Amtrak officials directly with said officials voicing such concerns.

35

217. On or about June 27, 2001 and at various times between June 27, 2001 and September 10, 2001, Plaintiff spoke with Vasile to request reasonable accommodation in that Plaintiff requested his medical file and an opportunity to confront medical concerns independently before discussing evaluation with Pinsky.

218. On or about August 16, 2001, Plaintiff asked Dr. Russell Vasile for reasonable accommodation in the form of limited disclosure of confidential information from evaluation.

219, On or about July 27, 2001 and on various other occasions between May 4, 2001 and September 10, 2001, Vasile declined to discuss with Plaintiff any reasonable accommodation that would militate against any threat to Plaintiff that would be caused by non-confidential psychiatric evaluation and extensive psychological testing.

220. On or about July 27, 2001, Vasile declined to discuss scheduling for evaluation.

221. On or about July 31, 2001, Plaintiff requested reasonable accommodation from Defendant and Dr. Pinsky whereby Plaintiff would be allowed to answer concerns directly to the Defendant about "materials reportedly written by [Plaintiff]".

222. On various occasions between July 27, 2001 and September 10, 2001 Plaintiff conducted telephone conversations with Vasile in which Plaintiff requested reasonable accommodation whereby a limited report could be made by Vasile to Defendant in which report only information assuring Plaintiff's qualification for service would be necessary.

223. At various times between on or about July 27, 2001 and September 10, 2001, Vasile declined to discuss special accommodation.

224. At various times between on or about July 27, 2001 and September 10, 2001, Vasile told Plaintiff that Vasile would tell Defendant to get another doctor.

225. At various times between on or about July 27, 2001 and September 10, 2001, Vasile discussed Plaintiff's proposed reasonable accommodations with Pinsky.

226. At various times between on or about July 27, 2001 and September 10, 2001, Pinsky asked Vasile to write a letter to Defendant's Health Services Department that Plaintiff "decided not to present for evaluation".

227. On June 14, 2003, Plaintiff asked O'Malley for reasonable accommodation in a request to address medical concerns free of O'Malley's intervention.

228. In response to Plaintiff's requests for reasonable accommodation O'Malley wrote letters to Plaintiff accusing Plaintiff of refusing to cooperate with the Physician.

229. O'Malley threatened Plaintiff with dismissal for asking for reasonable accommodation.

230. On or about August 28, 2001, Vasile wrote a letter to Defendant's Health Services Department and stated that Plaintiff "decided not to present for evaluation".

231. On or about September 10, 2001, O'Malley began formal proceedings to charge Plaintiff with insubordination in which Defendant portrayed Plaintiff's request for reasonable accommodation as insubordination.

232. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Defendant issued decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared that Plaintiff believed Plaintiff himself to be Lucifer, Prince of Darkness.

233. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Defendant issued decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared Plaintiff to be suffering from Bi-Polar disorder or Personality Disorder.

234. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Defendant issued decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared that Plaintiff was insubordinate when Plaintiff asked for reasonable accommodation.

37

235. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Defendant issued decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared that Gaines credited Plaintiff's testimony that Plaintiff believed that submission to a forced non-confidential psychiatric evaluation would cause Plaintiff injury and harm.

236. On or about May 13, 2002, Francis J. O'Connor, Assistant General Manager in service to Defendant, dismissed Plaintiff in all capacities in his position as Locomotive Engineer in commuter rail service.

237. As a direct and proximate result of Defendant's intentional retaliation against Plaintiff, Plaintiff is deprived of means of protection of health and well-being, Plaintiff is defamed, misrepresented and stigmatized, Plaintiff has suffered damage to his professional reputation and reputation generally, Plaintiff is deprived of gainful employment in his chosen profession, Plaintiff is deprived of gainful employment generally and Plaintiff is suffering from severe emotional distress with physical repercussions.

