Engineer in Commuter Rail, O'Malley did not believe that any materials written by Plaintiff were intended to communicate threats.

279. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff as suffering from mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder.

280. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff to be suffering from mental illness.

281. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff with having an impairment caused by mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder.

282. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff as having an impairment due to mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder that substantially limits Plaintiff's ability to work.

283. On or about May 4, 2001, O'Malley disqualified Plaintiff from service in his position as Locomotive engineer in Commuter Rail because O'Malley regarded Plaintiff as having an impairment due to mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder that substantially limits Plaintiff's ability to work.

284. By virtue of the willful conduct of Pinsky, Hriczak, Dogerty, Suzanne Allen, and other of Defendants employees, Defendant, through its agents, servants and employees, has medically disqualified Plaintiff from his position as Locomotive Engineer in commuter rail service and by so doing Defendant has limited, segregated and classified Plaintiff in a way that adversely affects his opportunities and status as Locomotive Engineer on the basis of the alleged mental disability of Plaintiff with which Defendant regards Plaintiff. Defendant has collected false information about Plaintiff and has

41

otherwise collected or maintained more personal data on Plaintiff than are reasonably necessary for the performance of Defendant's statutory functions in violation of M.G.L. 66A ss. 1 and 2..As a direct and proximate result of Defendant's actions: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury ; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

### IV: EXAMINATIONS AND INQUIRIES DESIGNED TO SCREEN OUT INDIVIDUALS WITH A DISABILITY, 42 U.S.C. s. 12112 (b) (7); MEDICAL EXAMINATIONS AND INQUIRIES DESIGNED TO SCREEN OUT AND DISCRIMINATE AGAINST INDIVIDUALS WITH A DISABILITY, 42 U.S.C. s. 12112 (d) (1), 42 U.S.C. s. 12112 (d) (4); VIOLATION OF RIGHTS OF A MENTALLY ILL PERSON, U.S.C. 42 ss.. 10841

285. Plaintiff here repeats and realleges the allegations of paragraph 6 through 284 of this Complaint, the same as if said Paragraphs were expressly restated here.

286. On various occasions between on or about May 4, 2001 and on or about September 10, 2001 O'Malley and Pinsky (through his subordinate Letterio) directed Plaintiff to undergo psychiatric evaluations and extensive psychological testing to be conducted and arranged by Dr. Russell Vasile.

287. Dr. Russell Vasile is a practicing psychiatrist licensed to practice psychiatry by the Commonwealth of Massachusetts Board of Registration in Medicine.

288. On or about May 20, 2001, Plaintiff's personal Physician advised him against submitting to Defendant's requirements for psychiatric evaluation and extensive psychological testing.

289. On or about May 24, 2001, Plaintiff wrote to Pinsky at 30th Street Station in Philadelphia, Pennsylvania and asked Pinsky for Plaintiff's medical file.

290. On or about May 24, 2001, Plaintiff wrote to Pinsky and asked Pinsky to substantiate specific medical basis for Defendant to disqualify Plaintiff.

291. On or about May 24, 2001, Plaintiff wrote to Pinsky and asked Pinsky to substantiate specific medical credentials qualifying Defendant and Pinsky to disqualify Plaintiff.

292. Plaintiff's Requests to Pinsky specified in allegations 289, 290 and 291 were repeated as Freedom of Information Act requests on July 27, 2001.

293. Neither Defendant nor Pinsky answered requests made of Defendant and Pinsky in allegations 289 to 294

294. On or about April 4, 2002, April 23, 2002, April 24, 2002 and May 7, 2002, Rae and Deborah Gaines, Defendant hearing officer acting as agent of Defendant, conducted an investigation of Plaintiff without probable cause under the pretense of insubordination and said investigation was conducted to in order to induce Plaintiff, under threat of termination, to reveal mental impairments that would prevent Plaintiff from safely performing the duties Locomotive Engineer.

