UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH T. CARMACK | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 03 12488 PBS |
| | ) |
| NATIONAL RAILROAD PASSENGER | ) |
| CORPORATION | ) |
| | ) |
| Defendant. | ) |
| | ) |

DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL THE DISCLOSURE OF
INFORMATION AND MEDICAL RECORDS PERTAINING TO
PLAINTIFF'S MENTAL HEALTH AND PSYCHIATRIC TREATMENT

I.    INTRODUCTION

Pursuant to Fed.R.Civ.P. 37, Defendant National Railroad Passenger Corporation ("Amtrak" or "Defendant") hereby moves this Honorable Court for an order compelling Joseph Carmack's ("Plaintiff") treating psychiatrists, Anne Gurian, M.D. ("Dr. Gurian") and Martha Stark, M.D. ("Dr. Stark") to produce Plaintiff's psychiatric records in compliance with the subpoenas served upon them, or, in the alternative, for an order compelling Plaintiff to sign an authorization for the release of said records.  Amtrak also moves this Court for an order compelling Plaintiff to: (1) produce all records in his possession concerning his mental health; (2) fully answer interrogatories regarding same; (3) provide full and complete deposition testimony on his mental health and history; and (4) not attempt to prevent the deposition testimony of Michael O'Bryan, his union representative, on the subject of Plaintiff's mental health.  Amtrak respectfully submits that it is entitled to obtain records and information about Plaintiff's psychiatric condition and history because these documents may be directly relevant to

Plaintiff's liability and damages claims, and because Plaintiff has placed his psychiatric condition directly in issue in this civil action.

From a liability standpoint, the information and records of Plaintiff's psychological condition and treatment are relevant to Plaintiff's claims of disability discrimination and defamation (libel and slander). Plaintiff denies that he was terminated for insubordination and suggests that Amtrak's explanation is pretext for disability discrimination. Moreover, he claims that Amtrak refused to accommodate his request under the Americans with Disabilities Act ("ADA") by ignoring his statements and communications from his psychiatrist that undergoing a non-confidential psychiatric examination would be harmful to his health. As a result, he has placed this information directly in issue. Obtaining his psychiatric history from his treating psychiatrist may shed light on the issue of whether there was a basis for Plaintiff to claim that his health would be harmed by the psychiatric examination proposed by Amtrak. If this discovery shows that there was no basis for such opposition to the fitness for duty examination, Plaintiff will be unable to prove his ADA claim of failure to accommodate. In addition, these psychiatric records may help determine at relevant time frames whether Plaintiff was "disabled" as that term is defined by the ADA, whether any accommodation was required, or whether any discrimination was possible.

Additionally, in Count 1, Slander, Libel and Defamation, Plaintiff alleges that Amtrak spread false information about his mental health. Although Amtrak denies inappropriately disseminating any information about Plaintiff's mental status, Plaintiff has placed his psychological condition directly at issue by making this claim. Amtrak must be permitted to use the records to show that any statements made by its representatives were indeed true.

Throughout Plaintiff's Second Amended Complaint, Plaintiff alleges a variety of causes

of action, including defamation, invasion of privacy, intentional infliction of emotional distress, and disability and religious discrimination. Attached to these legal counts, Plaintiff has incorporated damages claims consisting of severe depression, severe emotional distress with physical repercussions, and an increased inability to form belief and value systems and engage in rational thought. He also claims he requires and will continue to require psychiatric treatment due to Amtrak's actions. Hence he has placed his psychological state and history directly at issue. Disclosure of the psychiatric information and records will help Amtrak and the Court determine whether the alleged damages were caused by Amtrak or some other entity or factor and the magnitude of the damages.

## II.    FACTUAL BACKGROUND

On April 11, 2001, Gerard DeModena, Division Road Foreman (supervisor of locomotive engineers), found a group of documents prepared by Plaintiff, one of Amtrak's locomotive engineers at the time, on his desk entitled "Letters from Hell." It begins with a page with the following text, "Dear God: I hear a fat lady singing. Very, very *truthfully* yours, Lucifer, Prince of Darkness." The next page contains a list of the characters in Shakespeare's Hamlet, with Amtrak personnel and managers indicated to play certain parts. Mr. DeModena was identified as Rosencrantz, a character who is murdered in Hamlet. At the bottom of this second page, Plaintiff wrote, "I'm in charge and this play has a messy ending more to my liking. Sinisterly, Lucifer, prince of darkness."

Mr. DeModena had recently spoken to Plaintiff on a few occasions about problems with Plaintiff's conduct. Concerned that the document was intended as a threat, Mr. DeModena filled out a workplace violence report form the following day.

Since Amtrak has a zero tolerance policy for workplace violence, Amtrak's Threat

3

Assessment Response Team ("T.A.R.T.") promptly reviewed Mr. DeModena's workplace violence report and Plaintiff's "Letters from Hell." T.A.R.T. referred the matter to Amtrak's Director of Health Services for the Northeast Corridor, Timothy Pinsky, M.D. After review, he recommended Plaintiff's temporary removal from service and that he undergo a psychiatric fitness for duty exam by an independent psychiatrist, Russell Vasile, M.D.

On May 4, 2001, Amtrak suspended Plaintiff with pay. Soon thereafter Amtrak instructed Plaintiff to report to Dr. Vasile for an examination. Plaintiff never agreed to be examined and despite several efforts by Amtrak and Dr. Vasile, the examination never took place due to Plaintiff's obstructionism. As a result, on September 10, 2001, after having issued warnings of the consequences of failure to comply with the order to undergo the fitness for duty exam, Amtrak charged Plaintiff with insubordination.

In April and May, 2002, a hearing was held, as required by the collective bargaining agreement between Amtrak and the Brotherhood of Locomotive Engineers, with an independent hearing officer. Plaintiff was defended by a local union representative. The hearing officer found that Plaintiff had been insubordinate and Amtrak terminated Plaintiff's employment. Plaintiff's appeal to the Public Law Board was denied.

## III.   PROCEDURAL HISTORY AND APPLICABLE COURT RULES

Plaintiff filed a charge of disability discrimination (perceived mental illness) and retaliation relative to these matters on or about February 2002. This charge was dismissed by the Massachusetts Commission of Discrimination ("MCAD") on May 13, 2002. On November 25, 2002, MCAD denied Plaintiff's appeal.

Plaintiff filed a Complaint against Amtrak in this Court on December 2, 2003. He amended his Complaint on May 14, 2004. Subsequently, Plaintiff filed his Second Amended

4

Complaint, which was accepted by the Court on January 3, 2005.

On December 14, 2004, Amtrak noticed the deposition of Plaintiff for 10:00 a.m. on January 11, 2005. The deposition has not been taken in part because Plaintiff indicated that he would not answer questions about his medical condition and history.

