UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph T. Carmack ) | Civil Action No. 03-12488-PBS |
| ) | |
| Plaintiff, Pro Se ) | |
| ) | |
| v. ) | |
| ) | |
| The National Railroad Passenger ) | |
| Corporation ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRIVILEGE OF THIRD PARTY COMMUNICATIONS TO INSURER'S BY PSYCHIATRIST

## I. INTRODUCTION

Plaintiff, Joseph T. Carmack hereby submits this PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRIVILEGE OF THIRD PARTY COMMUNICATIONS TO INSURER'S BY PSYCHIATRIST as addendum to Plaintiff's previous motion in opposition to Defendant National Railroad Passenger Corporation's ("Amtrak" or "Defendant") "MOTION TO COMPEL THE DISCLOSURE OF INFORMATION AND MEDICAL RECORDS PERTAINING TO <u>PLAINTIFF'S MENTAL HEALTH AND PSYCHIATRIC TREATMENT</u>". This memorandum of privilege further supports Plaintiff's counter-motion for a protective order permitting limited disclosure of psychiatric records. As grounds for opposition and counter motion Plaintiff states that: communications to insurers are subject to the same staturorial privilege as other psychiatrist communications; psychiatrist and patient released communications to third party insurers with the understanding and agreement that communications were confidential: and Defendant has failed to establish a legitimate

i

need for the privileged information sought outside the scope of provisions of proposed protective order that is more important to the interests of justice than the protection of the relationship between patient and psychotherapist.

## II. STATUTORIAL BASIS FOR PRIVILEGE OF THIRD PARTY COMMUNICATIONS BY PSYCHIATRIST

As statutorial basis of Plaintiff's assertion of privilege of communication of third party communications Plaintiff cites state and federal statutes. Plaintiff has previously claimed privilege pursuant to Massachusetts General Laws Chapter 233 s. 20B and cites said statute again here in pertinent part:

> The provision of information acquired by a psychotherapist relative to the diagnosis or treatment of a patient's emotional condition, to any insurance company, nonprofit hospital service corporation, medical service corporation, or health maintenance organization, or to a board established pursuant to section twelve of chapter one hundred and seventy-six B, pertaining to the administration or provision of benefits, including utilization review or peer review, for expenses arising from the out-patient diagnosis or treatment, or both, of mental or nervous conditions, shall not constitute a waiver or breach of any right to which said patient is otherwise entitled under this section...

Plaintiff states that all third party communications not previously made directly to Defendant are communications to insurance companies or otherwise "pertain() to the administration of provision of benefits". Communications have been supplied to insurance corporations directly and to medical service corporations which evaluate and approve treatments as payable in accordance with benefit agreements. Additionally, reports have been made to the Railroad Retirement Board (hereafter the Board or RRB) which administers the "provision of benefits" including unemployment and sickness

benefits in accordance with the Railroad Unemployment Insurance Act. (RUIA or the Act) (U.S.C. 45 s. 351 et. seq.).

The Railroad Unemployment Insurance Act itself mandates confidentiality of information in the communications from physicians which the Board requires. The Act reads in part:

> Information obtained by the Board in connection with the administration of this chapter shall not be revealed or open to inspection nor be published in any manner revealing an employee's identity: (45 U.S.C. s. 362 paragraph [d])

Although there are provisions qualifying revelation of the confidential information under certain circumstances, including revelations to the Defendant (as further described below), no such circumstances have arisen regarding materials in Plaintiff's possession.

### III. DECLARATIONS OF CONFIDENTIALITY BY INSURERS

Insurers and the RRB have routinely declared the confidentiality of the statements required of Plaintiff's psychiatrist and there is a declaration on the forms provided by the insurers (e.g. Exhibit A). Similarly, in administrating benefits in accordance the RUIA the RRB requires a Physician Statement. However, in requiring said statement, the RRB includes a "Privacy Act Notice" which warns that "The RRB may routinely furnish information from its records to other government agencies and to other persons or companies for the purpose of administering the Railroad Unemployment Insurance Act" ("Application for Sickness Benefits" Exhibit B). Such information also may be provided to Defendant as employer "for the purpose of administering (the Act). However, to the Plaintiff's knowledge, the Board has not furnished the information in Plaintiff's control to Defendant for the purpose to which it refers and the Application includes the declaration that "other than information that may be disclosed routinely, no information about your claim may be disclosed without your consent".

