UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH CARMACK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 03-12488-PBS |
| | ) | |
| NATIONAL RAILROAD | ) | |
| PASSENGER CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DISCOVERY MOTIONS

This matter is before the court on the defendant's "Motion to Compel the Disclosure of Information and Medical Records Pertaining to Plaintiff's Mental Health and Psychiatric Treatment" (Docket # 31) and plaintiff's "Motion for a Protective Order Limiting Disclosure of Information and Medical Records Pertaining to Plaintiff's Mental Health and Psychiatric Treatment and All Medical Records" (Docket No. 39). After consideration of the pleadings filed by the parties, oral argument and an in camera review of various documents, the motions are ALLOWED IN PART and DENIED IN PART as detailed below.

## FACTUAL BACKGROUND

The plaintiff was employed as an engineer by the defendant, Amtrak. According to the defendant, on April 11, 2001, plaintiff's supervisor found a letter written by the plaintiff entitled "Letters from Hell." Amtrak perceived the letter to be threatening, which plaintiff denies. The plaintiff was eventually suspended, and ordered to undergo a

psychiatric fitness for duty exam. The plaintiff refused to undergo the exam as proposed by Amtrak, relying on his doctor's advice and contending that undergoing the exam without limitations would cause him psychological harm. On September 10, 2001, the plaintiff was charged with insubordination. Hearings were held in April and May 2002, at which time the plaintiff was represented by a local union representative. The plaintiff was found to be insubordinate and the plaintiff's employment with Amtrak was terminated.

The plaintiff's version of events differs significantly. Specifically, but without limitation, plaintiff contends that he "was fraudulently assessed with posing a direct threat to himself and others" and that the assessment was based on a fraudulent and defamatory accusation that he was suffering a severe psychiatric disorder. Plaintiff's Memorandum (Docket No. 40) at 2. He further contends "that the charge of insubordination was fraudulent pretext for retaliation when [p]laintiff requested specific accommodation." Id.

According to the plaintiff, his dispute with his employer began around October 2000, when he reported equipment violations of Federal Railroad Administration ("FRA") regulations to his employer. Thereafter, the plaintiff engaged in extended and unfruitful discussions with Amtrak personnel. Id. at 3-6. The plaintiff eventually wrote a satirical piece which Amtrak misconstrued as being threatening. Id. at 7.

According to the plaintiff, Amtrak discriminated against him by requiring him "to undergo examination by reason of a perceived disability ('severe psychiatric disorder . . .

-2-

bi-polar disorder or personality disorder') in clear violation of the ADA." Id. at 8. Plaintiff also requested "special accommodation" in connection with the exam due to his disability. It was the plaintiff's position, as described in a letter from his doctor dated May 30, 2001, which was not given to Amtrak until April 2002, that "a forced, nonconfidential psychiatric consultation would be inadvisable for medical reasons." Id. at 9, Exhibit G.[1] Thus, plaintiff requested as an accommodation "that the examiner release only that information which was job-related and consistent with business necessity. In the instant case, that would limit the examination to an inquiry related to plaintiff's writings." Id. According to the plaintiff, in response to this request for accommodation, he was charged with insubordination and eventually fired after four days of investigation over a two month period.

The plaintiff filed a charge of discrimination with the MCAD on or about February 2002, which was dismissed by the agency on May 13, 2002. He then filed a complaint, which was amended most recently on January 3, 2005. In paragraph 402 of the Second Amended Complaint, the plaintiff alleges, inter alia, that he was discriminated against on the basis of both an actual disability (Count 3 (IV, V and VI)), as well as a perceived disability (Count 3 (III)). He also alleges, inter alia, that the defendant is liable for intentional infliction of emotional distress (Count 7) and defamation (Count 1). As a

---

[1] On April 4, 2002, the same doctor wrote a letter "To Whom It May Concern" that she had advised that plaintiff "that a forced, non-confidential psychiatric consultation because of its coercive and intrusive nature, would be medically harmful to him and ethically suspect." Plaintiff's Memorandum (Docket No. 33) Ex. D.

result of this wrongful conduct, plaintiff contends that he has suffered several emotional distress, including "an increased inability to trust in others or to obtain effective psychiatric treatment and to enjoy fundamental freedom and opportunities" (¶ 395), as well as "an increased inability to form belief and value systems and engage in rational thought." (¶ 396). Nevertheless, the plaintiff denies that he has placed his mental state at issue in this litigation.

