UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH T. CARMACK<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION<br><br>Defendant. | Civil Action No. 03 12488 PBS |

**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
DISCLOSURE OF FURTHER DOCUMENTS**

Defendant, National Railroad Passenger Corporation ("Amtrak"), opposes Plaintiff's Motion to Compel Further Documents on grounds that Amtrak has already produced all non-privileged documents responsive to his Requests for Documents in Amtrak's possession, custody or control. Moreover, Amtrak opposes Plaintiff's efforts in Request Nos. 6, 7, and 8 to obtain highly private, personal, and confidential documents associated with Gerard DeModena, a former Amtrak employee, on grounds that they are not relevant to the issues in this civil action and the disclosure of said documents will be an unwarranted violation of his privacy rights.

Plaintiff argues in his motion for the disclosure of all documents in Amtrak's possession, custody or control related to the following Requests: 1, 2, 3, 6, 7, and 8.[1]  The specific grounds for Amtrak's opposition to Plaintiff's Motion are set forth below.

---

[1]  For the Court's convenience, Amtrak's formal objections and responses to these Requests are included directly below the text of the specific Requests at issue.

**PLAINTIFF'S REQUEST NO. 1:**

Request No. 1: All documents concerning any correspondence, conversations, statements, reports and/or communications produced by Defendant or on behalf of Defendant by anyone regarding:

(a) any alleged workplace violence incident of any type alleged to have been committed by Plaintiff;
(b) any alleged threat of any type alleged to have been committed by Plaintiff;
(c) any alleged mental condition of Plaintiff which any person may have documented for any reason;
(d) any alleged behavioral characteristic of Plaintiff which any person may have documented for any reason;
(e) any disparaging, derogatory or critical reference to Plaintiff which any person may have documented for any reason and in any context;
(f) the sexuality of the Plaintiff; and
(g) any personal matter regarding Plaintiff.

Amtrak Response: Amtrak objects to this Request on grounds that it is vague and ambiguous as to what is meant by the phrases "communications produced by Defendant or on behalf of Defendant," and "any personal matter regarding Plaintiff." Amtrak further objects to sub-part (f) of this Request on grounds that it seeks documents that are not relevant to the issues in dispute in this matter and not reasonably calculated to lead to the discovery of admissible evidence because there is no sexual discrimination or harassment component to Plaintiff's Complaint. Amtrak also objects to this Request to the extent it seeks documents prepared in anticipation of litigation or otherwise protected from disclosure by the attorney-client privilege or the work product doctrine. Without waiving these privileges, and to the extent the word "produced" in the phrase "communications produced by Defendant or on behalf of Defendant," means "prepared" or "created," Amtrak states that it will produce those non-privileged documents responsive to this Request in its possession, custody or control that have not already been produced in Amtrak's Initial Disclosures.

Argument re Request No. 1

Amtrak denies Plaintiff's allegation in his Motion to Compel that all communications concerning him, regardless of date or subject matter are relevant to his claim, including his sexuality, as mentioned in Amtrak's objection immediately above. Nonetheless, Amtrak has not withheld any documents from production in response to this Request except for documents protected by the most fundamental privileges recognized by the Court, i.e. attorney-client communications, attorney work product, and documents prepared in anticipation of this

2

litigation. Rather, it has produced all files in which, it believes there to be references to Plaintiff.

**REQUEST NO. 2:**

Request No. 2: All documents concerning any correspondence, conversations, statements, reports and/or communications regarding Amtrak Policies and Procedures including, but not limited to the Amtrak Policies and Procedures Manual, Polices and Procedure Manuals for the Amtrak Medical Department, Polices and Procedure Manuals for the Amtrak Labor Relations Department, Policies and Procedure Manuals for Amtrak Human Resources Department, the Polices and Procedure Manuals for the Amtrak Transportation Department and Policies and Procedure Manuals for Amtrak Commuter Rail.

Amtrak Response:    Amtrak objects to this Request on the grounds that it is overbroad and unduly burdensome and on grounds that it is vague and ambiguous as to what is meant by "policies and procedure manuals." Amtrak further objects to this Request on grounds that it seeks documents that are not relevant to the issues in dispute in this matter and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks such documents without limitation to time frame, geographic location, or subject matter. Amtrak also objects to this Request to the extent it seeks documents prepared in anticipation of litigation or otherwise protected from disclosure by the attorney-client privilege or the work product doctrine. Without waiving these objections, Amtrak refers Plaintiff to Amtrak's Initial Disclosures and states that it will produce its manual for transportation employees and the pertinent portions of policies and procedures manuals, if any, for the Medical, Labor Relations, and Human Resources departments used in 2001.

