UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH T. CARMACK<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION<br><br>Defendant. | Civil Action No. 03 12488 PBS |

**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S SUPPLEMENT TO ITS MOTION TO COMPEL DISCLOSURE OF PLAINTIFF'S ALLEGED PRIVILEGED COMMUNICATIONS *AND* OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AGAINST DISCOVERY OF TRADE SECRETS AND ALLEGED PRIVILEGED COMMUNICATIONS OF THE BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN**

On August 18, 2005, Defendant, National Railroad Passenger Corporation ("Amtrak"), filed its motion for an order compelling Plaintiff to produce the letters identified by him in a privilege log, dated July 8, 2005, which consist of communications between him and Mark Kenny, a union representative. On August 31, 2005, Plaintiff moved pursuant to Fed. R. Civ. P. 26(c)(7) and the Railway Labor Act 45 U.S.C. § 151 et seq., for a protective order against discovery of these letters. In doing so, Plaintiff erroneously asserts that: (i) a union representative-employee privilege exists and/or or should exist; and (ii) a strategy of defense is a trade secret.

Amtrak herewith supplements its motion to compel disclosure of the letters between Plaintiff and Mr. Kenny, and opposes Plaintiff's motion for a protective order. Further, Amtrak

moves this Court to compel disclosure of the March 27, 2004 letter from Plaintiff to George Newman, another union official. As grounds there for, Amtrak states that Plaintiff has neither identified any recognized "representative/client" privilege nor provided any case law or legal support for his refusal to produce these letters. Moreover, Plaintiff's reliance upon the trade secret doctrine is misplaced. Consequently, there is no basis for withholding the letters and they should be disclosed to Amtrak.

I.     **The First Circuit does not recognize a "union representative-employee" privilege which extends to subsequent litigation.**

Plaintiff asserts that Mark Kenny was one of various individuals who served as "representatives" in the matter which was ultimately reviewed by the Public Law Board and which involved the subject of this litigation. Accordingly, Plaintiff posits that this Court should recognize a new privilege applicable to the communications between Plaintiff and Mr. Kenny.

Pursuant to Fed. R. Evid. 501, the federal common law of privileges applies to the issue of whether communications between Plaintiff and Mr. Kenny are discoverable. However, there is no common law privilege for communications between a union representative and an employee. *See In re Grand Jury Subpoenas Dated January 29, 1998*, 995 F. Supp. 332, 335-37 (E.D. N.Y. 1998) ("[W]hatever representation, advice or guidance [union members] may have sought from these union officials, their communications do not fall within the strict parameters of the attorney-client privilege."). Plaintiff has proffered no case law to the contrary. Further, Plaintiff cites no case law supporting his contention that such a privilege should be created in light of the Railway Labor Act and/or the "doctrine of fair representation."

Addressing claims identical to those asserted by Plaintiff, the court in *In re Grand Jury Subpoenas Dated January 29, 1998* declined to recognize a new privilege between a union representative and an employee. *See* 995 F. Supp. 332. Specifically, the union therein "failed to

show that the union relationship is so highly valued by an ordered society that its confidences warrant protection even at the cost of losing evidence important to the administration of justice." *Id.* at 335. More specifically, the union could not "claim that the confidential relationship between a union representative and a union member has the same strong historic roots as those generally afforded the protection of common law, *i.e.*, husband and wife, clergyman and communicant, or attorney and client." *Id.* The court further found that the union relationship was no more "deserving of protection than other important confidential relationships which courts have refused to recognize as privileged." *Id.* (citations omitted). Similarly, as more fully discussed below, Plaintiff in the case at bar has failed to satisfy the high burden of proof required for the Court to recognize a new privilege. *See generally id.*; *see also Walker v. Huie*, 142 F.R.D. 497, 501 (D. Utah 1992) (any injury disclosure may cause the relationship between union members and their representatives does not outweigh the benefit to be gained from correct disposal of the litigation).

In asserting that the court should recognize a union representative-employee privilege, Plaintiff references various general provisions of the Railway Labor Act, as well as the doctrine of fair representation which "is inferred from unions' exclusive authority under the National Labor Relations Act ("NLRA")." *See Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 527 (1990).

