UNITED STATES CODE SERVICE
Copyright © 2005 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 109-60, APPROVED 8/11/05 ***
*** WITH THE EXCEPTIONS OF P.L. 109-58 and 109-59 ***

TITLE 45. RAILROADS
CHAPTER 8. RAILWAY LABOR
GENERAL PROVISIONS

§ 151.  Definitions; short title

When used in this Act and for the purposes of this Act--

First. The term "carrier" includes any railroad subject to the jurisdiction of the Surface Transportation Board, any express company that would have been subject to subtitle IV of title 49, United States Code [49 USCS §§ 10101 et seq.], as of December 31, 1995,[,] and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad, and any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the business of any such "carrier": *Provided, however,* That the term "carrier" shall not include any street, interurban, or suburban electric railway, unless such railway is operating as a part of a general steam-railroad system of transportation, but shall not exclude any part of the general steam-railroad system of transportation now or hereafter operated by any other motive power. The Surface Transportation Board is hereby authorized and directed upon request of the Mediation Board or upon complaint of any party interested to determine after hearing whether any line operated by electric power falls within the terms of this proviso. The term "carrier" shall not include any company by reason of its being engaged in the mining of coal, the supplying of coal to a carrier where delivery is not beyond the mine tipple, and the operation of equipment or facilities therefor, or in any of such activities.

Second. The term "Adjustment Board" means the National Railroad Adjustment Board created by this Act.

Third. The term "Mediation Board" means the National Mediation Board created by this Act.

Fourth. The term "commerce" means commerce among the several States or between any State, Territory, or the District of Columbia and any foreign nation, or between any Territory or the District of Columbia and any State, or between any Territory and any other Territory, or between any Territory and the District of Columbia, or within any Territory or the District of Columbia, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign nation.

Fifth. The term "employee" as used herein includes every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the

orders of the Surface Transportation Board now in effect, and as the same may be amended or interpreted by orders hereafter entered by the Board pursuant to the authority which is hereby conferred upon it to enter orders amending or interpreting such existing orders: *Provided, however,* That no occupational classification made by order of the Surface Transportation Board shall be construed to define the crafts according to which railway employees may be organized by their voluntary action, nor shall the jurisdiction or powers of such employee organizations be regarded as in any way limited or defined by the provisions of this Act or by the orders of the Board.

The term "employee" shall not include any individual while such individual is engaged in the physical operations consisting of the mining of coal, the preparation of coal, the handling (other than movement by rail with standard railroad locomotives) of coal not beyond the mine tipple, or the loading of coal at the tipple.

Sixth. The term "representative" means any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them.

Seventh. The term "district court" includes the Supreme Court of the District of Columbia [United States District Court for the District of Columbia]; and the term "circuit court of appeals [court of appeals]" includes the Court of Appeals of the District of Columbia [United States Court of Appeals for the District of Columbia].

This Act may be cited as the "Railway Labor Act."

**History:**

   (May 20, 1926, ch 347, Title I, § 1, ❖ 44 Stat. 577; June 21, 1934, ch 691, § 1, ❖ 48 Stat. 1185; April 10, 1936, ch 166, ❖ 49 Stat. 1189; Aug. 13, 1940, ch 664, §§ 2, 3, ❖ 54 Stat. 785.)
   (As amended Dec. 29, 1995, ❖ P.L. 104-88, Title III, Subtitle B, § 322, 109 Stat. 950; Oct. 9, 1996, ❖ P.L. 104-264, Title XII, § 1223, 110 Stat. 3287.)

UNITED STATES CODE SERVICE
Copyright © 2005 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 109-60, APPROVED 8/11/05 ***
*** WITH THE EXCEPTIONS OF P.L. 109-58 and 109-59 ***

TITLE 45. RAILROADS
CHAPTER 8. RAILWAY LABOR
GENERAL PROVISIONS

§ 152.  General duties

First. Duty of carriers and employees to settle disputes. It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

Second. Consideration of disputes by representatives. All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

Third. Designation of representatives. Representatives, for the purposes of this Act shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this Act need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

Fourth. Organization and collective bargaining; freedom from interference by carrier; assistance in organizing or maintaining organization by carrier forbidden; deduction of dues from wages forbidden. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act. No carrier, its officers or agents, shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions: Provided, That

nothing in this Act shall be construed to prohibit a carrier from permitting an employee, individually, or local representatives of employees from conferring with management during working hours without loss of time, or to prohibit a carrier from furnishing free transportation to its employees while engaged in the business of a labor organization.

