UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH CARMACK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 03-12488-PBS |
| | ) | |
| NATIONAL RAILROAD | ) | |
| PASSENGER CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO COMPEL
DISCLOSURE OF PLAINTIFF'S ALLEGED PRIVILEGED
COMMUNICATIONS AND ON PLAINTIFF'S MOTION FOR
A PROTECTIVE ORDER AGAINST DISCOVERY OF
TRADE SECRETS AND PRIVILEGED COMMUNICATIONS
OF THE BROTHERHOOD OF LOCOMOTIVE
ENGINEERS AND TRAINMEN**

This matter is before the court on the "Defendant's National Railroad Passenger Corporation's Motion to Compel Disclosure of Plaintiff's Alleged Privileged Communications" (Docket # 77), and on the "Plaintiff Joseph T. Carmack's Motion for a Protective Order Against Discovery of Trade Secrets and Privileged Communications of the Brotherhood of Locomotive Engineers and Trainmen" (Docket # 83). By this motion the defendant is seeking to compel the plaintiff to produce the six letters identified by him in a privilege log, dated July 8, 2005, which consist of communications between him and Mark Kenny, a union representative, and a letter dated March 27, 2004 from the plaintiff to George Newman, another union official. In response, the plaintiff seeks to protect the letters as privileged communications and under trade secret law. After reviewing the

parties' submissions and considering the parties' arguments, the defendant's Motion to Compel is ALLOWED and the plaintiff's Motion for a Protective Order is DENIED.

## ANALYSIS

The plaintiff contends that his communications with union personnel should be protected because they are privileged either under common law or under the Railways Labor Act. This court disagrees.

Courts start "with the primary assumption that there is a general duty to give what testimony one is capable of giving[.]" In re Grand Jury Subpoenas Dated January 20, 1998, 995 F. Supp. 332, 334 (E.D.N.Y. 1998) (quoting United States v. Bryan, 339 U.S. 323, 331, 70 S. Ct. 724, 94 L. Ed. 884 (1950) (additional citations omitted)). Consequently, privileges "are recognized 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means of ascertaining the truth.'" Id. (quoting Trammel v. United States, 445 U.S. 40, 50, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980) (additional citations omitted)). The party claiming a privilege has a "heavy burden" of establishing both that the privilege exists and that it is applicable in a given case. Id. While courts may "develop rules of privilege on a case-by-case basis," there are four basic considerations:

> (1) the communication at issue must be made in confidence, (2) confidentiality must be essential to the maintenance of a full and satisfactory relationship between the parties, (3) the parties' relationship must be one that the community has decided ought to be sedulously fostered, and (4) the injury that would inure to the relationship by

>the disclosure of the communication must plainly outweigh the important societal interest in obtaining all the evidence necessary to ensure the correct disposal of litigation.

Id. (citing 8 J. Wigmore, Evidence § 2285 (McNaughton Rev. 1961).

Courts addressing the issue have consistently held no privilege exists between a union member and a union representative. See, e.g., id. at 335 (no union official-union representative privilege exists which would protect communications in a criminal investigation of police officers); Walker v. Huie, 142 F.R.D. 497, 501 (D. Utah 1992) (no privilege between union member and union officer who had represented member in disciplinary proceedings); McCoy v. Southwest Airlines Co., Inc., 211 F.R.D. 381, 387-88 (C.D. Cal. 2002) (no privilege between airline pilots and union representatives in connection with grievance procedures). Thus, while recognizing that the communications between a union member and the representative may have been intended to be confidential, courts have concluded that there is insufficient evidence to establish that "the union relationship is so highly valued by an ordered society that its confidences warrant protection even at the cost of losing evidence important to the administration of justice." In re Grand Jury Subpoenas, 995 F. Supp. at 335. In the instant case, Carmack has similarly failed to establish the existence of a union representative privilege.

The fact that the relationship between Carmack and the defendant may be governed by the Railway Labor Act, 45 U.S.C. § 151, et seq., does not compel a different conclusion. "The Railway Labor Act was enacted to avoid any interruption to commerce or to the operation of any carrier engaged therein and to provide for the prompt and

orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." McCoy, 211 F.R.D. at 387 n.4 (quoting Assoc. of Flight Attendants, AFL-CIO v. USAir, Inc., 960 F.2d 345, 347 (3d Cir. 1992)).  There is nothing in the statutory language which elevates the relationship between the employee and his or her representative to a status comparable to that of attorney-client.  In fact, given that parties to RLA proceedings "may be heard either in person, by counsel, or by other representatives, as they may respectively elect," such a broadening of the "attorney-client" privilege to virtually anyone would be dramatic, and would require an express statement of such an intent.  There is no such expression of intent in the statute, and no cases have found the RLA to have established an employee-representative privilege.  See McCoy, 211 F.R.D. at 386.

      The plaintiff also argues that confidentiality can be established under the doctrine of fair representation, and that his union representative is bound to respect such a doctrine.  However, this doctrine focuses upon limiting the "arbitrary exercise of union power," and mentions nothing of establishing confidentiality.  See United Steelworkers of America, AFL-CIO-CLC v. Rawson, 495 U.S. 362, 374, 110 S. Ct. 1904, 1912, 109 L. Ed. 2d 362 (1990).  The doctrine was established to "create a statutory obligation to serve the interests of all [union] members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."  Vaca v. Sipes, 386 U.S. 171, 177, 87 S. Ct. 903, 910 (1967).  The plaintiff

alleges no case law support for his interpretation of the doctrine of fair representation as creating a privileged relationship not otherwise recognized in the law.

Finally, Carmack contends that the communications at issue should be protected as trade secrets, since to reveal them would reveal the defense strategy of the Brotherhood of Locomotive Engineers and Trainmen ("BLET").  However, defense strategy does not constitute a trade secret warranting protection from disclosure.  See Fed. R. Civ. P. 26(c)(7) (a protective order may be sought to limit disclosure of "a trade secret or other confidential research, development, or commercial information").  "A trade secret may consist of any formula, pattern, device of compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  JT Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736, 260 N.E.2d 723, 729 (1970).  In the instant case, the challenged communications do not satisfy this definition, and neither the plaintiff, Amtrak or the BLET are in competitive situations.  Therefore, the law of trade secrets will not render the communications privileged.

## **ORDER**

For all the reasons stated herein, the defendant's Motion to Compel (Docket # 77) is ALLOWED and the plaintiff's Motion for a Protective Order (Docket # 83) is DENIED.

        / s / Judith Gail Dein
        Judith Gail Dein
        United States Magistrate Judge

DATED: October 11, 2005