COUNT XLIV: LIBEL AND DEFAMATION OF CHARACTER; RETALIATION FOR
INDIVIDUAL AND SYSTEMIC ADVOCACY AND COMMUNITY
INVOLVEMENT: 29 U.S.C. 701 (c)(5);
COUNT XLV: DISCRIMINATION GENERALLY: 42 U.S.C. s. 12112

238. Plaintiff here repeats and realleges the allegations of paragraph 6 through 237 of this Complaint, the same as if said Paragraphs were expressly restated here.

239. On or about August, 16, 2002, at an appeal of dismissal of Plaintiff, Pat Dogerty, Manager of Labor Relations in Philadelphia Pennsylvania, declared that Plaintiff was dismissed from Plaintiff's position as Locomotive Engineer in commuter rail service because Plaintiff believes Plaintiff himself to be the devil.

240. By virtue of the willful conduct of Dogerty, the Defendant, through its agent, servant and employee, has written and distributed false statements regarding Plaintiff's medical condition, state of mind and performance abilities in order to discredit Plaintiff in

38

union activities and community involvement.  The Defendant, NRPC, through its agent, servant and employee, has knowingly, willingly and intentionally libeled and defamed Plaintiff intending to prejudice Plaintiff in his reputation, community standing, office, trade, business, and means of livelihood.  Defendant has disrespected Plaintiff's individual dignity, personal responsibility, self-determination, and pursuit of meaningful career in violation of the Rehabilitation Act of 1973: 29 U.S.C. s. 701 (c)(1).  As a direct and Proximate result of Defendant's actions:  Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession and discriminated against Plaintiff by reason of disability in regard to discharge of Plaintiff in violation of 42 U.S.C. s. 12112; Plaintiff is deprived of opportunities of community involvement;  Plaintiff is deprived of access to the usual terms, conditions and privileges of employment;  Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions;  Plaintiff has suffered injury and will continue to suffer injury ; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

COUNT XLVI: HARASSMENT, WRONGFUL DISCHARGE AND COERCION IN
VIOLATION OF PUBLIC POLICY: FREE SPEECH AND RELIGION
DISCRIMINATION ON THE BASIS OF RELIGION: 42 U.S.C. 2000e.

241.  Plaintiff here repeats and realleges the allegations of paragraph 6 through 240 of this Complaint, the same as if said Paragraphs were expressly restated here.

242.  O'Malley disqualified Plaintiff based on "materials reportedly written by [Plaintiff]."

243.  The writings on which O'Malley based disqualification referenced artistic expression, religious expression and opinion on FRA regulations.

244. Medical disqualification and "materials reportedly written by [Plaintiff]" were basis for O'Connor terminating Plaintiff on or about May 13, 2002.

245. By virtue of the willful conduct of O'Malley and O'Connor, the Defendant, through its agents, servants and employees has retaliated against Plaintiff to limit exercise of free expression and religion.

## LEAVE TO AMEND COMPLAINT

On information and belief this action will reveal cause for action based on the Duties of Fair Representation and further cause based on the Federal Employers Liability Act and the Railway Labor Act. Plaintiff seeks leave to amend this complaint when such cause or causes are ascertained.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff prays that this Court hold the Defendants individually, jointly or severally liable and enter judgment against the Defendants, or any of the Defendants. Accordingly, Plaintiff prays that this Court enter Judgment in favor of Plaintiff and afford the following relief:

Injunctive relief to reinstate Plaintiff in all capacities as Locomotive Engineer.

Judgment for damages in a fair amount exceeding 1,000,000.00, plus interest from the date of the commencement of this action, costs at reasonable attorney's fee, and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

_Joseph T. Carmack_ _____ Date: May 3, 2003

Joseph T. Carmack, Pro Se. 398 Columbus Ave. PMB 130 Boston, MA 02116-6008
PH: 617/536-0772

### Certificate of Service

I, Joseph T. Carmack, hereby certify that a true copy of the above document was served upon the attorney of record for the defendant party, Steven E. Hughes, NRPC, by first class mail, postage prepaid, to: Steven E. Hughes, One Liberty Square - 6th Floor, Boston, MA 02109. _Joseph T. Carmack_ Date: May 3, 2003.

Joseph T. Carmack, Plaintiff, Pro Se.