295. As a direct and proximate result of Pinsky's and O'Malley's actions and omissions, the Defendant, through its agents, servants and employees has: obstructed and impeded Plaintiff's access to information which is necessary to address personal health maintenance and remedies; wantonly and maliciously invaded Plaintiff's personal and private affairs; attempted to expose Plaintiff's personal emotions, shames, fears and feelings up to scorn, ridicule and humiliation in violation of M.G.L. 214 s. 1B; interfered with Plaintiff's personal health maintenance and treatment in violation of 42 U.S.C. s. 12112 (b) (7); endangered Plaintiff with frivolous neglectful medical intervention; distorted and released confidential medical information in violation of

43

M.G.L.c. 233 20B and M.G.L. c. 66A ss.. 1 and 2 in order to exacerbate and disable

Plaintiff's medical condition; and drive Plaintiff from usual means of employment.

Plaintiff was coerced to submit to examinations without legitimate business or medical

basis. Plaintiff was denied access, upon request, to medical and mental health care

records in violation M.G.L. c. 66A ss.. 1 and 2 and U.S.C. 42 ss. 10841 (1)(G) and (1)(I).

As a direct and proximate result of Defendant's actions Plaintiff has suffered damage to

his professional reputation and reputation generally; Plaintiff is deprived of gainful

employment in his chosen profession; Plaintiff is deprived of gainful employment

generally; and Plaintiff is suffering from severe emotional distress with physical

repercussions. Plaintiff requires medical treatment and is deprived of medical treatment

and is unable to procure medical treatment.

### V. HARASSMENT AND DENIAL OF REQUESTS FOR REASONABLE ACCOMMODATION: 42 U.S.C. s. 12112 (5) (A); DENIAL OF RIGHT OF INFORMED CONSENT AND PARTICIPATION OF MENTALLY ILL PERSON IN PLANNING OF MENTAL HEALTH TREATMENTS AND PROCEDURES, DENIAL OF RIGHT TO ACCESS, UPON REQUEST, TO MENTAL HEALTH CARE RECORDS 42 U.S.C. s. 10841 (C) (i-vi)(D)(H)(I)

296. Plaintiff here repeats and realleges the allegations of paragraph 6 through

295 of this Complaint, the same as if said Paragraphs were expressly restated here.

297. On or about June 14, 2001, Plaintiff advised O'Malley that O'Malley's

intervention in Plaintiff's medical affairs was medically harmful.

298. On or about June 27, 2001, Plaintiff and O'Bryan met with Dr. Russell

Vasile and Plaintiff asked Vasile for an explanation of specific medical basis for

disqualification of Plaintiff.

299. On or about June 27, 2001 Plaintiff and O'Bryan met with Vasile and

Plaintiff asked Vasile for reasonable accommodation in evaluating Plaintiff's medical

condition. Specifically, besides asking for explanation of specific medical basis for

disqualification of Plaintiff, Plaintiff asked for the opportunity to confront Defendant

employee's directly to answer any concerns about "materials reportedly written by

[Plaintiff]". Plaintiff also asked that any examination address only specific medical concerns of which Plaintiff would be informed in writing.

300. On or about June 27, 2001 Vasile told Plaintiff and O'Bryan that Vasile would have to speak to Defendant to suggest that Defendant should find some other resolution to Defendant's disagreements with Plaintiff that would not require Plaintiff to undergo a forced, non-confidential psychiatric evaluation and extensive psychological testing.

301.. On or about July 16, 2001 Vasile suggested to Pinsky that Defendant should find resolution to Defendant's disagreements with Plaintiff that would not require Plaintiff to undergo a forced, non-confidential psychiatric evaluation and extensive psychological testing.

302. On or about July 16, 2001 Pinsky refused to accept Vasile's suggestion and asked Vasile to write a letter to Defendant falsely stating that Plaintiff refused to undergo psychiatric evaluation.

303. On or about July 16, 2001 Vasile wrote a letter to Defendant's Health Services Department falsely stating that Plaintiff declined to submit to psychiatric evaluation.

304. On or about July 24, 2001 O'Malley refused Plaintiff's requests for reasonable accommodation and falsely accused Plaintiff of refusing to cooperate with "the physician" on June 27, 2001.