On December 21, 2005, Amtrak subpoenaed Michael O'Bryan, Plaintiff's union representative at relevant time periods, for a deposition scheduled for 10:00 a.m. on January 18, 2005. The deposition has not been taken in part because Plaintiff indicated that he would instruct Mr. O'Bryan not to answer questions about Plaintiff's medical condition and history.

On December 21, 2005, Amtrak sent interrogatories and requests for documents to Plaintiff. Interrogatory numbers 13-18 seek information about Plaintiff's medical history and treatment. Document Request Nos. 9-13 seek documents related to Plaintiff's medical history and treatment. No responses have been received to date.

On December 21, 2004, Amtrak sent Plaintiff authorizations for the release of his psychiatric records. He refused to sign the authorizations. As a result, Amtrak served a subpoena upon Anne Gurian, M.D. and Martha Stark, M.D. on or about February 18, 2005 and February 28, 2005 respectively. See Exhibit A.

Dr. Gurian's counsel sent a letter to Amtrak's counsel on February 25, 2005 objecting to producing any records without a release from Plaintiff. See Exhibit "B". Plaintiff has refused to provide authorization to Dr. Gurian for these records.

In light of the complete failure of Plaintiff to provide any information or documents related to his mental health and history, pursuant to Fed.R.Civ.P. 37, and Rules 30, 33, 34, and 45, Amtrak may move to compel this discovery. In addition, Fed.R.Civ.P. 26(b)(1) permits the court "to order discovery of any matter relevant to the subject matter involved in the action.

Relevant information need not be admissible at the trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence."

## IV.    PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff's Second Amended Complaint, containing 402 paragraphs, presents the

following numerous causes of action:

1.    Slander, Libel And Defamation
2.    Invasion Of Privacy
3.    Discrimination On The Basis Of Disability: Americans With Disabilities Act - 42 U.S.C. ss.
      12101 et. seq.; Massachusetts Civil Rights Act; M.G.L. c.151B; Rehabilitation Act Of 1973;
      29 U.S.C. 701 et. seq.
      I.      Utilizing Standards Of Criteria, Or Methods Of Administration That Have The
              Effect Of Discrimination On The Basis Of Disability: 42 U.S.C. s. 12112(3)(A)
              (¶244)
      II.     Utilizing Standards Of Criteria, Or Methods Of Administration That Perpetuate The
              Discrimination Of Others That Are Subject To Common Administrative Control: 42
              U.S.C. s. 12112(3)(B)
      III.    Limiting, Segregating, Or Classifying An Employee In A Way That Adversely
              Affects The Opportunities Or Status Of Such Applicant Or Employee Because Of
              The Disability Of Such Applicant Or Employee: 42 U.S.C. s. 12112(B)(1)
      IV.     Examinations And Inquiries Designed To Screen Out Individuals With a Disability,
              42 U.S.C. s. 12112(B)(1); Medical Examinations And Inquiries Designed To Screen
              Out And Discriminate Against Individuals With A Disability, 42 U.S.C. s.
              12112(D)(1), 42 U.S.C. s. 12112(D)(4); Violation Of Rights Of A Mentally Ill
              Person, U.S.C. 42 ss. 10841
      V.      Harassment And Denial Of Requests For Reasonable Accommodation: 42 U.S.C. S.
              12112(5)(A): Denial Of Right Of Informed Consent And Participation Of Mentally
              Ill Person In Planning Of Mental Health Treatments And Procedures, Denial Of
              Right To Access, Upon Request, To Mental Health Care Records 42 U.S.C. S.
              10841 (C) (I-VI)(D)(H)(I)
      VI.     Retaliation: Coercion, Interference And Intimidation: Sabotage Of Mitigating
              Measures: 42 U.S.C. S. 12112(5)(B), Count XIII: 42 U.S.C. S. 12203(A), Count
              XIIII: 42 U.S.C. s.12203(B), Denial Of Right Of Grievance Of Mentally Ill Person
              And Reprisal, 42 U.S.C. s. 10841(1)(L)(N)
      VII.    Discrimination Generally: 42 U.S.C. s. 12112
4.    Interference With Rights, M.G.L. c. 12, ss. 11h, 11i; M.G.L. c. 265 ss. 37
5.    Unfair Labor Practices, U.S.C.A. 45 ss. 151 et. seq.
6.    Discrimination On The Basis Of Religion, Title VII Of The Civil Rights Act Of 1964,
      U.S.C. ss. 2000e et. seq., U.S.C. 42 ss. 1983: U.S.C. 1; M.G.L. c.151B
7.    Personal Injury: Federal Employers Liability Act, 45 U.S.C. s.51 et seq.; Intentional
      Infliction Of Emotional Distress
8.    Wrongful Discharge In Violation Of Public Policy

V.    LEGAL STANDARD FOR DISCLOSURE OF PSYCHIATRIC RECORDS

Plaintiff has brought numerous causes of action against Amtrak under both federal and Massachusetts law. However, as shown above in Section IV, his claims are predominantly federal. In such instances, where there is no claim of diversity jurisdiction, federal courts apply federal common law to issues concerning privileges. Fed.R.Ev.501; *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 226-227 (D.Mass. 1997); *Krolikowski v. Univ. of Mass.*, 150 F. Supp. 2d 246, 248 (D. Mass. 2001).

The Supreme Court first recognized a common law privilege protecting confidential communications between a patient and psychotherapist in 1996. See *Jaffee v. Redmond*, 518 U.S. 1, 14 (1996). The Court held "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." The Court further noted that, "[l]ike other testimonial privileges, the patient may of course waive the protection." *Id.* at n.14. However, the Court chose not to define the parameters of the privilege.

VI.    INFORMATION AND RECORDS CONCERNING PLAINTIFF'S PSYCHIATRIC CONDITION AND HISTORY MUST BE DISCLOSED BECAUSE PLAINTIFF HAS PLACED THEM DIRECTLY IN ISSUE AND THEY ARE RELEVANT TO HIS LIABILITY CLAIMS AGAINST AMTRAK

Information and documents concerning Plaintiff's mental health treatment and history are needed to help ascertain whether Amtrak is liable for Plaintiff's claims that he was discriminated against on the basis of perceived disability (Count 3, part III); discriminated against on the basis of actual disability (Count 3, part IV), refused reasonable accommodation for his disability (Count 3, parts V and VI), and suffered defamation of character (Count 1).

Plaintiff has cited communications with and by Dr. Gurian to help prove his claims of

disability discrimination and failure to provide reasonable accommodation, thereby putting his psychiatric treatment and condition directly at issue.

In addition, with respect to his claim of defamation, Plaintiff must prove that Amtrak made false statements about Plaintiff's medical condition. See *White v. Blue Cross & Blue Shield of MA*, 442 Mass. 64 (2004) (held that one of the elements of a defamation claim is publication of false information). Without access to Plaintiff's medical records and to information about Plaintiff's psychological condition and treatment known to Plaintiff and his union representative, Mr. O'Bryan, Amtrak will be foreclosed from offering a key defense in defamation claims, i.e. that any statements made by Amtrak's representatives were true.