## IV. FAILURE OF DEFENSE TO SHOW A LEGITIMATE NEED FOR PRIVILEGED INFORMATION BASED ON ALLEGED FACTS OF THE CASE

### A. Short Background of Liability Issues

On December 9, 2004 Plaintiff filed a Second Amended Complaint in response to court order resulting from scheduling conference held by this honorable court on November 9, 2004. Said complaint detailed matters detailing specific instances including description of libelous documents and discrimination based on perceived disability. The elements of defamation involve assertions of threatening behavior by the defendant. Said assessment of threatening behavior was described in complaint as evidenced exclusively in "writings reportedly written by (Plaintiff)". Complaint states that officials perceived evidence of a medical condition from Plaintiff's writings and sought medical opinion from Defendant's Medical Officer who, in fact, charged that writings of Plaintiff were symptomatic of medical condition and reasonable basis for assessment of a direct threat.

### B. Arguments For and Against Disclosure

In the Defendant's motion to compel, they have cited right of discovery to resolve liability issues as justifiable cause to breach psychotherapist-patient privilege. However, Defendant has only made general assertions that truth may be a defense to defamation liability for stating that Plaintiff is suffering from a "severe psychiatric disorder" such as "Bi-Polar disorder or Personality Disorder." Plaintiff asserts that vague and abstract claim of an abstract diagnosis or evidence in treatment or evaluation of such a diagnosis is insufficient to defend against the type of defamation claimed. Plaintiff has stated and continues to state that any symptoms of impairment or illness were ameliorated and mitigated by treatment. Evidence within the treatment under the circumstances where treatment includes the confidentiality of communications would only prove the case by undermining the treatment and proving the prevalence of symptoms while activating such symptoms by removing the means of symptom repression. It is outside the treatment itself, where Defendant and Plaintiff would need to look to prove or disprove liability

based on the actual existence of symptoms and the conditions (psychiatric disorder) which give rise to said symptoms. Plaintiff hereby asserts that it is outside the psychotherapist-patient relationship where the Defendant must seek to resolve liability issues raised of the Plaintiff's complaint. Plaintiff has argued and will continue to argue that disclosure should be limited to issues which are "job-related and consistent with business necessity". Allegations involve events related to employment involving specific writings of Plaintiff which have been described in the complaint and various motions by Plaintiff and Defendant. Plaintiff asserts that (other than the release of specific communication of which Defendant articulates specific knowledge), Defendant should be permitted to view only communications or inquire into medical matters evidenced in specific writings by Plaintiff identified in Complaint.

## V. LEGAL BASIS FOR LIMITED DISCLOSURE

With this memorandum, Plaintiff submits third party communications of Plaintiff's psychiatrist to insurers. These documents are submitted in compliance with order of this honorable court for In Camera review of contents and Plaintiff's proposed redactions. Plaintiff is also to submit confidential notes and written materials at a later date also for review of redactions. Plaintiff submits that his redactions have been conservative and have focused on personal information and revealed primarily clinical information. However, Plaintiff resists revelation of even this information in that it is not specific to materiel of the given case. The court has ordered this material solely because Defendant has stated that Defendants statements about Plaintiff may be true and Defendant cited right to material in accordance with Fed. Rule Civ. Proc. 26. But the existence of such a rule does not necessarily override the privilege. In accordance with the state statute, Defendant must show that "it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected." M.G.L.A. c 233, s 20B. This "conflict between the testimonial privilege and defendants constitutional rights...must be resolved on the facts