By its motion to compel, the defendant is seeking documents, which have been produced to the court for in camera inspection both in a redacted and unredacted form. In addition, the defendant is seeking answers to Interrogatories No. 13-18, an order that the plaintiff "provide full and complete deposition testimony on his mental health and history" and "not attempt to prevent the deposition testimony of Michael O'Bryan," his union representative, on the subject of Plaintiff's mental health. Plaintiff's Mem. at 1. To the extent that the motion to compel relates to materials in the possession of Drs. Gurian and Stark, the issues have been decided in a prior order of this court dated April 15, 2005.

## DISCUSSION

This case involves primarily questions of federal law. Consequently, pursuant to Federal Rule of Evidence 501, the federal common law of privileges applies. Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 226-27 (D. Mass. 1997) ("if federal substantive law controls a civil case, federal common law would control questions of privilege"). Federal common law recognizes a psychotherapist/patient privilege. Id. at 227 (citing

Jaffee v. Redmond, 518 U.S. 1, 15, 116 S. Ct. 1923, 1931, 135 L. Ed. 2d 337 (1996)). The privilege is "rooted in the imperative need for confidence and trust" in psychotherapy. Id. at 10, 116 S. Ct. at 1928 (internal quotation omitted). Consequently, the Supreme Court has expressly rejected a "balancing component" of the privilege in order that the participants in the confidential conversation may be able "to predict with some degree of certainty whether particular discussions will be protected." Id. at 18, 116 S. Ct. at 1932 (internal quotation omitted). See also Vanderbilt, 174 F.R.D. at 227 ("decisions regarding the privilege should not be made by balancing the interests of the patient and the value of the evidence").

Nevertheless, the privilege may be waived. Id. at 228. The waiver may be explicit or may occur through the disclosure of the privileged information. Id. It is well established that use by the plaintiff of the evidence himself results in a waiver of the privilege. Id. The issue in the instant case is whether given the allegations of the complaint, the plaintiff has waived the privilege and/or indicated an intention "to make affirmative use of the privileged communications." Sorenson v. H&R Block, Inc., 197 F.R.D. 199, 204 (D. Mass. 2000) (analyzing privilege under Massachusetts law).

It is clear to this court that the plaintiff has put his mental condition at issue by, at a minimum, claiming a disability based on his psychiatric condition and seeking an accommodation therefor. See Sarko v. Penn-Del Directory Co., 170 F.R.D. 127, 130 (E.D. Pa. 1997), aff'd without opinion, 189 F.3d 464 (3d Cir. 1999) (where plaintiff puts her mental condition in issue by claiming to be disabled under the ADA due to a mental

-5-

impairment, plaintiff has waived he psychotherapist/patient privilege).[2]  The record is less clear whether he has also waived the privilege in light of his damages claim.  As asserted, it appears that the plaintiff would need expert testimony to establish the extreme emotional distress he contends was the result of the defendant's wrongful conduct.  (See Compl. at ¶¶ 395-96).  Proof of both the existence of the conditions, as asserted, as well as causation, will most likely require expert testimony and the privilege will be waived.  See Vanderbilt v. Town of Chilmark, 174 F.R.D. at 230 (privilege "cannot and should not at once be used as a shield and a sword"; calling psychotherapist as a witness would result in a waiver of the privilege) (citation omitted).  In view of the fact that discovery concerning the defendant's mental condition already has been exchanged, and additional discovery is ordered herein, this court will allow discovery on the damages claim as well, as described below.  This way, the plaintiff will not be prevented from pursuing his claim for severe emotional distress at trial due to a failure to provide relevant discovery.

## ORDER

While there has been some waiver of the psychotherapist/patient privilege, the information sought by the defendant is far too broad.  Not only has Amtrak sought irrelevant and burdensome information, but the level of intrusion into the plaintiff's life is excessive.  Thus, discovery is allowed as follows:

---

[2] A claim limited to "perceived disability" under the ADA would not necessarily result in a waiver of the privilege since whether the plaintiff was actually disabled might not be relevant. See Ruhlmann v. Ulster County, Dep't of Soc. Servs., 194 F.R.D. 445, 448 (N.D.N.Y. 2000), and cases cited.  In the instant case, however, Carmack's complaint is not so limited.