Argument re Request No. 2

Plaintiff argues that Amtrak has not clarified what he considers to be conflicts between Amtrak's Workplace Violence and Drug and Alcohol policies, particularly relative to fitness for duty criteria. Furthermore, he claims that Amtrak, despite being "quite responsive to this request", failed to produce the "red book" mentioned by Dr. Pinsky in his testimony at the Amtrak hearing in the spring of 2002. While it is true that Amtrak produced voluminous documents responsive to this Request, Plaintiff is mistaken regarding the "red book." This is a binder of documents that represent most of Amtrak's policies and procedures, including but not limited to medical policies. As these policies change, the documents in the binder are replaced. In response to this Request, Amtrak produced the table of contents of this policy and procedures manual, and all relevant policies and procedures from the 2001 time frame. Plaintiff has never

requested any of the documents listed in the table of contents that were not produced. Consequently, Amtrak has been fully responsive to this Request.

With respect to his concern about possible inconsistencies, there is no obligation for Amtrak to explain documents in a response to a request for document production. This is not an interrogatory. Moreover, the documents speak for themselves.

**PLAINTIFF'S REQUEST NO. 3:**

Request No. 3: All contracts and agreements between Amtrak and Health Resources, Inc.

Amtrak Response: Amtrak objects to this Request on grounds that it seeks documents concerning private and confidential business practices of both organizations that are not relevant to the issues in dispute in this matter and not reasonably calculated to lead to the discovery of admissible evidence.

Argument re Request No. 3

Plaintiff states that any agreements between Amtrak and Health Resources relate to claims of discrimination on the basis of disability without explaining how. There is no basis for making such a conclusory statement.

Health Resources last interacted with Plaintiff when he returned to work at Amtrak from a leave of absence in late January 2001 months before Dr. Pinsky required Plaintiff to undergo a psychiatric fitness for duty exam. All of records in Amtrak's possession, custody or control pertaining to Health Resources' examination of Plaintiff and Health Resources' communications with Amtrak about Plaintiff have been produced. Plaintiff does not claim otherwise.

Amtrak has also produced all of its records of policies and procedures concerning requirements for fitness for duty exams, including directives to its outside care givers, such as Health Resources, as to how to conduct various examinations, including those relating to return to work and fitness for duty.

Furthermore, Health Resources did not participate in any way, nor does Plaintiff allege

that it did, in Amtrak's decision in May 2001 that Plaintiff undergo a psychiatric fitness for duty exam. Health Resources was never in contact with Plaintiff on behalf of Amtrak after January 2001.

Hence, there is no reason to divulge the highly proprietary information in contracts between Health Resources and Amtrak, including pricing information, which could not have any conceivable relation to Plaintiff's claim of disability discrimination or any other of the counts in his Second Amended Complaint.

**PLAINTIFF'S REQUEST NO. 6:**

Request No.6:   All documents concerning correspondence, conversations, statements, reports and/or communications regarding Plaintiff in Gerard L. De Modena's diaries, personal files, appointment books, business files, classroom notebooks or any other such documents concerning correspondence, conversations, statements, reports and/or communications regarding Plaintiff produced by Gerard L. De Modena at any time for any reason.

Response No. 6:   Amtrak objects to this Request to the extent it seeks documents prepared in anticipation of litigation or otherwise protected from disclosure by the attorney-client privilege or the work product doctrine. Amtrak will produce all non-privileged documents in its possession, custody or control concerning correspondence, conversations, statements, reports and/or communications regarding Plaintiff in Gerard DeModena's diaries, personal files, appointment books, business files, classroom notebooks or any other such documents

Argument re Request No. 6

Amtrak has already produced copies of the only pages in Mr. DeModena's daily work journal that reference Mr. Carmack. No other documents in the possession of Mr. DeModena or in Amtrak's files on Mr. DeModena refer to Mr. Carmack other than documents previously produced in this matter, e.g. the "Letters from Hell," and memoranda from August 2002 in the Amtrak Police file.

**PLAINTIFF'S REQUEST NO. 7**

<u>Request No. 7</u>: All documents concerning correspondence, conversations, reports and/or communications, class projects and class reports produced by Gerald L. De Modena, including, but not limited to projects or assignments concerning the poem "The Emperor of Ice Cream" by Wallace Stevens.

<u>Response No. 7</u>:   Amtrak objects to this Request on grounds that it seeks documents that are not relevant to the issues in dispute in this matter and not reasonably calculated to lead to the discovery of admissible evidence. Amtrak further objects to this request on grounds that it seeks private and confidential information the disclosure of which may violate Mr. DeModena's privacy rights pursuant to M.G.L. c. 214 §1B or the common law.

<u>Argument re Request No. 7</u>

For the reasons expressed in more detail in Amtrak's response to the broader Request No. 8, immediately below, this Request should be denied because it seeks documents which are entirely irrelevant to the issues in this litigation. Mr. DeModena's writings concerning literary class assignments, including "The Emperor of Ice Cream," can shed no light on whether he was alarmed by the threats against him he perceived in the "Letters from Hell." In fact, if he had better known Shakespeare's "Hamlet" and Tom Stoppard's "Rosencrantz and Guildenstern" in April 2001, he would have been even more frightened by the parallels made by Plaintiff in the "parody."