However, the random provisions of the Railway Labor Act cited by Plaintiff, 45 U.S.C. § 152 Second, Third and Fourth; and 45 U.S.C. § 153(j) (attached hereto), are irrelevant and provide no legal guidance on the issue of whether the communications between Plaintiff and Mr. Kenny are discoverable in the case at bar. Plaintiff offers no legal authority for his conclusory and ill-advised references to these RLA provisions.

3

Furthermore, Plaintiff's reliance on the implied doctrine of fair representation is also misplaced. The doctrine of fair representation merely works to protect union members from arbitrary, hostile or discriminatory union conduct by imposing a "duty of fair representation" upon union representatives. *See United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 374 (1990); *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. at 527 (implied duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct") (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). Accordingly, the doctrine of fair representation is inapplicable to the issue of whether a privilege exists. Plaintiff cites no case law, nor has Amtrak been able to find any case law, to the contrary. Further, Plaintiff cites no law supporting his contention that the duty of fair representation mandates confidentiality of communications between a union representative and employee.

Finally, the union relationship was not among the nine privileges specifically enumerated in Article V of the Federal Rules of Evidence proposed by the Supreme Court to Congress in 1973 and therefore "the claimed privilege was not thought to be indelibly ensconced" in federal common law. *See In re Grand Jury Subpoenas Dated January 29, 1998*, *supra* at 335 (quoting *U.S. v. Gillock*, 445 U.S. 360, 367-68 (1980)). Nor is there any similar privilege recognized or contemplated under Massachusetts law. Hence, this Court should refrain from recognizing any such new privilege.

## II.    The communications between Plaintiff and Mark Kenny are not trade secrets, and thus are discoverable.

In light of the foregoing and in an attempt to evade discovery by Amtrak of relevant communications, Plaintiff also erroneously asserts that the communications would reveal the "strategy of defense" of the Brotherhood of Locomotive Engineers and Trainmen ("BLET")

4

which entails "trade secrets."

Again Plaintiff has cited no case law, nor has Amtrak been able to find any case law, which supports Plaintiff's contention that Fed. R .Civ. P. 26(c)(7) applies to the letters between Plaintiff and Mr. Kenny. Further, these letters do not fall within any recognized definition of the term "trade secret" which clearly must involve something having commercial or economic value and affording an advantage over competitors. *See Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 n. 2 (1st Cir. 1985) and *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 736 (1970) (citing Restatement of Torts § 757 ("A treat secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.")). *See also* Black's Law Dictionary, 6th ed. ("A secret formula or process not patented, but known only to certain individual using it in compounding some article of trade having commercial value."). Amtrak is not a "competitor." Nor can Amtrak fathom how the BLET's "defense strategy" could involve any commercial or economic value to the union. Moreover, if communications involving a "defense strategy" fell within the ambit of the term "trade secret," there would be no need for the federal common law attorney-client privilege. Accordingly, based on the foregoing, the letters between Plaintiff and Mr. Kenny do not fall within the ambit of Fed. R. Civ. P. 26(c)(7).

WHEREFORE, Amtrak moves the Court for an order compelling production of the letters between Plaintiff and Mark Kenny, and between Plaintiff and George Newman.

Respectfully submitted,
DEFENDANT,
NATIONAL RAILROAD PASSENGER CORPORATION,
By Its Attorneys,

DATED:  September 9, 2005

s/Stephen E. Hughes
John A. Kiernan (BBO No. 271020)
Stephen E. Hughes (BBO No. 629644)
Bonner Kiernan Trebach & Crociata, LLP
One Liberty Square - 6th Floor
Boston, MA 02109
(617) 426-3900

### Certificate of Service

I, Stephen E. Hughes, hereby certify that I have on September 9, 2005 served a true copy of the foregoing document by first class mail, postage prepaid, to:

Plaintiff (Pro Se):
Joseph T. Carmack
398 Columbus Ave., PMB 130
Boston, MA 02116-6008

s/Stephen E. Hughes
Stephen E. Hughes