Fifth. Agreements to join or not to join labor organizations forbidden. No carrier, its officers, or agents shall require any person seeking employment to sign any contract or agreement promising to join or not to join a labor organization; and if any such contract has been enforced prior to the effective date of this Act [enacted May 20, 1926], then such carrier shall notify the employees by an appropriate order that such contract has been discarded and is no longer binding on them in any way.

Sixth. Conference of representatives; time; place; private agreements. In case of a dispute between a carrier or carriers and its or their employees, arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, it shall be the duty of the designated representative or representatives of such carrier or carriers and of such employees, within ten days after the receipt of notice of a desire on the part of either party to confer in respect to such dispute, to specify a time and place at which such conference shall be held: Provided, (1) That the place so specified shall be situated upon the line of the carrier involved or as otherwise mutually agreed upon; and (2) that the time so specified shall allow the designated conferees reasonable opportunity to reach such place of conference, but shall not exceed twenty days from the receipt of such notice: And provided further, That nothing in this Act shall be construed to supersede the provisions of any agreement (as to conferences) then in effect between the parties.

Seventh. Change in pay, rules or working conditions contrary to agreement or to section 156 forbidden. No carrier, its officers or agents shall change the rates of pay, rules, or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements or in section 6 of this Act [45 USCS § 156].

Eighth. Notices of manner of settlement of disputes; posting. Every carrier shall notify its employees by printed notices in such form and posted at such times and places as shall be specified by the Mediation Board that all disputes between the carrier and its employees will be handled in accordance with the requirements of this Act, and in such notices there shall be printed verbatim, in large type, the third, fourth, and fifth paragraphs of this section. The provisions of said paragraphs are hereby made a part of the contract of employment between the carrier and each employee, and shall be held binding upon the parties, regardless of any other express or implied agreements between them.

Ninth. Disputes as to identity of representatives; designation by Mediation Board; secret elections. If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this Act, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this Act. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the

conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election. The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph.

Tenth. Violations; prosecutions and penalties. The willful failure or refusal of any carrier, its officers or agents to comply with the terms of the third, fourth, fifth, seventh, or eighth paragraph of this section shall be a misdemeanor, and upon conviction thereof the carrier, officer, or agent offending shall be subject to a fine of not less than $ 1,000 nor more than $ 20,000 or imprisonment for not more than six months, or both fine and imprisonment, for each offense, and each day during which such carrier, officer, or agent shall willfully fail or refuse to comply with the terms of the said paragraphs of this section shall constitute a separate offense. It shall be the duty of any district attorney of the United States [United States attorney] to whom any duly designated representative of a carrier's employees may apply to institute in the proper court and to prosecute under the direction of the Attorney General of the United States, all necessary proceedings for the enforcement of the provisions of this section, and for the punishment of all violations thereof and the costs and expenses of such prosecution shall be paid out of the appropriation for the expenses of the courts of the United States: Provided, That nothing in this Act shall be construed to require an individual employee to render labor or service without his consent, nor shall anything in this Act be construed to make the quitting of his labor by an individual employee an illegal act; nor shall any court issue any process to compel the performance by an individual employee of such labor or service, without his consent.

Eleventh. Union security agreements; check-off. Notwithstanding any other provisions of this Act, or of any other statute or law of the United States, or Territory thereof, or any State, any carrier or carriers as defined in this Act and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this Act shall be permitted--
  (a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: Provided, That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership,
  (b) to make agreements providing for the deduction by such carrier or carriers from the wages of its or their employees in a craft or class and payment to the labor organization representing the craft or class of such employees, of any periodic dues, initiation fees, and assessments (not including fines and penalties), uniformly required as a condition of acquiring or retaining membership, Provided, That no such agreement shall be effective with respect to any individual employee until he shall have furnished the employer with a written assignment to the labor organization of such membership dues, initiation fees, and assessments, which shall be revocable in writing after the expiration of one year or upon the termination date of the applicable collective agreement, whichever occurs sooner.
  (c) The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) shall be satisfied, as to both a present or future employee in

engine, train, yard, or hostling service, that is, an employee engaged in any of the services or capacities covered in section 3, first (h) of this act [45 USCS § 153, subsec. First, para. (h)] defining the jurisdictional scope of the first division of the National Railroad Adjustment Board, if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this act and admitting to membership employees of a craft or class in any of said services; and no agreement made pursuant to subparagraph (b) shall provide for deductions from his wages for periodic dues, initiation fees, or assessments payable to any labor organization other than that in which he holds membership: Provided, however, That as to an employee in any of said services on a particular carrier at the effective date of any such agreement on a carrier, who is not a member of any one of the labor organizations, national in scope, organized in accordance with this act and admitting to membership employees of a craft or class in any of said services, such employee, as a condition of continuing his employment, may be required to become a member of the organization representing the craft in which he is employed on the effective date of the first agreement applicable to him: Provided, further, That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services.