305. As a direct and proximate result of Defendant's intentional denial of reasonable accommodation in violation of 42 U.S.C. s. 12112 (5) (A), Plaintiff is exposed to intentional defamation and stigmatization by Defendant. Plaintiff is deprived of means to guarantee protection of Plaintiff's own health and well-being, Plaintiff has suffered damage to his professional reputation and reputation generally, Plaintiff is deprived of gainful employment in his chosen profession, Plaintiff is deprived of gainful employment

45

generally and Plaintiff is suffering from severe emotional distress with physical repercussions.

### VI. RETALIATION: COERCION, INTERFERENCE AND INTIMIDATION: SABOTAGE OF MITIGATING MEASURES: 42 U.S.C. s. 12112 (5) (B), COUNT XLII: 42 U.S.C. s. 12203 (a),  COUNT XLIII: 42 U.S.C. s. 12203 (b),DENIAL OF RIGHT OF GRIEVANCE OF MENTALLY ILL PERSON AND REPRISAL 42 U.S.C. s. 10841 (1) (L) (N).

306.  Plaintiff here repeats and realleges the allegations of paragraph 6 through 305 of this Complaint, the same as if said Paragraphs were expressly restated here.

307.  Beginning on or about January 25, 1985, Plaintiff consulted with Dr. Martha Stark of 4 Ripley Road in Newton, Massachusetts.

309.  At various times from on or about January 25, 1985, Plaintiff has consulted Dr. Martha Stark for medical evaluations and assistance in monitoring, controlling and treating for possible signs and symptoms of mental illness.

310.  At various times from 1983 until on or about May 17, 2001, Plaintiff advised Defendant that he was monitoring his mental health by consulting professional resources.

311.  At various times from on or about February 1, 1995 Plaintiff has consulted with Dr. Ann Gurian of Cambridge, Massachusetts while continuing to consult with Dr. Martha Stark and Plaintiff consulted with both doctors in order to continue monitoring and maintaining his mental health.

312.  On or about June 27, 2001, Plaintiff spoke with Vasile to request reasonable accommodation militating against any threat to Plaintiff that might be caused by psychiatric evaluation and extensive psychological testing.  As part of such accommodation Plaintiff requested that he be able to discuss concerns of Amtrak officials directly with said officials voicing such concerns.

313. On or about June 27, 2001 and at various times between June 27, 2001 and September 10, 2001, Plaintiff spoke with Vasile or wrote to Pinsky to request reasonable accommodation in that Plaintiff requested his medical file and an opportunity to confront medical concerns independently before discussing evaluation with Pinsky or Vasile.

314. On or about August 16, 2001, Plaintiff asked Dr. Russell Vasile for reasonable accommodation in the form of limited disclosure of confidential information from evaluation.

315, On or about July 27, 2001 and on various other occasions between May 4, 2001 and September 10, 2001, Vasile declined to discuss with Plaintiff any reasonable accommodation that would militate against any threat to Plaintiff that would be caused by non-confidential psychiatric evaluation and extensive psychological testing.

316. On or about July 27, 2001, Vasile declined to discuss scheduling for evaluation.

317. On or about July 31, 2001, Plaintiff requested reasonable accommodation from Defendant and Dr. Pinsky whereby Plaintiff would be allowed to answer concerns directly to the Defendant about "materials reportedly written by [Plaintiff]".

318. On various occasions between July 27, 2001 and September 10, 2001 Plaintiff conducted telephone conversations with Vasile in which Plaintiff requested reasonable accommodation whereby a limited report could be made by Vasile to Defendant in which report only information assuring Plaintiff's qualification for service would be necessary.

319. At various times between on or about July 27, 2001 and September 10, 2001, Vasile declined to discuss special accommodation.

316. At various times between on or about July 27, 2001 and September 10, 2001, Vasile told Plaintiff that Vasile would tell Defendant to get another doctor.

320. At various times between on or about July 27, 2001 and September 10, 2001, Vasile discussed Plaintiff's proposed reasonable accommodations with Pinsky.

47

321. At various times between on or about July 27, 2001 and September 10, 2001, Pinsky asked Vasile to write a letter to Defendant's Health Services Department falsely stating that Plaintiff "decided not to present for evaluation".