**A.   References to Psychiatric Treatment in Plaintiff's Second Amended Complaint**

Plaintiff's Second Amended Complaint refers on numerous occasions to Plaintiff's psychiatric treatment as follows:

Paragraph 130: "On or about October 16, 2000, Dr. Ann Gurian, Plaintiff's personal physician, evaluated number of medical symptoms which had suddenly been exacerbated."

Paragraph 131: "On or about October 16, 2000, Dr. Ann Gurian discussed with Plaintiff the possible need for an extended medical leave from employment if symptoms continued."

Paragraph 134: "On or about November 16, 2000, Plaintiff mailed O'Connor a notice from Dr. Gurian advising that Plaintiff was absent from employment for medical reasons due to a bono fide illness."

Paragraph 135: "On or about January 18, 2001, Plaintiff advised O'Malley that Plaintiff was prepared to return to work with advice to do so from Plaintiff's personal physician."

Paragraph 138: "Plaintiff reported to Dr. Brian Morris that Plaintiff had been unable to work for several months due to exacerbated psychiatric symptoms."

Paragraph 144: "On or about January 21, 2001, Dr. Ann Gurian advised Dr. Brian Morris that Plaintiff was neither suffering from Bi-Polar disorder nor Personality disorder."

Paragraph 145: "On or about January 21, 2001, Dr. Ann Gurian advised Dr. Brian Morris that Plaintiff was no longer suffering any symptoms that would prevent Plaintiff from safely performing his duties as Locomotive Engineer in commuter rail."

Paragraph 225: "On or about July 30, 2001, Plaintiff sent to Pinsky and Vasile copies of correspondence from Plaintiff's personal physician, Dr. Gurian, stating that Plaintiff was medically cleared to return to work on January 2001 and that Plaintiff continues to be able to return [to] work and perform duties safely."

Paragraph 288: "On or about May 20, 2001, Plaintiff's personal Physician advised him against submitting to Defendant's requirements for psychiatric evaluation and extensive psychological testing."

Paragraph 297: "On or about June 14, 2001, Plaintiff advised O'Malley that O'Malley's intervention in Plaintiff's medical affairs was medically harmful."

Paragraph 307: "Beginning on or about January 25, 1985, Plaintiff consulted with Dr. Martha Stark of 4 Ripley Road in Newton, Massachusetts."

Paragraph 309: "At various times from on or about January 25, 1985, Plaintiff has consulted Dr. Martha Stark for medical evaluations and assistance in monitoring, controlling and treating for possible signs and symptoms of mental illness."

Paragraph 310: "At various times from 1983 until on or about May 17, 2001, Plaintiff advised Defendant that he was monitoring his mental health by consulting professional resources."

Paragraph 311: "At various times from on or about February 1, 1995 Plaintiff has consulted with Dr. Ann Gurian of Cambridge, Massachusetts while continuing to consult with Dr. Martha Stark and Plaintiff consulted with both doctors in order to continue monitoring and maintaining his mental health."

**B.    References to Psychiatric Treatment and Opinions of Plaintiff's Psychiatrist in His Initial Disclosures[1]**

In his Initial Disclosures, Plaintiff makes a number of references to persons and documents concerning his psychiatric treatment that place this information directly in issue:

1.    Dr. Gurian is listed among the persons who have information that supports his claim. He states, "Dr. Ann Gurian, personal physician of Plaintiff, has information regarding retaliation, medical malpractice, discrimination, invasion of privacy, record of impairment, direct threat, special accommodation, slander and libel."

2.    Dr. Martha C. Stark is listed among the persons who have information that supports his

---

[1]    Plaintiff's Initial Disclosures pleading is attached as Exhibit C.

claim. He states, "Dr. Martha C. Stark, personal physician of Plaintiff, has information regarding retaliation, medical malpractice, discrimination, invasion of privacy, record of impairment, direct threat, special accommodation, slander and libel."

3.   Letter dated May 30, 2001 from Dr. Gurian to 'whom it may concern' that states, "[o]n January 18, 2001, [Mr. Carmack] became able to return to work and he continues to be so. *I agree with Mr. Carmack that a forced, non-confidential psychiatric consultation would be inadvisable for medical reasons*" [2]

4.   Letter dated July 30, 2001 from Dr. Gurian to 'whom it may concern' that states that Plaintiff had been seen by her and that, as of January 18, 2001, he became able to return to work and continues to be so.[3]

5.   Letter dated April 2, 2002 from Dr. Gurian to 'whom it may concern' that states, "[o]n January 18, 2001, he became able to return to work. He continues to be able to work....*In the past, I advised Mr. Carmack that a forced, non-confidential psychiatric consultation, because of its coercive and intrusive nature, would be medically harmful to him*...In spite of this, he remains able to work."[4]

**C.   Information and Records Pertaining to Plaintiff's Mental Health and Treatment Records Must Be Disclosed Because They Have Been Placed Directly in Issue by Plaintiff in His Claims of Disability Discrimination**

In Count 3 of the Second Amended Complaint, Plaintiff makes various claims of disability discrimination.   In sub-claim III Plaintiff appears to be charging Amtrak with discriminating against him on the basis of a perceived disability.   In sub-claim IV he accuses Amtrak of violating the ADA by conducting examinations designed to screen out individuals with disabilities.   In sub-claim V, Plaintiff accuses Amtrak of violating the ADA by denying his

---

[2]      Exhibit D.
[3]      Exhibit D.
[4]      Exhibit D.

requests for "reasonable accommodation." Finally, in sub-claim VI, under the title of Retaliation, Plaintiff accuses Amtrak again of denying his requests for "reasonable accommodation."

As delineated above, in support of these disability discrimination claims against Amtrak, Plaintiff relies upon numerous references to communications with his psychiatrist and to documents prepared by her. The documents refer to Plaintiff's ability to perform his locomotive engineer job safely and effectively and to his psychiatrist's alleged concern that psychiatric evaluation and testing would be medically harmful. These references have placed Plaintiff's psychological condition and history directly in issue.

In sub-claims V and VI of Count 3 Plaintiff appears to be alleging that Amtrak unfairly refused the requests of his psychiatrist and himself for a "reasonable accommodation" in responding to the order to undergo a psychiatric examination. For instance, in paragraph 299 of the Second Amended Complaint, Plaintiff states that he sought, as an alternative to undergoing the examination, to be given the opportunity to explain his "Letters from Hell" to Amtrak managers and to be given advance written notice of what specific medical concerns would be addressed at the examination. Amtrak disputes that these issues were properly raised, that these constitute requests for "reasonable accommodation" as that term is used in the Americans with Disabilities Act, and that there was any basis to conclude that Plaintiff would have been medically endangered by the examination. Nonetheless, Plaintiff appears in this section of his Second Amended Complaint to be trying to claim that Amtrak discriminated against him by denying him a reasonable accommodation for his disability.