5

of each case." *Commonwealth v. Two Juveniles* 397 MASS 261, 491 NE2d 234 (1986). In this case, those facts revolve around "writings reportedly written by (Plaintiff)" and not by the fact that Plaintiff has undergone psychotherapeutic treatment. "It is not sufficient that..the very circumstances of the communications indicate that they are likely to be relevant and material to the case" *Ibid.* The Defendant should be required to "articulate(). (a) particular need for full access to the documents." *Commonwealth v. Clancy,* 402 Mass 664, 524 NE2d 395. This Honorable Court has discretion to limit the discovery based on overriding public interest in preserving the privilege, Federal Rule is not overriding in conflict with privilege. "The ability to question adverse witnesses....does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Pennsylvania v. Ritchie* 480 U.S. 39. Plaintiff asserts that discovery should be limited to more specific allegations in his complaint.

Wherefore, Plaintiff prays that this Honorable Court give weight to privilege in accordance with specific facts of the case and recognize that third party communications to insurers are subject to same limitations according to privilege that this court recognizes for other psychotherapist-patient communications, including the time window proposed by order of this Honorable Court (Defendant access to materials limited to those communications occurring from January 2000 to August 2001). Furthermore, Plaintiff prays that this honorable court fashion a protective order limiting psychological inquiry to issues that are job-related and consistent with business necessity."

Date: April 29, 2005

Joseph T. Carmack, Plaintiff, Pro Se

**Certificate of Service**

I, Joseph T. Carmack, hereby certify that a true copy of the above document was served upon the attorney of record for the defendant party, Steven E. Hughes, NRPC, by First Class U.S. Mail to : Steven E. Hughes, One Liberty Square - 6th Floor, Boston, MA 02109.

Date: April 29, 2005

Joseph T. Carmack, Plaintiff, Pro Se.

6

# EXHIBIT A

VALUE BEHAVIORAL HEALTH, INC.
a Value Health company

**VALUE HEALTH** 

Dear Practitioner,

Attached you will find a revised copy of the Value Behavioral Health, Inc. (VBH) Outpatient Treatment Report (OTR), effective March 1, 1991. This report is a requirement of your patient's employer sponsored health care benefit plan and must be completed in order for a certification decision to be rendered. **The information you provide will be treated confidentially**. The following information is provided in order to assist you in the process.

1. RELEASE OF INFORMATION: Release of information on the OTR to VBH is a requirement of the benefit plan. As a part of their enrollment in the benefit plan, employees agree to the release of information necessary to adjudicate their and/or their dependent' claims for medical equipment and supplies. Without the release of this information, VBH is unable to certify the proposed treatment for reimbursement. As the person involved directly with the patient, you are in the best position to discuss the matter to involve the patient in the decision. You or the patient may elect not to provide this information, but it will result in a non-certification decision.

2. TYPE OF INFORMATION REQUESTED: The OTR format is designed to assess the patient's level of functional impairment and evaluate the medical necessity and appropriateness of treatment services being provided. It has been designed by your fellow practitioners in the most abbreviated format possible to collect the requisite information. The same form covers both initial certification as well as certification of additional visits for those who had previously been certified. **For ongoing reviews**, you are not required to repeat historical information given on the previous report. We would be most concerned with indications of change/progress as a result of the treatment or any additional therapeutic issues which have arisen. In those cases where practitioners submit incomplete information and a determination cannot be made, certification will not be authorized.

3. MULTIPLE PRACTITIONERS: VBH certifies care provided by individual practitioners. We ask that you note additional practitioners on this form, but it is necessary for each practitioner to submit a separate Outpatient Treatment Report covering his/her services.

4. BENEFIT LIMITS: Different health care benefit plans provide different levels of coverage based on plan design. The certification process itself does not guarantee that benefits are payable. Reimbursement depends on the benefit limits as well as patient and practitioner eligibility at the time services are rendered. The patient may need your encouragement to confirm with either their insurance carrier or their benefits representative that they have not exceeded benefit maximums or that you are an eligible practitioner under their plan.

5. TIME SPENT COMPLETING THE FORM: The Outpatient Treatment Report has been designed to provide adequate information without harassing or being excessively burdensome for practitioners. VBH does not reimburse practitioners for time spent in fulfilling this requirement of their patient's health care benefit plan. Some practitioners have found it a useful clinical tool to complete the form with the patient in order to ensure that the patient is not only aware of what is being reported concerning his/her care, but also feels more involved in the complete treatment process.