**Depositions**

As a general proposition, this court finds that the defendant may inquire at depositions as to the plaintiff's mental condition from January 1, 1999 to the present. Such inquiry, however, shall be limited to diagnoses, the facts describing the treatment sought and obtained, the behavior and symptoms the plaintiff exhibited and discussed, and communications concerning the events at issue in this litigation and the plaintiff's claim of damages.[3] To the extent that there were other events in the plaintiff's life that caused him to seek psychiatric counseling prior to January 1, 1999, the defendant may not inquire into those events or the facts surrounding those events.

**Documents**

The plaintiff has produced all the responsive documents to the court for an in camera review. Based on this review, this court orders that the following documents be produced:

Insurance Documents (unlabeled packets). Most of the documents are unrelated to the relevant time period. The plaintiff shall produce the last two pages of the package (Statement of Sickness signed by Dr. Gurian on November 8, 2000, and related page signed by plaintiff on November 9, 2000) in its unredacted form.

---

[3] In light of the plaintiff's pro se status, this court has tried to be as specific as possible to avoid future disputes. This court recognizes, however, that it cannot anticipate all areas of inquiry. Especially in view of the confidentiality order required herein, this court is hopeful that the parties will be able to work together to resolve issues concerning the scope of the permissible discovery. If they are unable to do so, however, the court will address the disputes in the context of appropriately filed motions.

Third Party Communications. Billing forms and health insurance claim forms shall be produced in their unredacted form, except that the plaintiff's federal tax identification number may be redacted.[4] To the extent these forms are deemed to include privileged information, the privilege has been waived as described above. Moreover, a psychotherapist's identity and the dates and costs of treatment are simply not privileged. Sorenson v. H&R Block, Inc., 19 F.R.D. at 205, and cases cited.

Doctors' Records. The documents are to be produced in their unredacted form.

## Interrogatories

The defendant is seeking an order compelling the plaintiff to respond to Interrogatories No. 13-18. It is hereby ordered as follows:

Interrogatory No. 13 - motion to compel is allowed with respect to subparts (a)-(j). Subpart (k) is overly broad and ambiguous. As the substance of the information has been requested in other document requests and interrogatories, no response to subpart (k) is required. To the extent that the information requested is included in documents which have been produced, the plaintiff may identify the documents containing the information in accordance with Fed. R. Civ. P. 33(d).

Interrogatory No. 14 - motion to compel is allowed with respect to subparts (a)-(j) for the period January 1, 1999 to the present. To the extent, however, that the information requested is included in documents which have been produced, the plaintiff

---

[4] The first four pages of notes in the package of documents are outside the relevant time period and do not need to be produced.

may identify the documents containing the information in accordance with Fed. R. Civ. P. 33(d).

Interrogatory No. 15 - motion to compel is denied.  This interrogatory is overly broad, unduly burdensome and seeks irrelevant information.  To the extent that relevant information is being sought it will be provided in response to other interrogatories or document requests.

Interrogatory No. 16 - motion to compel is allowed as to the period January 1, 1999 to the present.

Interrogatory No. 17 - motion to compel is denied.  This interrogatory is overly broad, unduly burdensome and seeks irrelevant information.  To the extent that relevant information is being sought it will be provided in response to other interrogatories or document requests.

Interrogatory No. 18 - motion to compel is allowed as to prescriptions only.  The remainder of the interrogatory is overly broad and unduly burdensome.

## CONFIDENTIALITY ORDER

It is hereby ordered that the documents and medical information required to be produced herein shall be deemed confidential, and its use shall be limited to this litigation.  The parties shall attempt to negotiate a confidentiality agreement including these and any other terms they require.  By July 8, 2005, the parties shall file either an agreed upon confidentiality order or their individual proposed orders for this court's consideration.

The plaintiff shall make arrangements with Thomas Quinn, Courtroom Deputy, to pick up the documents submitted for in camera review.

                        / s / Judith Gail Dein
                        Judith Gail Dein
                        United States Magistrate Judge

DATED:  June 29, 2005