The disclosure of any class assignments that Mr. DeModena may have preserved will unnecessarily reveal private information about his academic performance. However, this material will not advance the progress of this case in this Court, but will most certainly result in it being mired down in tangential and irrelevant matters.

**PLAINTIFF'S REQUEST NO. 8**

<u>Request No. 8</u>: All documents concerning correspondence, conversations, reports and/or communications, regarding Gerard L. De Modena, including, but not limited to, all personnel files, discipline files, medical files, attendance records, absenteeism, payroll records and work history.

<u>Response No. 8</u>: Amtrak objects to this Request on grounds that it seeks documents that are not relevant to the issues in dispute in this matter and not reasonably calculated to lead to the discovery of admissible evidence. Amtrak further objects to this request on grounds that it seeks private and confidential information the disclosure of which may violate Mr. DeModena's privacy rights pursuant to M.G.L. c. 214 §1B or the common law. Amtrak also objects to this Request to the extent it seeks documents prepared in anticipation of litigation or otherwise protected from disclosure by the attorney-client privilege or the work product doctrine.

<u>Argument re Request No. 8</u>

Plaintiff seeks the personnel file and other very personal documents of former Amtrak employee Gerald DeModena. Such documents have no relevance to this case in which Mr. DeModena is a victim. He returned to his office one day to find a document, the "Letters from Hell," on his desk written by Plaintiff, using the pen name "Lucifer, Prince of Darkness." It described a play in which Mr. DeModena is murdered. Concerned for his safety, and in accordance with Amtrak policy, Mr. DeModena filed a workplace violence form. Inexplicably, Plaintiff now wants to uncover every personal detail about Mr. DeModena, perhaps as a form of revenge.

Certainly Mr. DeModena's medical, attendance, and payroll records can have no conceivable relevance to Plaintiff's civil action against Amtrak which arose from his termination for insubordination. Moreover, Amtrak has no records in its possession, custody or control concerning any discipline of Mr. DeModena, even if these were somehow relevant to the issues in this case. Finally, documents concerning Mr. DeModena's work history, including his promotion from locomotive engineer to road foreman, and extremely private information about

his salary, social security number, and family, are also irrelevant.

The disclosure of such irrelevant documents would severely infringe on Mr. DeModena's rights while serving no meaningful purpose in this case. "[P]ersonnel files contain perhaps the most private information about an employee within the possession of an employer." Id; see also Miles v. Boeing, Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994) (personnel files are confidential and discovery of them should be limited); and Gehring v. Case Corp., 43 F.R.D. 340, 342 (7th Cir. 1994) (upholding District Court decision that releasing personnel files of others would violate privacy interests), cert. denied, 115 S.Ct. 2612, 132 L.Ed. 2d 855 (1995).

Furthermore, the privacy rights of Amtrak's current and former employees with regard to the confidential information contained in their personnel files is codified in Massachusetts General Laws c. 214 § 1B. This statute proclaims, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Unauthorized disclosure of confidential employment records may be a violation of this statute. A breach of one's statutory obligations such that harm is allegedly caused to another party may give rise to tort claims for damages. See Alberts v. Devine, 395 Mass. 59, 67-69 (1985) (third party's actions led to disclosure of confidential doctor-patient communications, resulting in tort liability of that third party). Consequently, Amtrak may violate the privacy rights of Mr. DeModena and expose itself to tort liability by releasing his personnel file without his approval. He has not given his approval.

As a result, Amtrak and Mr. DeModena (represented herein by Amtrak as a former employee) move the Court to deny this Request so that these highly private and confidential documents are not divulged in response to a vindictive or misguided fishing expedition.

WHEREFORE, Amtrak moves this Court to deny Plaintiff's Motion to Compel and to provide any other relief it deems appropriate.

        Respectfully submitted,
**DEFENDANT,
NATIONAL RAILROAD PASSENGER CORPORATION,**
By Its Attorneys,

DATED:   July 29, 2005

s/Stephen E. Hughes
John A. Kiernan (BBO No. 271020)
Stephen E. Hughes (BBO No. 629644)
BONNER KIERNAN TREBACH & CROCIATA
One Liberty Square - 6th Floor
Boston, MA 02109
(617) 426-3900

### Certificate of Service

I, Stephen E. Hughes, hereby certify that I have on July 29, 2005 served a true copy of the foregoing document by first class mail, postage prepaid, to:

<u>Plaintiff (Pro Se):</u>
Joseph T. Carmack
398 Columbus Ave., PMB 130
Boston, MA 02116-6008

        s/Stephen E. Hughes
        Stephen E. Hughes