   (d) Any provisions in paragraphs fourth and fifth of section 2 of this act [this section] in conflict herewith are to the extent of such conflict amended.

**History:**

   (May 20, 1926, ch 347, Title I, § 2, 44 Stat. 577; June 21, 1934, ch 691, § 2, 48 Stat. 1186; April 10, 1936, ch 166, 49 Stat. 1189; Jan. 10, 1951, ch 1220, 64 Stat. 1238.)

UNITED STATES CODE SERVICE
Copyright © 2005 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

\*\*\* CURRENT THROUGH P.L. 109-60, APPROVED 8/11/05 \*\*\*
\*\*\* WITH THE EXCEPTIONS OF P.L. 109-58 and 109-59 \*\*\*

TITLE 45. RAILROADS
CHAPTER 8. RAILWAY LABOR
GENERAL PROVISIONS

§ 153. National Railroad Adjustment Board

First. Establishment; composition; powers and duties; divisions; hearings and awards; judicial review. There is hereby established a Board, to be known as the "National Railroad Adjustment Board", the members of which shall be selected within thirty days after approval of this Act [enacted June 21, 1934], and it is hereby provided--
   (a) That the said Adjustment Board shall consist of thirty-four members, seventeen of whom shall be selected by the carriers and seventeen by such labor organizations of the employees, national in scope, as have been or may be organized in accordance with the provisions of section 2 of this Act [45 USCS §§ 151a, 152].
   (b) The carriers, acting each through its boards of directors or its receiver or receivers, trustee or trustees or through an officer or officers designated for that purpose by such board, trustee or trustees or receiver or receivers, shall prescribe the rules under which its representatives shall be selected and shall select the representatives of the carriers on the Adjustment Board and designate the division on which each such representative shall serve, but no carrier or system of carriers shall have more than one voting representative on any division of the Board.
   (c) Except as provided in the second paragraph of subsection (h) of this section, the national labor organizations, as defined in paragraph (a) of this section, acting each through the chief executive or other medium designated by the organization or association thereof, shall prescribe the rules under which the labor members of the Adjustment Board shall be selected and shall select such members and designate the division on which each member shall serve; but no labor organization shall have more than one voting representative on any division of the Board.
   (d) In case of a permanent or temporary vacancy on the Adjustment Board, the vacancy shall be filed by selection in the same manner as in the original selection.
   (e) If either the carriers or the labor organizations of the employees fails to select and designate representatives to the Adjustment Board, as provided in paragraphs (b) and (c) of this section, respectively, within sixty days after the passage of this Act [enacted June 21, 1934], in case of any original appointment to office of a member of the Adjustment Board, or in case of a vacancy in any such office within thirty days after such vacancy occurs, the Mediation Board shall thereupon directly make the appointment and shall select an individual associated in interest with the carriers or the group of labor organizations of employees, whichever he is to represent.
   (f) In the event a dispute arises as to the right of any national labor organization to participate as per paragraph (c) of this section in the selection and designation of the labor members of the Adjustment Board, the Secretary of Labor shall investigate the claim of such labor organization to participate, and if such claim in the judgment of the Secretary of Labor has merit, the Secretary shall notify the Mediation Board accordingly, and within ten days after receipt of such advice the Mediation Board shall request those national labor

organizations duly qualified as per paragraph (c) of this section to participate in the selection and designation of the labor members of the Adjustment Board to select a representative. Such representative, together with a representative likewise designated by the claimant, and a third or neutral party designated by the Mediation Board, constituting a board of three, shall within thirty days after the appointment of the neutral member, investigate the claims of the labor organization desiring participation and decide whether or not it was organized in accordance with section 2 hereof [45 USCS §§ 151a, 152] and is otherwise properly qualified to participate in the selection of the labor members of the Adjustment Board, and the findings of such boards of three shall be final and binding.

(g) Each member of the Adjustment Board shall be compensated by the party or parties he is to represent. Each third or neutral party selected under the provisions of (f) of this section shall receive from the Mediation Board such compensation as the Mediation Board may fix, together with his necessary traveling expenses and expenses actually incurred for subsistence, or per diem allowance in lieu thereof, subject to the provisions of law applicable thereto, while serving as such third or neutral party.