322. On June 14, 2003, Plaintiff asked O'Malley for reasonable accommodation in a request to address medical concerns free of O'Malley's intervention.

323. In response to Plaintiff's requests for reasonable accommodation O'Malley wrote letters to Plaintiff accusing Plaintiff of refusing to cooperate with the Physician.

324. O'Malley threatened Plaintiff with dismissal for asking for reasonable accommodation.

325. On or about August 28, 2001, Vasile wrote a letter to Defendant's Health Services Department and falsely stated that Plaintiff "decided not to present for evaluation".

326. On or about September 10, 2001, O'Malley began formal proceedings to charge Plaintiff with insubordination in which Defendant portrayed Plaintiff's request for reasonable accommodation as insubordination.

327. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Defendant issued decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared that Plaintiff believed Plaintiff himself to be Lucifer, Prince of Darkness.

328. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Defendant issued decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared Plaintiff to be suffering from Bi-Polar disorder or Personality Disorder.

329. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Defendant issued decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared that Plaintiff was insubordinate when Plaintiff asked for reasonable accommodation.

330. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Defendant issued decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared that Gaines credited Plaintiff's testimony that Plaintiff believed that submission to a forced non-confidential psychiatric evaluation would cause Plaintiff injury and harm.

331. On or about May 13, 2002, Francis J. O'Connor, Assistant General Manager in service to Defendant, dismissed Plaintiff in all capacities in his position as Locomotive Engineer in commuter rail service.

332. When employee asked for special accommodation, Defendant retaliated against Plaintiff against employee by charging Plaintiff. with insubordination and terminating Plaintiff

333. By denying requests for special accommodation, Defendant has denied Plaintiff the right: to appropriate and available alternative treatments, services and types of providers of mental health services; the right to appropriate treatment and related services in a setting and under conditions that are the most supportive of Plaintiff personal liberty; to an individualized, written treatment of service plan; to any appropriate and available alternative treatments, services and types of providers of mental health services; not to receive a mode or course of treatment, established pursuant to a treatment plan, in the absence of Plaintiff's informed, voluntary, written consent to such mode or treatment; to access, upon request, to Plaintiff's mental health care records.

334. As a direct and proximate result of Defendant's intentional retaliation against Plaintiff, Plaintiff is deprived of means of protection of health and well-being, Plaintiff is defamed, misrepresented and stigmatized, Plaintiff has suffered damage to his professional reputation and reputation generally, Plaintiff is deprived of gainful employment in his chosen profession, Plaintiff is deprived of gainful employment generally and Plaintiff is suffering from severe emotional distress with physical repercussions.

VII. DISCRIMINATION GENERALLY: 42 U.S.C. s. 12112

335. Plaintiff here repeats and realleges the allegations of paragraph 6 through 334 of this Complaint, the same as if said Paragraphs were expressly restated here.

336. On or about April 11, 2001, DeModena and DePhillips prepared workplace violence reports which distorted, stigmatized and characterized Plaintiff's ideas, religious beliefs and writings as the ideas, religious beliefs and writings of a mentally ill person.

337. By e-mail, dated on or about April 13, 2001, DePhillips outlined a ruse or "scenario" for a chain of events that would lead to Plaintiffs disqualification and termination from employment and all other rights, terms and conditions of employment because DeModena, DePhillips and O'Malley and others regarded Plaintiff with mental illness that caused DeModena, DePhillips and O'Malley to "have concern for [Plaintiff's] own well-being and by extension, the traveling public".

338. On or about August, 16, 2002, at an appeal of dismissal of Plaintiff, Pat Dogerty, Manager of Labor Relations in Philadelphia Pennsylvania, declared that Plaintiff was dismissed from Plaintiff's position as Locomotive Engineer in commuter rail service because Plaintiff believes Plaintiff himself to be the devil.