It is important to note that Plaintiff admits in the above-mentioned sub-claims V and VI of Count 3 that he is disabled. In that event, Amtrak should be able to explore, in discovery at

least, if Plaintiff was disabled, and the nature and extent of his disability.

On the other hand, Plaintiff has claimed the exact opposite, i.e. that he was able to work as a locomotive engineer without any accommodation whatsoever.  See Complaint Paragraphs 145 and 225 where Dr. Gurian informed Amtrak that Plaintiff was able to safely perform his duties as a locomotive engineer, and three documents prepared by Dr. Gurian to the same effect, which are included in Plaintiff's Initial Disclosures, dated May 30, 2001, July 30, 2001, and April 4, 2002.  See Ex. D.

Furthermore, in paragraphs 279 — 283 of Count 3, sub-claim III, entitled "Limiting, Segregating, Or Classifying An Employee In A Way That Adversely Affects The Opportunities Or Status Of Such Applicant Or Employee Because Of The Disability Of Such Applicant Or Employee," Plaintiff alleges that Amtrak's managers perceived him as disabled and suffering from a condition that substantially limits his ability to work.  In paragraph 284, the concluding paragraph of that sub-claim, and in the title of the sub-claim itself Plaintiff appears to be alleging that Amtrak discriminated against him in violation of the ADA by erroneously perceiving him as disabled and treating him disparately.  While Amtrak denies that it perceived him so or treated him in a discriminatory manner, Plaintiff's psychiatric condition and history are potentially relevant to this issue by helping show whether or not Plaintiff was disabled pursuant to the ADA.

Federal case law requires the disclosure of these records because Plaintiff has put the communications between him and his psychiatrist directly at issue.  See *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229-230 (D.Mass. 1997); *Sarko v. Penn-Del Directory Company*, 170 F.R.D. 127, 130 (E.D.Pa. 1997); *Vasconcellos v. Cybex International, Inc.*, 962 F.Supp. 701, 708-709 (D.Md. 1997); *Doolittle v. Ruffo*, 1997 WL 151799 at *2 (N.D.N.Y. March 31, 1997). Plaintiffs may not protect themselves from disclosures about their psychological condition by

claiming privilege after having themselves placed that very same condition directly in issue. *Vanderbilt* at 229-230; *Sarko* at 130. Moreover, it is widely accepted that, due to principles of justice and fairness, a privilege "cannot and should not at once be used as a shield and a sword." *Vanderbilt* at 230, citing *Inserra v. Hamblett & Kerrigan, P.A.*, 1995 WL 54402 (D.N.H.1995). Specifically, this Court has held that, should a plaintiff rely upon the content of his communications with his psychiatrist by testifying to it himself, as Plaintiff has done in his Second Amended Complaint (see paragraphs 288 and 297) and by introducing documentary evidence (see Plaintiff's Initial Disclosures), then the privilege is waived. See *Vanderbilt* at 230.

In summary, Amtrak is entitled to obtain information and documents concerning Plaintiff's psychiatric condition and history because Plaintiff has put his psychiatric condition at issue. Not only has Plaintiff cited to numerous documents and comments by Dr. Gurian, but he has listed both of his treating psychiatrists in his Initial Disclosures as persons with specific knowledge about facts relevant to and supportive of his liability claims. Moreover, in order to defend itself against Plaintiff's contradictory claims of being disabled, of needing special accommodation, and of being fully capable of working without any accommodation, Amtrak must be allowed to obtain this information to determine whether or not Plaintiff's condition qualifies as a disability under the ADA and whether or not Plaintiff was indeed capable of operating a locomotive safely.

**D.    Plaintiff's Psychiatric Records Must Be Disclosed to Permit Amtrak to Defend against Plaintiff's Claim of Defamation**

Plaintiff also claims, in Count I of the Second Amended Complaint, that Amtrak is liable for slander, libel and defamation by revealing false information about his medical condition. A defense to the defamation torts of libel and slander is truth. Plaintiff cannot prevail on these claims if the information allegedly disseminated by Amtrak was true. Plaintiff makes numerous

allegations in his Second Amended Complaint that Amtrak's representatives defamed him by falsely commenting on his mental health. See paragraphs 90, 91, 92, 106, 108-110, 115, 118, 126. If it can be shown that Amtrak revealed private medical matters to any unauthorized person,[5] Amtrak has a right to know if said statements were true in order to defend against the claim of defamation. As such, Amtrak is entitled to obtain information from Plaintiff and Mr. O'Bryan about Plaintiff's psychological condition and history and to review all documents pertaining to this subject in the possession of Plaintiff or his psychiatrists to ascertain the truth regarding Plaintiff's mental health.

Furthermore, Plaintiff has placed his psychological condition and mental health history at issue by claiming that Amtrak defamed him, i.e. falsely reported on his medical condition. This claim makes the nature of his medical condition a key question to be determined in this case. Consequently, he has waived the privilege. See *Vanderbilt, supra,* at 229-230. He cannot attack Amtrak by alleging it lied about his condition (i.e. use testimony about his condition or his medical records as a sword), and then use the psychotherapist/patient privilege as a shield to prevent disclosure of this information and these records. See *Inserra, supra.*

## VII. PLAINTIFF'S PSYCHIATRIC RECORDS MUST BE DISCLOSED BECAUSE HIS NUMEROUS CLAIMS OF SEVERE EMOTIONAL DISTRESS AND OTHER PSYCHOLOGICAL INJURIES HAVE PLACED HIS PSYCHIATRIC CONDITION DIRECTLY AT ISSUE

Plaintiff, throughout his second amended complaint, makes numerous allegations pertaining to damages he suffered due to Amtrak's actions, including severe emotional distress, depression, and an increased inability to form belief and value systems and engage in rational thought. The emotional and mental health injuries he alleges are so severe that they cannot be

---

[5]    Amtrak denies that it made any defamatory comments or that it revealed private confidential medical information to any unauthorized person.

considered to be "garden variety" claims.   In addition, he has suggested that he requires

psychiatric treatment and will continue to require it due to Amtrak's actions in this matter.  As a

result, these damages claims have placed his mental health directly at issue and Plaintiff has

waived the psychiatrist/patient privilege under both federal law.[6]  Consequently, Amtrak is

entitled to obtain information and records concerning Plaintiff's mental health and treatment

history to address the highly relevant damages issues in this case, e.g. if there is a preexisting

condition, whether there is causation, and whether the damages are as severe as claimed.

**A.**    **References to Severe Emotional Distress in Plaintiff's Second Amended Complaint**

The following illustrates the degree to which Plaintiff's Second Amended Complaint is

permeated with allegations that he is suffering from severe emotional distress:

Count 1, paragraph 128 "Plaintiff is suffering from severe emotional distress with physical
repercussions; Plaintiff has suffered injury and will continue to suffer injury due to loss
of access to personal emotional resources."