Your cooperation in this process is greatly appreciated and helps to assure that your patients receive the maximum benefit available under their plan. If you have any questions on where to send OTRs for specific clients, please refer to the Client List and Divisions Reference Guide in your Provider Manual.

The completed form should be returned to:

| CONTRACTS MANAGED FROM VBH MID-ATLANTIC | FOR IBM PATIENTS ONLY | CONTRACTS MANAGED FROM VBH WEST |
|---|---|---|
| Value Behavioral Health, Inc. | Value Behavioral Health, Inc./IBM Unit | Value Behavioral Health, Inc./California |
| P.O. Box 1570 | P.O. Box 1459 | 4640 Admiralty Way, Suite 600 |
| Merrifield, Virginia 22116-1570 | Merrifield, Virginia 22116-1459 | Marina Del Rey, California 90292 |
| Telephone: 1-800-331-6648 | Telephone: 1-800-368-7426 | Telephone: 1-800-942-4276 |
| FAX: 1-703-205-7299 | FAX: 1-703-205-7199 | FAX: 1-310-574-6059 |
| | | |
| CONTRACTS MANAGED FROM VBH NORTHEAST | FOR EMPIRE PLAN PATIENTS ONLY | FOR RAILROAD PATIENTS ONLY |
| Value Behavioral Health, Inc. | Value Behavioral Health, Inc./Empire Plan Unit | Value Behavioral Health, Inc./Railroad Unit |
| 433 River Street, Suite 5000 | 433 River Street, Suite 200 | P.O. Box 1002 |
| Troy, New York 12180 | Troy, New York 12180 | Merrifield, Virginia 22116-1002 |
| Telephone: 1-800-738-7797 | Telephone: 1-800-952-4276 | Telephone: 1-800-934-RAIL |
| | FAX: 1-518-270-4721 | FAX: 1-703-205-7499 |

**PERSONAL & CONFIDENTIAL**
VALUE BEHAVIORAL HEALTH, INC.
## OTR – Outpatient Treatment Report
*(Please use additional sheet if more space is required)*

| IBM TIMEFRAME FOR OTR SUBMISSION | ALL OTHER NETWORKS CLIENTS TIMEFRAME FOR OTR SUBMISSION |
|---|---|
| The OTR must always be completed if treatment is anticipated to exceed 20 visits. Submit it by visit 15 or at least 3 weeks prior to and of certification period. | The OTR must always be completed if treatment is anticipated to exceed 10 visits. Submit it by visit 5 or at least 3 weeks prior to end of certification period. |

PATIENT'S NAME: _____ DOB: _____

EMPLOYEE'S NAME: _____ EMPLOYER: _____

ADDRESS: _____

IBM EMPLOYEE ID: 975- _____ or EMPLOYEE SSN: _____ DATE OF FIRST VISIT: _____

1. DSM-III-R DIAGNOSIS (Complete *all* five axes using numerical code)

    Axis I _____ Axis II _____ Axis III _____ Axis IV _____ Axis V (*Current*) _____
    Document *current* nature, severity, and duration of symptom(s) and/or behavior(s) which justify DSM-III-R diagnosis/diagnoses.

2. *CURRENT* MENTAL STATUS EVALUATION (Should correlate with DSM-III-R diagnosis/diagnoses; rate *all* sections)

    *Appearance*: Well-Groomed ☐   Deshevelled ☐   Bizarre ☐   Inappropriate ☐
    *Attitude*: Cooerative ☐   Guarded ☐   Suspicious ☐   Uncooperative ☐   Belligerent ☐
    *Motor Activity*: Calm ☐   Hyperactive ☐   Agitated ☐   Tremors/Tics ☐   Muscle Spasm ☐
    *Affect*: Appropriate ☐   Labile ☐   Expansive ☐   Constricted ☐   Blunted ☐   Flat ☐
    *Mood*: Euthymic ☐   Depressed ☐   Anxious ☐   Euphoric ☐   ☐
    *Speech*: Normal ☐   Delayed ☐   Soft ☐   Loud ☐   Slurred ☐
    Excessive ☐   Pressured ☐   Perseverating ☐   Incoherent ☐