(h) The said Adjustment Board shall be composed of four divisions, whose proceedings shall be independent of one another, and the said divisions as well as the number of their members shall be as follows:

First division: To have jurisdiction over disputes involving train- and yard-service employees of carriers, that is, engineers, firemen, hostlers, and outside hostler helpers, conductors, trainmen, and yard-service employees. This division shall consist of eight members, four of whom shall be selected and designated by the carriers and four of whom shall be selected and designated by the labor organizations, national in scope and organized in accordance with section 2 hereof [45 USCS §§ 151a, 152] and which represent employees in engine, train, yard, or hostling service; Provided, however, That each labor organization shall select and designate two members on the First Division and that no labor organization shall have more than one vote in any proceedings of the First Division or in the adoption of any award with respect to any dispute submitted to the First Division: Provided further, however, That the carrier members of the First Division shall cast no more than two votes in any proceedings of the division or in the adoption of any award with respect to any dispute submitted to the First Division.

Second division: To have jurisdiction over disputes involving machinists, boilermakers, blacksmiths, sheet-metal workers, electrical workers, car men, the helpers and apprentices of all the foregoing, coach cleaners, power-house employees, and railroad-shop laborers. This division shall consist of ten members, five of whom shall be selected by the carriers and five by the national labor organizations of the employees.

Third division: To have jurisdiction over disputes involving station, tower, and telegraph employees, train dispatchers, maintenance-of-way men, clerical employees, freight handlers, express, station, and store employees, signal men, sleeping-car conductors, sleeping-car porters, and maids and dining-car employees. This division shall consist of ten members, five of whom shall be selected by the carriers and five by the national labor organizations of employees.

Fourth division: To have jurisdiction over disputes involving employees of carriers directly or indirectly engaged in transportation of passengers or property by water, and all other employees of carriers over which jurisdiction is not given to the first, second, and third divisions. This division shall consist of six members, three of whom shall be selected by the carriers and three by the national labor organizations of the employees.

(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on the date of approval of this Act [enacted June 21, 1934], shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may

be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

(j) Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them.

(k) Any division of the Adjustment Board shall have authority to empower two or more of its members to conduct hearings and make findings upon disputes, when properly submitted, at any place designated by the division: Provided, however, That except as provided in paragraph (h) of this section, final awards as to any such dispute must be made by the entire division as hereinafter provided.

(l) Upon failure of any division to agree upon an award because of a deadlock or inability to secure a majority vote of the division members, as provided in paragraph (n) of this section, then such division shall forthwith agree upon and select a neutral person, to be known as "referee", to sit with the division as a member thereof and make an award. Should the division fail to agree upon and select a referee within ten days of the date of the deadlock or inability to secure a majority vote, then the division, or any member thereof, or the parties or either party to the dispute may certify that fact to the Mediation Board, which Board shall, within ten days from the date of receiving such certificate, select and name the referee to sit with the division as a member thereof and make an award. The Mediation Board shall be bound by the same provisions in the appointment of these neutral referees as are provided elsewhere in this Act for the appointment of arbitrators and shall fix and pay the compensation of such referees.

(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute. In case a dispute arises involving an interpretation of the award the division of the Board upon request of either party shall interpret the award in the light of the dispute.

(n) A majority vote of all members of the division of the Adjustment Board eligible to vote shall be competent to make an award with respect to any dispute submitted to it.

(o) In case of an award by any division of the Adjustment Board in favor of petitioner, the division of the Board shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a day named. In the event any division determines that an award favorable to the petitioner should not be made in any dispute referred to it, the division shall make an order to the petitioner stating such determination.

(p) If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be

appropriate to enforce or set aside the order of the division of the Adjustment Board: Provided, however, That such order may not be set aside except for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

   (q) If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of title 28, United States Code.

   (r) All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after.

   (s) The several divisions of the Adjustment Board shall maintain headquarters in Chicago, Illinois, meet regularly, and continue in session so long as there is pending before the division any matter within its jurisdiction which has been submitted for its consideration and which has not been disposed of.

   (t) Whenever practicable, the several divisions or subdivisions of the Adjustment Board shall be supplied with suitable quarters in any Federal building located at its place of meeting.

   (u) The Adjustment Board may, subject to the approval of the Mediation Board, employ and fix the compensations of such assistants as it deems necessary in carrying on its proceedings. The compensation of such employees shall be paid by the Mediation Board.