339. By virtue of the willful conduct of Dogerty, the Defendant, through its agent, servant and employee, has written and distributed false statements regarding Plaintiff's medical condition, state of mind and performance abilities in order to discredit Plaintiff in union activities and community involvement. The Defendant, NRPC, through its agent, servant and employee, has knowingly, willingly and intentionally libeled and defamed Plaintiff intending to prejudice Plaintiff in his reputation, community standing, office, trade, business, and means of livelihood. Defendant has disrespected Plaintiff's individual dignity, personal responsibility, self-determination, and pursuit of meaningful career in violation of the Rehabilitation Act of 1973: 29 U.S.C. s. 701 (c)(1). As a direct and Proximate result of Defendant's actions: Plaintiff has suffered damage to his

professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession and discriminated against Plaintiff by reason of disability in regard to discharge of Plaintiff in violation of 42 U.S.C. s. 12112; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury ; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

COUNT FOUR:
INTERFERENCE WITH RIGHTS
M.G.L. c. 12, ss. 11H, 11I; M.G.L. 265 ss.. 37

340. Plaintiff here repeats and realleges the allegations of paragraph 6 through 339 of this Complaint, the same as if said Paragraphs were expressly restated here.

341. Throughout the period of Plaintiff's employment with Defendant, Plaintiff actively participated in railroad unions by means of written discussions designed to promote safe and effective rail transportation service.

342. Throughout the period of Plaintiff's employment with Defendant, Plaintiff actively participated in railroad unions by means of written discussions designed to promote railworker and rail administrator compliance with railroad company rules, policies and procedures.

343. Throughout the period of Plaintiff's employment with Defendant, Plaintiff actively participated in railroad unions by means of written discussions designed to promote railworker and rail administrator compliance with federal regulations.

344. Plaintiff's written discussions include a variety of literary techniques including: fictional and literary references; religious, philosophical and moral references; allegory, satire, metaphor, simile, etc.

345.  At various times, beginning on or about April 25, 2000, DePhillips, DeModena, O'Malley and other administrative agents of Defendant began a campaign to inhibit and quell Plaintiff's union and safety campaigns.

346.  At various times, beginning on or about April 25, 2000, DePhillips, DeModena, O'Malley and other administrative agents of Defendant began a campaign to inhibit and prevent Plaintiff from running for union office.

347.  On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servant and employees of Defendant created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and characterized Plaintiff's ideas, religious beliefs and writings as the ideas, religious beliefs and writings of a mentally ill person.

348.  On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servants and employees of Defendant created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and interpreted Plaintiff's ideas, religious beliefs and writings as threats.

349.  On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servant and employees of Defendant accused Plaintiff of workplace violence for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

350.  On or about May 4, 2004, Defendant medically disqualified Plaintiff from employment in his position as locomotive engineer with defendant for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

351.  Beginning on or about April 4, 2001 Defendant harassed, retaliated against Plaintiff and otherwise coerced Plaintiff with orders to publicly expose and reveal private matters and personal medical information for writing a letter expressing personal ideas,

political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

352. Beginning on or about September 10, 2001, Defendant subjected Plaintiff to internal investigation and charges of insubordination for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

353. On or about May 13, 2001, Defendant, through its agents, servants and employees, terminated Plaintiff from his employment with Defendant as Locomotive Engineer because Plaintiff wrote a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

354. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Defendant has by force and threat of force willfully injured, intimidated, interfered with, oppressed and threatened Plaintiff in the free exercise and enjoyment of rights and privileges secured to Plaintiff by the constitution and laws of the United States of America and the Commonwealth of Massachusetts including, but not limited to the right of free, speech and assembly (Amendment 1 of the Constitution of the Unitited States), the right to toil in Plaintiffs chosen profession and the right to organize and participate in a railway labor organization (USCA 45 ss.. 151 et. seq.).

356. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Plaintiff has been unlawfully, illegally, improperly and maliciously deprived of his means of livelihood and all opportunity for Plaintiff to procure work of equal dignity and character has been foreclosed to Plaintiff, and Plaintiff has been humiliated and suffered great pain, and endured great mental suffering.

COUNT FIVE:
UNFAIR LABOR PRACTICES
U.S.C.A. 45 ss. 151 et. seq.