Count 2, paragraph 242, "As a direct a [and] proximate result of the above-mentioned wrongful
conduct of defendant and defendant agents, Plaintiff was scorned by his colleagues,
exposed to contempt and has suffered injury to his career, termination from his position
of employment and the loss of reputation and standing in the community, all of which
caused Plaintiff humiliation, severe depression, anxiety, worry, emotional distress and
injury and other incidental and consequential damages and expenses."

Count 3, sub-claim II, paragraph 263, "As a direct and Proximate result of Defendant's
application of such arbitrary and false assertions against Plaintiff...Plaintiff is suffering
from severe emotional distress with physical repercussions; Plaintiff has suffered injury
and will continue to suffer injury; Plaintiff requires medical treatment, will continue to
require medical treatment and is deprived of means of such treatment."

Count 3, sub-claim III, paragraph 284, "As a direct and proximate result of Defendant's
actions...Plaintiff is suffering from severe emotional distress with physical repercussions;
Plaintiff has suffered injury and will continue to suffer injury; Plaintiff requires medical
treatment, will continue to require medical treatment and is deprived of means of such
treatment."

---

[6]    Amtrak also believes Plaintiff has waived the privilege under Massachusetts law, M.G.L. c. 233 §20B.
However, as previously mentioned, other decisions by this Court indicate that federal common law applies
here.  Should this Court feel otherwise in the instant case, Amtrak will be pleased to make arguments under
the Massachusetts statute.

Count 3, sub-claim IV, paragraph 295, "As a direct and proximate result of Defendant's actions…Plaintiff is suffering from severe emotional distress with physical repercussions. Plaintiff requires medical treatment and is deprived of medical treatment and is unable to procure medical treatment."

Count 3, sub-claim V, paragraph 305, "As a direct and proximate result of Defendant's intentional denial of reasonable accommodation in violation of 42 U.S.C. s. 12112 (5)(A) …Plaintiff is suffering from severe emotional distress with physical repercussions."

Count 3, sub-claim VI, paragraph 334, "As a direct and proximate result of Defendant's intentional retaliation against Plaintiff…Plaintiff is suffering from severe emotional distress with physical repercussions."

Count 3, sub-claim VII, paragraph 339, "As a direct and Proximate result of Defendant's actions…Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury; *Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.*" [emphasis added]

Count 4, paragraph 356, "As a direct and proximate result of Defendant's actions through its agents, servants and employees…Plaintiff has been humiliated and suffered great pain, and endured great mental suffering."

Count 5, paragraph 367, "As a direct and proximate result of Defendant's actions through its agents, servants and employees…Plaintiff has been humiliated and suffered great pain, and endured great mental suffering."

Count 6, paragraph 381, "As a direct and proximate result of Defendant's actions through its agents, servants and employees…Plaintiff has been humiliated and suffered great pain, and endured great mental suffering."

Count 7, paragraph 395. "As a direct and proximate result of Defendant's actions Plaintiff suffers *an increased inability to trust in others or to obtain effective psychiatric treatment and to enjoy fundamental freedom and opportunities.*" [emphasis added]

Count 7, paragraph 396, "As a direct and proximate result of Defendant's actions, Plaintiff suffers an *increased inability to form belief and value systems and engage in rational thought.*" [emphasis added]

Count 7, paragraph 397, "By virtue of the willful conduct of DeModena, DePhillips, O'Malley, Rae, O'Connor, Pinsky, Vasile and others, acting as agents of the Defendant, Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury; Plaintiff *requires medical treatment, will continue to require medical treatment and is deprived of means of medical treatment.* [emphasis added]

**B.**    **Plaintiff's Psychiatric Records Must Be Disclosed Pursuant to Federal Law**

Much of federal case law stands for the proposition, known as the "broad view," that reliance upon a mental or emotional condition as an element of the patient's claim or defense, e.g. a claim of emotional distress, puts the patient's mental condition in issue and thereby waives the psychotherapist/patient privilege. Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, sec. 504.07 (7-8) (2d ed. 1997); see *Vasconcellos v. Cybex International, Inc.*, 962 F. Supp. 701 (D.Md. 1997) (patient waives the privilege simply by putting his or her mental condition in issue); *Sarko v. Penn-Del Directory Company*, 170 F.R.D. 127 (1997) (patient waives the privilege simply by putting his or her mental condition at issue); *Doolittle v. Ruffo*, 1998 U.S.Dist. LEXIS 177, 1997 WL 151799 (N.D.N.Y. 1997) (same as *Sarko*, supra); *Sidor v. Reno*, 1998 U.S.Dist. LEXIS 4593, 1998 WL 164823 (S.D.N.Y 1998) (same as *Sarko*, supra; result not affected by the fact that patient does not intend to offer any expert testimony); *Fox v. Gates Corp.*, 179 F.R.D. 303 (D.Colo.1998); *EEOC v. Danka Industries, Inc.*, 990 F. Supp. 1138 (E.D.Mo. 1997).

In addition, some courts have adopted the "limited broad view" which finds waiver of the privilege when substantial emotional harm is alleged or the plaintiff's psychological condition is central to the litigation. See Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, sec. 504.07 (7-8) (2d ed. 1997); *Sorenson v. H&R Block, Inc.*, 197 F.R.D. 199, 203-205 (D.Mass. 2000); *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 (D.N.J. 2000); *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D.Ill. 1999).

The "narrow view," which is in a clear minority on this subject, holds that waiver occurs only if the plaintiff affirmatively places his or her psychiatric condition at issue. See Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, sec. 504.07 (7-8) (2d ed. 1997);

*Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225, 229-230 (D.Mass. 1997); *Booker v. City of Boston,* 1999 U.S.Dist. LEXIS 14402 *2-4 (D.Mass.). It is important to note that this Court need not follow the "narrow view" because there is no binding decision in the First Circuit adopting such a position on this issue.

Under the broad view, Plaintiff in the instant action has clearly waived the privilege by placing his psychological condition and history at issue when he made claims for emotional distress. Under the "limited broad view," Plaintiff likewise must be found to have waived the privilege because he has alleged significant emotional harm. He specifically has alleged severe emotional distress with physical repercussions, depression, and an increased inability to form belief and value systems and engage in rational thought. In addition, he has claimed a need to undergo psychotherapy because of Amtrak's actions, but a financial inability to do so, "Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment." See Paragraphs 339 and 397. See *Sarko, supra,* at 130 (Plaintiff's allegation she suffered from clinical depression waived the privilege); *Jackson, supra,* at 225 (Plaintiff's claim of specific psychiatric injuries and disorders and sought damages for continuing emotional distress constituted waiver); *Sorenson, supra,* at 203-205 (waiver when plaintiff alleges "psychological injury which necessitated psychiatric treatment.")