    *Thought Process*: Intact ☐   Circumstantial ☐   Loosening of Associations ☐   Tangential ☐   Flight of Ideas ☐
    *Thought Content*: **Hallucinations** Not Present ☐   Present; Auditory ☐   Visual ☐   Olfactory ☐
    **Delusions** Not Present ☐   Present; Persecutory ☐   Being Controlled ☐   Grandiose ☐
    Thought Insertion/Deletion ☐   Bizarre ☐
    *Suicidal Ideation Present*   Yes ☐   No ☐   *Homicidal Ideation Present*   Yes ☐   No ☐
    * Comments:

    *Self-Perception*: No Impairment ☐   Depersonalization ☐   Derealization ☐
    *Orientation*: Fully Oriented ☐   Disoriented: Always ☐   Sometimes ☐; Time ☐   Place ☐   Person ☐
    *Memory*: Intact ☐   Impaired: Immediate ☐   Recent ☐   Remote ☐; Amnesia, Partial ☐   Global ☐
    *Cognitive Function*: General Knowledge Intact   Yes ☐   No ☐;   Serial Sevens Intact   Yes ☐   No ☐
    Simple Calculations Intact   Yes ☐   No ☐;
    *Abstraction*: Proverb Interpretation ☐   Intact   Impaired; Concrete ☐   Idiosyncratic ☐
    *Judgement*: ☐ Intact   Impaired; ☐ Minimal   ☐ Moderate   ☐ Severe
    *Insight*: ☐ Intact   Impaired; ☐ Minimal   ☐ Moderate   ☐ Severe

3. CENTRAL LIFE ROLE FUNCTION ASSESSMENT (Document and rate *current* level of severity of functional impairment using specific example(s) to illustrate the nature of your patient's deficits in everyday functioning.)

    a. *Occupation*   ☐ None   ☐ Mild   ☐ Moderate   ☐ Severe;   Describe: _____

    b. *Education*   ☐ None   ☐ Mild   ☐ Moderate   ☐ Severe;   Describe: _____

1

**PERSONAL & CONFIDENTIAL**

   c. ***Marital/Family***  ☐ None  ☐ Mild  ☐ Moderate  ☐ Severe;  Describe: _____

_____

   d. ***Interpersonal Social***  ☐ None  ☐ Mild  ☐ Moderate  ☐ Severe;  Describe: _____

_____

   e. ***Self-Maintenance***  ☐ None  ☐ Mild  ☐ Moderate  ☐ Severe;  Describe: _____

_____

   ***Global Central Life Function Impairment Assessment***   ☐ Mild   ☐ Moderate   ☐ Severe

4. HISTORY (For ***Initial OTR***, identify significant mental health history including ***alcohol/substance abuse***, prior mental health and/or ***alcohol/substance abuse*** treatment; and relevant medical history including lab/test results, if any, and name of treating physician. On ***follow-up OTRs*** document newly discovered important medical history in these areas.)

_____
_____
_____
_____
_____
_____

5. PSYCHOLOGICAL TESTING (If performed, please include copy of report and/or summary of test results.)

6. TREATMENT PLAN

   a. ***Current Psychtherapy*** (On ***initial OTR***, for each CENTRAL LIFE ROLE Function-related symptom and/or problem behavior, specify <u>functional</u> therapeutic objectives, planned therapeutic interventions, and estimated time frames(s) to achieve each. On ***follow-up OTRs*** for each CENTRAL LIFE ROLE functional therapeutic objective specified in your previous report, document: progress to date, remaining and/or new objectives, planned therapeutic intervention(s), and estimated time frame.)

_____
_____
_____
_____
_____
_____
_____
_____

   b. ***Prognosis*** (On ***initial OTR*** and ***follow-up OTRs:*** describe patient's cooperation with treatment plan, ability to make change, and potential for gains to be made in continued treatment.)