   (v) The Adjustment Board shall meet within forty days after the approval of this Act [enacted June 21, 1934] and adopt such rules as it deems necessary to control proceedings before the respective divisions and not in conflict with the provisions of this section. Immediately following the meeting of the entire Board and the adoption of such rules, the respective divisions shall meet and organize by the selection of a chairman, a vice chairman, and a secretary. Thereafter each division shall annually designate one of its members to act as chairman and one of its members to act as vice chairman: Provided, however, That the chairmanship and vice-chairmanship of any division shall alternate as between the groups, so that both the chairmanship and vice-chairmanship shall be held alternately by a representative of the carriers and a representative of the employees. In case of a vacancy, such vacancy shall be filled for the unexpired term by the selection of a successor from the same group.

   (w) Each division of the Adjustment Board shall annually prepare and submit a report of its activities to the Mediation Board, and the substance of such report shall be included in the annual report of the Mediation Board to the Congress of the United States. The reports of each division of the Adjustment Board and the annual report of the Mediation Board shall state in detail all cases heard, all actions taken, the names, salaries, and duties of all agencies, employees, and officers receiving compensation from the United States under the authority of this Act, and an account of all moneys appropriated by Congress pursuant to

the authority conferred by this Act and disbursed by such agencies, employees, and officers.

(x) Any division of the Adjustment Board shall have authority, in its discretion, to establish regional adjustment boards to act in its place and stead for such limited period as such division may determine to be necessary. Carrier members of such regional boards shall be designated in keeping with rules devised for this purpose by the carrier members of the Adjustment Board and the labor members shall be designated in keeping with rules devised for this purpose by the labor members of the Adjustment Board. Any such regional board shall, during the time for which it is appointed, have the same authority to conduct hearings, make findings upon disputes and adopt the same procedure as the division of the Adjustment Board appointing it, and its decisions shall be enforceable to the same extent and under the same processes. A neutral person, as referee, shall be appointed for service in connection with any such regional adjustment board in the same circumstances and manner as provided in paragraph (l) hereof, with respect to a division of the Adjustment Board.

Second. System, group, or regional boards: establishment by voluntary agreement; special adjustment boards: establishment, composition, designation of representatives by Mediation Board, neutral member, compensation, quorum, finality and enforcement of awards. Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this Act, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board.

If written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board, or any dispute which has been pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such request is made. The cases which may be considered by such board shall be defined in the agreement establishing it. Such board shall consist of one person designated by the carrier and one person designated by the representative of the employees. If such carrier or such representative fails to agree upon the establishment of such a board as provided herein, or to exercise its rights to designate a member of the board, the carrier or representative making the request for the establishment of the special board may request the Mediation Board to designate a member of the special board on behalf of the carrier or representative upon whom such request was made. Upon receipt of a request for such designation the Mediation Board shall promptly make such designation and shall select an individual associated in interest with the carrier or representative he is to represent, who, with the member appointed by the carrier or representative requesting the establishment of the special board, shall constitute the board. Each member of the board shall be compensated by the party he is to represent. The members of the board so designated shall determine all matters not previously agreed upon by the carrier and the representative of the employees with respect to the establishment and jurisdiction of the board. If they are unable to agree such matters shall be determined by a neutral member of the board selected or appointed and compensated in the same manner as is hereinafter provided with respect to situations where the members of the board are unable to agree upon an award. Such neutral member shall cease to be a member of the board when he has determined such matters. If with

respect to any dispute or group of disputes the members of the board designated by the carrier and the representative are unable to agree upon an award disposing of the dispute or group of disputes they shall by mutual agreement select a neutral person to be a member of the board for the consideration and disposition of such dispute or group of disputes. In the event the members of the board designated by the parties are unable, within ten days after their failure to agree upon an award, to agree upon the selection of such neutral person, either member of the board may request the Mediation Board to appoint such neutral person and upon receipt of such request the Mediation Board shall promptly make such appointment. The neutral person so selected or appointed shall be compensated and reimbursed for expenses by the Mediation Board. Any two members of the board shall be competent to render an award. Such awards shall be final and binding upon both parties to the dispute and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day, named. Compliance with such awards shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board.

**History:**

(May 20, 1926, ch 347, Title I, § 3, ✦ 44 Stat. 578; June 21, 1934, ch 691, § 3, ✦ 48 Stat. 1189; April 10, 1936, ch 166, ✦ 49 Stat. 1189; June 20, 1966, ✦ P.L. 89-456, §§ 1, 2, 80 Stat. 208, 209; April 23, 1970, ✦ P.L. 91-234, §§ 1-6, 84 Stat. 199, 200.)