357. Plaintiff here repeats and realleges the allegations of paragraph 6 through 356 of this Complaint, the same as if said Paragraphs were expressly restated here.

358. On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servant and employees of Defendant created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and characterized Plaintiff's union activities as the activities of a mentally ill person.

359. On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servant and employees of Defendant created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and interpreted Plaintiff's union activities as threats.

360. On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servant and employees of Defendant accused Plaintiff of workplace violence for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

361. On or about May 4, 2004, Defendant medically disqualified Plaintiff from employment in his position as locomotive engineer with defendant for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

362. Beginning on or about April 4, 2001 Defendant harassed, retaliated against Plaintiff and otherwise coerced Plaintiff with orders to publicly expose and reveal private matters and personal medical information for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

362. Beginning on or about September 10, 2001, Defendant subjected Plaintiff to internal investigation and charges of insubordination for writing a letter expressing

54

personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

363. On or about May 13, 2001, Defendant, through its agents, servants and employees, terminated Plaintiff from his employment with Defendant as Locomotive Engineer because Plaintiff wrote a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

364. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Defendant has by force and threat of force willfully injured, intimidated, interfered with,oppressed and threatened Plaintiff in the free exercise and enjoyment of rights and privileges secured to Plaintiff by the Railway Labor Act (USCA 45 ss.. 151 et. seq.).

365. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Defendant has by force and threat of force willfully injured, intimidated, interfered with, Plaintiff's right to organize, join or assist a union or engage in collective bargaining and the adjustment of grievances.

366. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Plaintiff has been unlawfully, illegally, improperly and maliciously retaliated against Plaintiff for filing grievances and engaging in union discussion.

367. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Plaintiff has been unlawfully, illegally, improperly and maliciously deprived of his means of livelihood and all opportunity for Plaintiff to procure work of equal dignity and character has been foreclosed to Plaintiff, and Plaintiff has been humiliated and suffered great pain, and endured great mental suffering.

COUNT SIX:
DISCRIMINATION ON THE BASIS OF RELIGION

TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, U.S.C. ss.. 2000e et. seq.
U.S.C. 42 ss.. 1983: U.S.C. 1; M.G.L. 151B

368.  Plaintiff here repeats and realleges the allegations of paragraph 6 through 367 of this Complaint, the same as if said Paragraphs were expressly restated here.

369.  On or about April 4, 2001, Plaintiff expressed aspects of his personal moral, ethical and political beliefs in letter to BLE Local Chairman O'Bryan and other union members.

370.  More specifically, in his letter of on or about April 4, 2001, Plaintiff expressed belief in spiritual forces exerting positive and negative moral, spiritual and ethical influence of human beings.

371.  In his letter of on or about April 4, 2001, Plaintiff used standard cultural and religious expressions of God and, conversely, Satan or Lucifer, Prince of Darkness to refer to the positive and negative spiritual forces in which Plaintiff believes.

372.  On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servants and employees of Defendant created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and characterized Plaintiff's religious beliefs (as expressed in Plaintiff's letter of on or about April 4, 2004) as the indicators of a mental illness.

373.  On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servant and employees of Defendant created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and interpreted Plaintiff's religious beliefs as threats.

374.  On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servant and employees of Defendant accused Plaintiff of workplace violence because Plaintiff for writing a letter expressing personal religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE which DeModena, DePhillips characterized as threatening.

375. On or about May 4, 2004, Defendant medically disqualified Plaintiff from employment in his position as locomotive engineer with defendant for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE which personal ideas, political and moral principles, personal philosophies and religious beliefs defendant stigmatized and characterized as threatening..

376. Beginning on or about April 4, 2001 Defendant harassed, retaliated against and otherwise coerced Plaintiff with orders to publicly expose and reveal private matters and personal medical information because Plaintiff had written a letter expressing Plaintiff's personal religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE which personal religious beliefs Defendant characterized as threatening.

377. Beginning on or about September 10, 2001, Defendant subjected Plaintiff to internal investigation and charges of insubordination for writing a letter expressing Plaintiff's personal religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

378. On or about May 13, 2001, Defendant, through its agents, servants and employees, terminated Plaintiff from his employment with Defendant as Locomotive Engineer because Plaintiff wrote a letter expressing personal religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE which Defendant stigmatized and characterized as threatening..

379. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Defendant has by force and threat of force willfully injured, intimidated, interfered with,oppressed and threatened Plaintiff in the free exercise and enjoyment of religion secured to Plaintiff by Title VII of the Civil Rights Act of 1964 and the First Amendment to the Constitution of the United States of America.

380. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Plaintiff has been unlawfully, illegally, improperly and

maliciously retaliated against Plaintiff for freely expressing his religion and practicing its moral precepts.

381. As a direct and proximate result of Defendant's actions through its agents, servants and employees, Plaintiff has been unlawfully, illegally, improperly and maliciously: discriminated against for his religious views; deprived of his means of livelihood and all opportunity for Plaintiff to procure work of equal dignity and character has been foreclosed to Plaintiff; and Plaintiff has been humiliated and suffered great pain, and endured great mental suffering.

COUNT SEVEN:
PERSONAL INJURY: FEDERAL EMPLOYERS LIABILITY ACT,
45 U.S.C s. 51 et seq.; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

382. Plaintiff here repeats and realleges the allegations of paragraph 6 through 381 of this Complaint, the same as if said Paragraphs were expressly restated here.

383. For the purpose of carrying on commerce the defendant maintained a railway within Massachusetts and connecting to railway services maintained by the defendant throughout the continental United States.

384. The Defendant has engaged in said commerce at all times relevant to this complaint.

385. The plaintiff was employed by the defendant in such commerce on April 11, 2001.

386. On or about April 11, 2001 DeModena and DePhillips maliciously and intentionally filed a false workplace violence complaint in order to coerce Plaintiff to undergo a non-confidential psychiatric exam and psychological testing.

387. Defendant, through its agents, servants and employees maintains and executes policies that wantonly, arbitrarily and maliciously permit Defendant to falsely, arbitrarily and maliciously label, stigmatize arbitrarily disfavored employees and persons

under its administrative control as persons mentally ill and posing a direct threat to such stigmatized employee's self, fellow employees and the public at large.

388. Defendant employs registered osteopath Dr. Tim Pinsky (who is registered by the Pennsylvania Bureau of Professional and Occupational Affairs, State Board of Osteopathic Medicine) and the psychiatrist Dr. Russell Vasile (who is registered by the Massachusetts Board of Registration in Medicine) and said physicians are hired as experts in their fields employed for the purpose of falsely using there credentials to falsely legitimize stigmatization of disfavored employees and falsely medically label, defame, diagnose and otherwise assess disfavored employees as mentally ill persons posing a direct threat to themselves, their fellow employees and the public at large.

389. Defendant, through its agents Pinsky, Vasile and other agents, servants and employees, has used the publicly recognized credentials of Pinsky and Vasile to falsely label, stigmatized and otherwise assess the Plaintiff as a mentally ill person posing a direct threat to himself, his fellow employees and the public at large.

390. Defendant, through its agents Pinsky, Vasile and others, has falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person in order to use its administrative control over Plaintiff to induce Plaintiff to forgo fundamental rights and privileges including rights of privacy and confidentiality in order that Defendant can wantonly and maliciously explore, reveal and publicly expose the full breadth of Plaintiff's conscious and unconscious feelings and attitudes.

391. Defendant, through its agents Pinsky, Vasile and others, has falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person in order to use its administrative control over Plaintiff to induce Plaintiff to forgo fundamental rights and privileges including rights of privacy and confidentiality in order to wantonly and maliciously explore, reveal and publicly expose Plaintiff's entire conscious and unconscious self including his personal and private conscious and unconscious dreams, fantasies, sins and shame.

392. Defendant, through its agents Pinsky, Vasile and others, has falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person in order to use its administrative control over Plaintiff to induce Plaintiff to forgo fundamental rights and privileges including rights of privacy and confidentiality and special accommodation in order to wantonly and maliciously interfere with psychotherapist-patient relationship between Plaintiff and Plaintiff's personal physician; and, likewise, to interfere with psychotherapist-patient privilege of Plaintiff and Plaintiff's personal physician.