Furthermore, from an equity standpoint, in order to adequately prepare for its defense against Plaintiff's damages claim, Amtrak needs to know about Plaintiff's current mental status and if he suffered from any pre-existing mental health condition to evaluate if Amtrak is the cause of his alleged damages or if there is some other mental health care cause. In addition, Amtrak must be able to evaluate the level of Plaintiff's mental and emotional distress before and after his discharge to determine the magnitude of the potential emotional distress damages if

these were indeed caused in whole or in part by the termination of Plaintiff's employment. In the interest of justice and fairness, information and records of Plaintiff's psychiatric condition and treatment history must be disclosed.

## VIII.  CONCLUSION

Plaintiff's liability claims against Amtrak are permeated with instances in which he has placed his communications with his psychiatrist and his mental condition directly at issue in this case. Consequently, as a matter of law, information and documents concerning same must be made available to Amtrak so that it can present a proper defense in this matter. Furthermore, Plaintiff's damages claims have also placed his mental health and treatment history at issue, thereby waiving the psychotherapist privilege.

WHEREFORE, Amtrak moves this honorable court to grant Amtrak's Motion to Compel in its entirety and to issue an order providing the following relief:

1.    Plaintiff to provide complete information in response to Amtrak's interrogatories and at his deposition regarding his psychological state and psychiatric treatment history;

2.    Mr. O'Bryan, who knew Plaintiff for many years and has knowledge of his treatment history, be permitted to testify without restriction on this subject;

3.    All documents be produced relative to Plaintiff's mental health and treatment history that are in the possession, custody or control of Plaintiff, his current or former psychiatrists, or any other person or provider; and

4.    any other relief this Court may find appropriate under the circumstances.

******************************
LR 37.1 Certificate of Compliance:
Amtrak states that it has complied
with the requirements of LR 37.1.
******************************

Respectfully submitted,
DEFENDANT,
NATIONAL RAILROAD PASSENGER
CORPORATION,
By Its Attorneys,


DATED: March 9, 2005                    s/Stephen E. Hughes
                                        John A. Kiernan (BBO No. 271020)
                                        Stephen E. Hughes (BBO No. 629644)
                                        BONNER KIERNAN TREBACH & CROCIATA
                                        One Liberty Square - 6th Floor
                                        Boston, MA 02109
                                        (617) 426-3900

### Certificate of Service

I, Stephen E. Hughes, hereby certify that I have on March 9, 2005 served a true copy of the foregoing document by first class mail, postage prepaid, to:

Plaintiff (Pro Se):
Joseph T. Carmack
398 Columbus Ave., PMB 130
Boston, MA 02116-6008

                                        s/Stephen E. Hughes
                                        Stephen E. Hughes

EXHIBIT A

○AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF    MASSACHUSETTS

JOSEPH T. CARMACK

V.

NATIONAL RAILROAD PASSENGER
CORPORATION

### SUBPOENA IN A CIVIL CASE

Case Number:[1]   03 12488 PBS

TO:    KEEPER OF RECORDS
MARTHA C. STARK, M.D.
3 RIPLEY STREET, NEWTON, MA   02459

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

SEE SCHEDULE A ATTACHED

| PLACE | DATE AND TIME |
|---|---|
| BONNER KIERNAN TREBACH & CROCIATA, 1 LIBERTY SQ., BOSTON, MA | 3/8/05 at 10:00 AM |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| ATTORNEY FOR DEFENDANT | 2/28/05 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

STEPHEN E. HUGHES, BONNER KIERNAN TREBACH & CROCIATA, 1 LIBERTY SQ., BOSTON, MA 02109
617-426-3900

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

UNITED STATES DISTRICT COURT

DISTRICT OF ___MASSACHUSETTS___

JOSEPH T. CARMACK

V.

NATIONAL RAILROAD PASSENGER CORPORATION

## SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1]    03-12488 PBS

TO: ANN GURIAN, M.D.
175 ELM STREET, OFFICE C-2
SOMERVILLE, MA    02459

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| BONNER KIERNAN TREBACH & CROCIATA, ONE LIBERTY SQ. BOSTON, MA 02109 | 02/28/05 10:00 a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_    ATTORNEY FOR DEFENDANT | 2/18/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER    TELEPHONE: 617-426-3900

STEPHEN E. HUGHES, BONNER KIERNAN TREBACH & CROCIATA, ONE LIBERTY SQ., BOSTON, MA 02109

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT B

HAMROCK & TOCCI

COUNSELLORS AT LAW

101 Main Street, 18TH floor

Cambridge, MA 02142

February 25, 2005

**VIA FACSIMILE AND FIRST CLASS MAIL**

Stephen E. Hughes, Esq.
Bonner, Kiernan, Trebach & Crociata
1 Liberty Square, 6th Floor
Boston, MA  02109

Re:     Joseph Cormack
        v.
        National Railroad Passenger Corporation
        U.S.D.C. C.A. No.: 03 12488 PBS

Dear Attorney Hughes:

Please be advised that I represent Dr. Ann Gurian.  As we discussed, Dr. Gurian is not available for her deposition on Monday, February 28, 2005.  I appreciate your courtesy in this regard.  Due to the confidential nature of Dr. Gurian's treatment of Mr. Cormack, we will require a release from Mr. Cormack before Dr. Gurian will testify and/or produce any medical records. If a release is not forthcoming, kindly let me know, so that I may file the appropriate motion with the Court.

Thank you for your attention to this matter.

Very truly yours,

Heidi M. Oh

HMO/tmg

cc:     Mr. Joseph Cormack
        Pros se plaintiff
        (*via first class mail only*)

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph T. Carmack ) | Civil Action No. 03-12488-PBS |
| Plaintiff, Pro Se ) | |
| v ) | PLAINTIFF CARMACK'S |
| The National Railroad Passenger ) | PARTIAL |
| Corporation ) | INITIAL DISCLOSURES |
| Defendant ) | (F.R.C.P. 25(a)(1)) |
| ) | |

### Introduction

Plaintiff will make partial initial disclosure owing to the need to impound certain documents and objection that initial disclosures are not appropriate in the circumstances of the action

### Plaintiff Carmack's Partial Initial Disclosures

Plaintiff Carmack makes the following initial partial initial disclosure to the defendant:

I. Persons who are likely to have information about disputed facts.

a. Dr. Brian Morris has performed return-to-work physicals on Plaintiff and has information regarding record of impairment and Invasion of Privacy Health Resources, 185 Devonshire St. Boston, 02110

b. Eli Mistivich, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

c. Ray Ciarlo, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

d. Mark Bennett, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

e. Chuck McCaughey, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

f. Rhonda Lanyon, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

g. William Kehoe, Defendant employee, has information regarding retaliation, slander, libel and record of impairment. Address unknown.

i

h. Larry Goddard, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

i. Maryann Teterrio, former Defendant employee, has information regarding retaliation, slander, libel, medical malpractice and discrimination. Address unknown.