_____
_____
_____

   g. ***Current Pharmacotherapy and All Other Medications***: (If ***prescribing MD***, complete section c. 1-5; if ***other practitioner***, complete section c. 1-6 <u>to the best of your knowledge</u>. Leave section c. blank if patient not receiving medication)

     1. Medications (include all)   ☐ ***Patient not receiving medication***

| Medication | Dose/Frequency | Date Began | Side Effect(s) | Date Stopped | Current Blood Level |
|---|---|---|---|---|---|
| a. | | | ☐ NO ☐ YES | | |
| b. | | | ☐ NO ☐ YES | | |
| c. | | | ☐ NO ☐ YES | | |

2

**PERSONAL & CONFIDENTIAL**

2.  Medication non-compliance is a focus of treatment ☐ NO ☐ YES If YES, describe management plan/progress:

    _____

    _____

3.  Patient advised of Risk/Benefit relationship of pharmacotherapy ☐ NO ☐ YES
    Patient advised of possible drug interaction(s). ☐ NO ☐ YES

4.  If patient receiving neuroleptics, ABNORMAL INVOLUNTARY MOVEMENT SCALE (**AIMS**) completed in past 6 months, ☐ NO ☐ YES If YES, please include copy with this OTR.

5.  For each medication and functional therapeutic objective specified in this report; document progress to date; remaining and/or new objectives; planned pharmacotherapeutic intervention(s) and estimated time to achieve each. If there are side effects, discuss management plan.

    _____

    _____

    _____

6.  Please note name, telephone number, and date of your most recent communication with prescribing physician:

    _____

d.  **Collateral Program(s)** ☐ NO ☐ YES If YES, note *current* type (AA, NA, CA, Parent Group, etc.), and describe frequency and duration.

    _____

e.  **Adjunctive Therapy** ☐ NO ☐ YES If YES, note *current* type (Individual, Family, Group, etc.), provider discipline, frequency, and duration. (**Note**: This review will not consider certification for any treatment providers other than the provider completing this form).

    _____

f.  **Other family member(s) in Treatment with you:** ☐ NO ☐ YES If YES, specify treatment type/modality, frequency, and duration.

    _____

g.  **Treatment Frequency/Duration**

    How many times have you seen the patient since the previous review (if applicable): _____

    | Treatment Modality/Type | Frequency | Time Per Visit |
    |---|---|---|
    | (1) | | |
    | (2) | | |
    | (3) | | |

    Do you anticipate any changes in this frequency/duration: ☐ NO ☐ YES specify _____

    _____

    Total number of visits incurred to date _____

    Total additional visits requested _____

    Estimated total visits for current course of treatment _____   Estimated termination date _____

\* *I hereby certify that I am the patient's therapist, that the above statements are true and complete.*

| Name of Practitioner/Structured Program | Discipline and State License Number |
|---|---|
| Address | Are you independently licensed? yes ____ no ____ |
| City          State         Zip | Tax I.D. Number |
| Telephone Number | *SIGNATURE OF PRACTITIONER          Date |

3

# EXHIBIT B

Sickness Benefit
Application Enclosed

# Sickness Benefits for Railroad Employees



*United States of America*
*Railroad Retirement Board*
*http://www.rrb.gov*

Form UB-11

U.S. Railroad Retirement Board

Official Business

Penalty for Private Use $300

UB-11

Printed Matter

Mr. Joe Carmack
398 Columbus Ave.
Apt #130
Boston MA 02116

## Privacy Act Notice

To receive sickness benefits you must apply for them and furnish information. Information that the RRB asks you to furnish is used to determine if you are eligible for benefits and the amount of benefits payable to you. Although furnishing information, including your social security number, is voluntary, the RRB cannot pay you benefits without this information. The RRB's authority for requesting information is section 5(b) of the Railroad Unemployment Insurance Act.