393. Defendant, through its agents Pinsky, Vasile and others, has falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person in order to use its administrative control over Plaintiff to induce Plaintiff to forgo fundamental rights and privileges including rights of privacy and confidentiality and thereby to wantonly and maliciously injure Plaintiff and undermine Plaintiff's health, safety and medical treatment.

394. As a direct and proximate result of Defendants actions, Plaintiff lives in constant fear that Plaintiff's personal and private self, including Plaintiff's personal and private conscious and unconscious feelings, attitudes, dreams, fantasies, sins and shames may be laid bare and revealed to the whole world by other persons and institutions of authority, power, government and employment.

395. As a direct and proximate result of Defendant's actions Plaintiff suffers an increased inability to trust in others or to obtain effective psychiatric treatment and to enjoy fundamental freedoms and opportunities.

396. As a direct and proximate result of Defendant's actions, Plaintiff suffers an increased inability to form belief and value systems and engage in rational thought.

397. By virtue of the willful conduct of DeModena, DePhillips, O'Malley, Rae, O'Connor, Pinsky, Vasile and others, acting as agents the Defendant, Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury

and will continue to suffer injury ; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of medical treatment.

## COUNT EIGHT
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY:

398.  Plaintiff here repeats and realleges the allegations of paragraph 6 through 397 of this Complaint, the same as if said Paragraphs were expressly restated here.

399.  On or about April 4, 2001 Plaintiff publicized personal ideas, political and moral principles, personal philosophies and religious beliefs in a letter to Plaintiff's union chairman O'Bryan and fellow members of Plaintiff's union members in an effort to encourage compliance with federal regulations and Defendant corporation's safety policies.

400.  On or about April 11, 2004, DePhillips, DeModena, O'Malley and other agents servants and employee's of Defendant became concerned that Plaintiff's letter of April 4, 2004 exposed Defendant's non-compliance with federal regulation.

401. On or about April 11, 2004, DePhillips, DeModena, O'Malley and other agents servants and employee's of Defendant communicated the desire to quell Plaintiff's writings and union activities because Plaintiff's writings and activities expose Defendant's non-compliance with federal regulations.

401.  On April 13, 2004, DePhillips, DeModena, O'Malley and other agents, servants and employees of Defendant created a ruse or "scenario" by which Defendant would use Defendant's Workplace violence policy to falsely color Plaintiffs letter of on or about April 4, 2001 letter as a threat of violence leading to the termination of Plaintiff from employment in violation of public policy.

402.  On or about May 13, 2002, Defendant Corporation wrongfully discharged from his position with Defendant corporation in violation of public policy under a pretext of workplace violence.

61

## LEAVE TO AMEND COMPLAINT

On information and belief this action will reveal cause for action based on the Duties of Fair Representation and further cause based on the Federal Employers Liability Act and the Railway Labor Act. Plaintiff seeks leave to amend this complaint when such cause or causes are ascertained.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff prays that this Court hold the Defendants individually, jointly or severally liable and enter judgment against the Defendants, or any of the Defendants. Accordingly, Plaintiff prays that this Court enter Judgment in favor of Plaintiff and afford the following relief:

Injunctive relief to reinstate Plaintiff in all capacities as Locomotive Engineer.

Judgment for damages in a fair amount exceeding 1,000,000.00, plus interest from the date of the commencement of this action, costs at reasonable attorney's fee, and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

_____ Carmack _____ Date: December 9, 2004

Joseph T. Carmack, Pro Se. 398 Columbus Ave. PMB 130 Boston, MA 02116-6008
PH: 617/536-0772

### Certificate of Service

I, Joseph T. Carmack, hereby certify that a true copy of the above document was served upon the attorney of record for the defendant party, Steven E. Hughes, NRPC, by first class mail, postage prepaid, to: Steven E. Hughes, One Liberty Square - 6th Floor, Boston, MA 02109. _____ Carmack Date: December 9, 2004.

Joseph T. Carmack, Plaintiff, Pro Se.