j. Kevin Lydon, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

k. Jack Flaherty, former Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

l. Dr. Martha C. Stark, personal physician of Plaintiff, has information regarding retaliation, medical malpractice, discrimination, invasion of privacy, record of impairment, direct threat, special accommodation, slander and libel.

m. Sean Kelley, Defendant employee, has information regarding retaliation, invasion of privacy, medical malpractice, slander and libel. Address unknown.

n. Dr. Ann Gurian, personal physician of Plaintiff, has information regarding retaliation, medical malpractice, discrimination, invasion of privacy, record of impairment, direct threat, special accommodation, slander and libel.

o. Dr. Pinsky, Defendant Medical Director and physician, has information regarding retaliation, medical malpractice, discrimination, invasion of privacy, record of impairment, direct threat, special accommodation, slander and libel. 30th Street Station, Philadelphia, PA.

p. Dr. Vasile, Defendant contract physician, has information regarding retaliation, medical malpractice, discrimination, invasion of privacy, record of impairment, direct threat, special accommodation, slander and libel. 25 Bay State Road, Suite 1, Boston, MA 02115.

q. Joe Cavanaugh, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

r. Defendant Mechanical employee, Rafferty (first name unknown), has information regarding disparate treatment of Plaintiff regarding discrimination, assessment of direct threat, special accommodation, termination and regarding Invasion of privacy, termination, retaliation, slander and libel. Address unknown

s. Damon Allen, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

2

t. Wayne Gagne, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

u. Al Smith, Sr., Defendant employee, has information regarding retaliation, slander and libel. Address unknown

v. Al Smith, Jr., Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

w. David J. Walsh, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

x. Michael J. O'Bryan, Defendant employee, has information regarding retaliation, medical malpractice, special accommodation, slander and libel 23 Stevens Road, Westborough, MA 01581-1429.

y. Walter H. Nutter, Defendant employee, has information regarding retaliation, slander and libel. 83 Main Street, Northfield, MA 01360-1015.

z. Jacqueline Boyle, Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

aa. Gerard L. DeModena, Defendant employee, has information regarding retaliation, slander, libel, discrimination, invasion of privacy. Address unknown.

bb. Robert Palmer, former Defendant employee, has information regarding retaliation, slander and libel. Address unknown.

cc. Michael J. O'Malley, Defendant employee, has information regarding retaliation, slander, libel discrimination, coercion and medical malpractice. Address unknown.

dd. Mark Kenny, union representative, has information regarding retaliation, discrimination, invasion of privacy, slander and libel. BLE, Cherry Tree Corporate Center - Suite 125, 535 Route 38, Cherry Hill, NJ 08002.

ee. George Newman, Defendant employee, has information regarding retaliation, slander and libel. 257 Hersey Street, Hingham, MA 02043-2729

ff. Dan Lezon, Defendant employee, has information regarding retaliation, slander and libel. Address unknown

gg. Lou DePhillips, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. Concord, MA

hh. Pat Dogerty, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. 30th Street Station, Philadelphia, PA.

ii. Captain Robert Smith, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. Address unknown.

jj. Deborah Gaines, Defendant contract employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. Address unknown.

kk. Delvine Okereke, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. 253 Summer Street, Boston, MA

ll. Suzanne Alan, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. 253 Summer Street, Boston, MA

mm. David Gunn, Defendant President, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. 60 Mass. Ave. Washington, DC.

nn. William Rae, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. Address unknown.

oo. Dan Leavitt, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. Address unknown.

pp. Larry Reiczak, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. 30th Street Station, Philadelphia

qq. Robert O'Rourke, Defendant employee, has information regarding retaliation, discrimination, disparate treatment, coercion, invasion of privacy, slander and libel. Address unknown.

rr. Jennifer Peal, Defendant employee, has information regarding retaliation, discrimination, slander and libel. Address unknown.

ss. Richard Prone, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. Mayflower Road, Plymouth, MA

4

tt. Mark Neverett, Defendant employee, has information regarding retaliation, discrimination, coercion, invasion of privacy, slander and libel. Address unknown.

uu. Lorraine Green, Defendant Vice President of Human Resources, has information regarding retaliation, medical malpractice, interference with rights, discrimination, coercion, invasion of privacy, slander and libel. Address unknown.

vv. George Warrington, Defendant Corporate President, has information regarding retaliation, medical malpractice, interference with rights, discrimination, coercion, invasion of privacy, slander and libel. Address unknown.

ww. David Dunn, Defendant Corporate President, has information regarding retaliation, medical malpractice, interference with rights, discrimination, coercion, invasion of privacy, slander and libel. Address unknown.

2. Documents and Tangible Things in Plaintiff's possession at 592 Tremont St Boston, MA.

a. Amtrak's Workplace Violence Policy: PERS-42

b. Selected documents from packet found on desk of Mr. Gerard L. DeModena on April 11, 2001.

c. Rule 25, Amtrak/BLE Agreement

d. Letter dated May 4, 2001 from Mr. M. J. O'Malley to Mr. J. T. Carmack.

e. Letter dated May 17, 2001 from Mr. M. J. O'Malley to Mr. J. T. Carmack.

f. E-Mail dated June 5, 2001 from Ms. Mary Anne Letterio to Mr. M. J. O'Malley

g. Letter dated June 8, 2001 from Mr. M. J. O'Malley to Mr. J. T. Carmack.

h. Rule 22, Amtrak/BLE Agreement

i. Letter dated July 16, 2001 from Dr. Russell Vasile to Dr. Tim Pinsky

j. Letter dated May 4, 2001 from Mr. M. J. O'Malley to Mr. J. T. Carmack.

k. Letter dated July 30, 2001 from Dr. Ann Gurian "To whom it may concern".

m. Selected page from Amtrak's 'Standards of Excellence'.

n. Letter dated April 4, 2002 from Dr. Ann Gurian "To whom it may concern".

o. Letter dated May 15, 2001 from Mr. M. J. O'Malley to Mr. M. J. O'Bryan.

p. Letter dated May 30, 2001 from Dr. Ann Gurian "To whom it may concern"

q. Page 16, from Amtrak's Policy PERS-19 regarding criteria for Fitness-for-duty

r. Letter dated May 8, 2001 from Mr. M. J. O'Bryan to Mr. M. J. O'Malley.

s. Letter dated August 28, 2001 from Dr. Russell Vasile to Dr. Tim Pinsky

t. Letter dated May 28, 2001 from Mr. M. J. O'Bryan to Mr. M. J. O'Malley

u. Letter dated May 24, 2001 from Mr. J. T. Carmack to Dr. Tim Pinsky.

v. Letter dated June 21, 2001 from Mr. M. J. O'Malley to Mr. M. J. O'Bryan

x. Letter dated June 14, 2001 from Mr. J. T. Carmack to Mr. M. J. O'Malley.