The RRB may routinely furnish information from its records to other government agencies and to other persons or companies for the purpose of administering the Railroad Unemployment Insurance Act, the Social Security Act or other benefit programs under Federal or State laws. The routine uses and disclosures of information from the RRB's records of sickness claims include those shown in the next section.

## The Railroad Retirement Board routinely furnishes information from its records to:

1. The U. S. Treasury Department and the U.S. Postal Service, to issue benefit payments and to report non-delivery, forgery, theft or loss of a benefit payment;

2. A person or a company which the claimant reports may award pay for time lost or some similar payment for the same period for which the RRB pays benefits;

3. Persons or companies named by the claimant as liable for paying damages for the same injury or illness for which the RRB pays sickness benefits;

4. The Internal Revenue Service for use in administering Federal tax laws;

5. A private collection agency, the General Accounting Office, the Department of Justice or the Internal Revenue Service for the collection of an overpayment;

6. Employers or insurance companies for use in administering supplemental benefit or health insurance plans;

7. Law enforcement agencies and the Department of Justice for investigating or prosecuting a violation of law;

8. Employers to verify entitlement to benefits and to provide notice of benefit payment determinations; and

9. State unemployment agencies to verify entitlement to benefits.

Other than information that may be disclosed routinely, no information about your claim may be disclosed without your consent.

## Computer Matching and Privacy Protection Act Notice

In addition to the uses of information described in the preceding Privacy Act Notice, information you provide may be used, without your consent, in automated matching programs. These matching programs are a computer comparison of Railroad Retirement Board records with records kept by other Federal agencies or State and local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for benefits and for repayment of benefits or delinquent debts.

### What Are Computer Matching Programs?

Computer matching programs compare our records with those of other Federal, State, or local government agencies. All agencies may use matching programs to find or prove that a person qualifies for benefits paid for by the Federal government.

### How Do Computer Matching Programs Affect You?

On forms that you fill out for us you give us facts about yourself. Sometimes, we check the facts you and others give us. We use computer matching to do the checking. The law allows us to check this way even if you do not agree to it. We can also give any facts we have about you to other government agencies for them to use in their computer matching programs.

10

## Paperwork Reduction Act Notice

To receive sickness benefits, you must complete an application and claim form(s). You may also be asked to complete other forms. Some of these forms are listed below along with estimates of how long we think it takes to complete them. The estimates include time for reviewing the instructions, getting the needed information, and reviewing the completed form. Federal agencies may not conduct or sponsor, and respondents are not required to respond to a collection of information unless it displays a valid OMB number. If you wish, send comments on the accuracy of our estimates or other aspects of the forms, including suggestions for reducing completion time, to the Chief of Information Management, Railroad Retirement Board, 844 N. Rush Street, Chicago Illinois 60611-2092 and to the Office of Management and Budget, Paperwork Reduction Project, Washington, D.C. 20503. Be sure to include the form title and control number (in parentheses) with your comments. Do not, however, send your sickness benefit forms to these addresses.

| Form No. | Title | Estimated Completion Time (Minutes) |
|---|---|---|
| SI-1a | Application for Sickness Benefits (3220-0039) | 10 |
| SI-3 | Claim for Sickness Benefits (3220-0039) | 5 |
| SI-10 | Statement of Authority to Act for Employee (3220-0034) | 6 |
| ID-7h | Notice of Non-Entitlement to Sickness Benefits and Information on Unemployment Benefits (3220-0039) | 5 |

## Nondiscrimination on the Basis of Disability

Under Section 504 of the Rehabilitation Act of 1973 and RRB regulations, no qualified person may be discriminated against on the basis of disability. The RRB's programs and activities must be accessible to all qualified applicants and beneficiaries, including those who are vision or hearing impaired. Disabled persons needing assistance (including auxiliary aids or program information in accessible formats) should contact the nearest RRB office.

Complaints of alleged discrimination by the RRB on the basis of disability must be filed within 90 days in writing with the Director of Administration, Railroad Retirement Board, 844 North Rush Street, Chicago, Illinois 60611-2092. Questions about individual rights under this regulation may be directed to the RRB's Director of Equal Opportunity at the same address.

11