y. Letter dated July 27, 2001 from Mr. J. T. Carmack to Dr. Tim Pinsky

z. Letter dated July 31, 2001 from Mr. J. T. Carmack to Dr. Tim Pinsky.

aa. Selected pages from CHARTING A COURSE FOR CHANGE, Amtrak's Business Diversity workbook.

bb. Letter dated September 10, 2001 from Mr. M. J. O'Malley to Mr. J. T. Carmack

cc. Letter dated June 5, 2001 from Dr. Russell Vasile to Ms. Mary Anne Letterio.

dd. E-Mail dated May 3, 2001 from Ms. Mary Anne Letterio to Mr. M. J. O'Malley.

ee. E-Mail dated June 5, 2001 from Ms. Mary Anne Letterio to Mr. M. J. O'Malley.

ff. E-Mail dated September 5, 2001 from Ms. Marilyn McCouch to Mr. M. J. O'Malley.

gg. Letter dated January 11, 2002 from Mr. J. Carmack to Dr. Russell Vasile.

hh. Compilation of documents found on Mr. G. L. DeModena's desk April 11, 2001

ii. Amtrak Internal Discrimination Complaint filed March 18, 2002 by Mr. J. T. Carmack with Ms. Delvine Okereke.

jj. Open Letter dated March 11, 2001 from Mr. M. J. O'Malley to Mr. J. T. Carmack

kk. Letter dated April 30, 2000 from Mr. J. T. Carmack to Mr. M. J. O'Malley

ll. Transcript of meeting at North Station Boston between Mr. J. T. Carmack and Mr. G. E. DeModena.

mm. Memo dated March 3, 2002 from Mr. William C. Rae to Mr. M. J. O'Bryan.

nn. Page 27 of 37 of Amtrak/BLE National engineer roster showing Mr. Carmack on Medical Leave of Absence (MLA): # 1334.

oo. Letter dated May 30, 2001 from Dr. Ann Gurian To whom it may concern.

pp. Letter Dated Feb. 11, 2002 from Mr. Lou DePhillips to Mr. M. J. O'Bryan.

qq. Memo Misdated 12/10/02 from Mr. William C. Rae to Mr. M. J. O'Bryan

rr. Compilation of Correspondence concerning application of Amtrak attendance policy

ss. Amtrak Attendance Policy.

tt. Book Power Plays by John O. Whitney and Tina Packer.

uu. Poster from Boston production of Rosencranz and Guildenstern are Dead! by Tom Stoppard.

vv. Script of Rosencranz and Guildenstern are Dead! by Tom Stoppard.

ww. Letter dated April 2, 2002 from Mr. J. T. Carmack to Mr. Ted Campbell

xx. Letter dated July 24, 2001 from Mr. M. J. O'Malley to Mr. J. T. Carmack

yy. Record of Train Movements on Defendant Railroad's Boston Division on October 9, 2000.

zz. Plaintiff's application of sickness benefits dated July 2, 1985.

aaa. Letter from Plaintiff to Robert A. Palmer of July 2, 1985 (undated).

bbb. Letter from Robert A. Palmer to Plaintiff dated September 9, 1985.

ccc. Letter from Martha C. Stark to Robert A. Palmer dated October 9, 1985 with return receipt

7

ddd.  MBCR/BLE collective bargaining agreement.

eee.  Plaintiff's Complaint Rebuttal to Massachusetts Commission Against
      Discrimination.

fff.  Plaintiff's Appeal of Notice of Dismissal to Massachusetts Commission against
      Discrimination.

ggg.  Defendant's Railroad operating rules, NORAC.

hhh.  Defendant's Railroad Air Brake rules, AMT-3.

iii.      Collection of Newsletters in single magazine form by Richard Prone.

jjj.     Transcript of insubordination hearings for Plaintiff with exhibits

3. Computation of Damages

a.  Estimated lost wages 2001:  $31,599.00 (1999 W-2 form).

b.  Estimated lost wages 2002:  $63,118.00 (1999 W-2 form).

c.  Estimated lost wages 2003:  $84,309.77  (MBCR/BLE agreement)

d.  Estimated lost wages 2004:  $87,661.87 (MBCR/BLE agreement).

e.  Value of lost medical insurance is unknown.

f.  Medical treatment of impairment for period of 10 years: $25,000.00

g.  Pain and suffering:  $700,000.00

h.  Lost value of Railroad Retirement pension is unknown.

Date: November 2, 2004

Joseph T. Carmack, Plaintiff, Pro Se.
398 Columbus Ave. PMB 130
Boston, MA  02116-6008
(617) 536-0772

**Certificate of Service**

I, Joseph T. Carmack, hereby certify that a true copy of the above document was
served upon the attorney of record for the defendant party, Steven E. Hughes, NRPC, by
hand delivery to: Steven E. Hughes, One Liberty Square   6th Floor, Boston, MA  02109.

Date: November 2, 2004
Joseph T. Carmack, Plaintiff, Pro Se.

8

EXHIBIT D

ANNE GURIAN, M. D.
7 STANDISH STREET
CAMBRIDGE, MASSACHUSETTS 02138
Telephone 864-3667

i/17/9

To whom it may concern

Mr. Joseph Carmack
may return to work on
January 18, 2001.

Sincerely yours,

143

ANNE GURIAN, M. D
7 STANDISH STREET
CAMBRIDGE, MASSACHUSETTS 02138

Telephone 864-3667

May 30, 2001

To Whom it may concern:

Mr. Joseph Carmack has been
treated by me. On January 18, 2001, he
became able to return to work and he
continues to be so.

I agree with Mr. Carmack that
a forced, nonconfidential psychiatric
Consultation would be inadvisable for
medical reasons.

Sincerely yours,
—————, ms

Anne Gurian, M.D.
175 Elm Street
Office C 2
Cambridge MA 02144

(617) 864-3667

4 April 2002

To Whom it may concern:

Mr. Joseph Carmack has been treated by me. On January 18, 2001, he became able to return to work. He continues to be able to work, as I have twice informed Amtrak.

In the past, I advised Mr. Carmack that a forced, non-confidential psychiatric consultation, because of its coercive and intrusive nature, would be medically harmful to him and ethically suspect. Mr. Carmack has followed my medical advice. Mr. Carmack's attempt to care for both his health and his rights ultimately resulted in Amtrak's subjecting him to discipline. Naturally, this abrogation of his freedom of speech and right to privacy has been a strain on his health, as it would be for anyone. In spite of this, he remains able to work.

Sincerely yours,

MG

Anne Gurian, M. D.

**EXHIBIT XI**

ANNE QURIAM, M. D.
7 STANDISH STREET
CAMBRIDGE, MASSACHUSETTS 01118
Telephone 864-3667

July 30, 2001

To whom it may concern:

Mr. Joseph Carnack has been treated by me. On January 18, 2001, he became able to return to work and he continues to do so.

Sincerely yours,

mo

CERTIFIED MAIL # 7000 1670 0013 4465 90