# Exhibit H

# OSTEOPATHIC MEDICAL PRACTICE ACT

## ACT 261 OF 1978

## STATE BOARD OF OSTEOPATHIC MEDICINE

COMMONWEALTH OF PENNSYLVANIA

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

**Section 1. Short title.**

This act shall be known and may be cited as the "Osteopathic Medical Practice Act."

**Section 2. Definitions.**

The following words and phrases when used in this act shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

**"Affiliate."** A member of a group of two or more fully accredited health care institutions under an agreement of affiliation approved by the board to enhance the potential of all participants in the provision of health care and osteopathic or medical education.

**"Approved hospital."** A hospital which has been approved by the board for providing supervised graduate osteopathic medical training.

**"Board."** The State Board of Osteopathic Medical Examiners in the Department of State. Any reference in any statute or rule to the State Board of Osteopathic Examiners shall, on and after the effective date of this act, be construed to be a reference to the State Board of Osteopathic Medical Examiners.

**"Board-regulated practitioner."** An osteopathic physician, physician assistant or respiratory care practitioner or an applicant for a license or certificate issued by the board. *(Def. added July 2, 1993, P.L.418, No.59)*

**"Certification."** The approval of individuals by the board to serve as physician assistants. It shall also mean the approval of programs by the board for the training and education of physician assistants.

**"Clinical clerk."** An undergraduate student in an osteopathic medical college assigned to make patient histories, physical examinations and to perform certain procedures and laboratory tests for the purpose of instruction and experience. His notes shall become official only when edited and countersigned by a member of the hospital staff licensed pursuant to this act. Nothing contained in this act shall be construed to entitle a clinical clerk to practice medicine or surgery or to prescribe drugs.

**"Healing art."** The science and skill of diagnosis and treatment of diseases of the human body.

**"Health care facility."** A general, tuberculosis, mental, chronic disease or other type of hospital, an ambulatory clinic or center, a health maintenance organization, institution and corporation medical departments and

centers, student health centers, a physical rehabilitation facility, a skilled or intermediate care nursing facility, a radiology laboratory, a renal dialysis center, a diagnostic center, a home health care agency, or a clinical laboratory, regardless of whether such medical care facility is for profit, nonprofit or governmental; or a program affiliated with a medical care facility which renders treatment or care for drug or alcohol abuse or dependence; or other settings where medical care and services are rendered.

**"Hospital."** An institution accredited by the American Osteopathic Association, the Joint Commission on Accreditation of Hospitals or regulated by the Commonwealth of Pennsylvania to render health care.

**"Intern."** A physician receiving supervised graduate osteopathic medical training at an approved hospital or its affiliate.

**"Osteopathic medical college."** An institution of higher learning accredited by the American Osteopathic Association, its successors and assigns, as an agency to provide courses in the arts and sciences of medicine and related subjects and empowered to grant academic degrees in osteopathic medicine and surgery.

**"Osteopathic medicine and surgery."** The art and science having for its object the cure of disease and the preservation of the health of man with or without drugs, except healing by spiritual means or prayer.

**"Physician."** A person who has received formal and recognized training in the art and science of osteopathic medicine qualified to seek or who has acquired a license to practice osteopathic medicine and surgery.

**"Physician assistant."** A person certified by the board to assist a physician or group of physicians in the provision of medical care and services and under the supervision and direction of the physician or group of physicians.

**"Proficiency examination."** An examination approved by the board for the national certification of physician assistants, including those examinations, approved for such purpose by the National Commission on Certification of Physician Assistants.

**"Resident."** A physician receiving supervised graduate osteopathic medical training at an approved hospital or its affiliate.

**"Respiratory care."** A health care specialty employing evaluation, analysis, care and treatment of patients with cardiopulmonary disorders and related diseases. *(Def. added July 2, 1993, P.L.418, No.59)*

**"Respiratory care practitioner."** An individual who is certified to practice respiratory care by the State Board of Osteopathic Medicine. *(Def. added July 2, 1993, P.L.418, No.59)*

**Section 14.2. Surrender of suspended or revoked license or certificate.**

The board shall require a person whose license, certificate or registration has been suspended or revoked, to return the license, certificate or registration in such manner as the board directs. Failure to do so, and upon conviction thereof, shall be a misdemeanor of the third degree.

*(14.2 added Dec. 10, 1985, P.L.398, No.108)*

**Section 15. Reasons for refusal, revocation or suspension of license.**

(a) The board shall have authority to refuse, revoke or suspend the license of a physician for any of the following reasons:

(1) Failing to demonstrate the qualifications or standards for a license provided in this act or the regulations of the board.

(2) Making misleading, deceptive, untrue or fraudulent representations in the practice of osteopathic medicine and surgery, practicing fraud or deceit in obtaining a license to practice osteopathic medicine and surgery, or making a false or deceptive biennial registration with the board.

(3) Conviction of a felony, a crime involving moral turpitude, or a crime related to the practice of osteopathic medicine. Conviction shall include a finding or verdict of guilt, an admission of guilt or a plea of nolo contendere, or receiving probation without verdict, disposition in lieu of trial, or an Accelerated Rehabilitative Disposition in the disposition of felony charges. *((3) amended Dec. 20, 1985, P.L.398, No.108)*

(4) Having a license to practice osteopathic medicine and surgery revoked or suspended or having other disciplinary action taken, or an application for a license refused, revoked or suspended by the proper licensing authority of another state, territory or country.

(5) Being unable to practice osteopathic medicine and surgery with reasonable skill and safety to patients by reason of illness, drunkenness, excessive use of drugs, narcotics, chemicals, or other type of material, or as a result of any mental or physical condition. The board shall, upon probable cause, have authority to compel a physician to submit to a mental or physical examination by physicians designated by the board. Failure of a physician to submit to such examination when directed shall constitute an admission of the allegations against him unless it is due to circumstances beyond his control, consequent upon which a default and final order may be entered without the taking of testimony or presentation of evidence. A physician affected by such action shall, at reasonable intervals, be afforded an opportunity to demonstrate that he can resume a competent practice of osteopathic medicine and surgery with reasonable skill and safety to the patients.

(6) Violating a regulation promulgated by the board or an order of the board previously entered by it in a disciplinary proceeding.

(7) Knowingly maintaining a professional connection or association with a person who is in violation of this act or the regulations of the board or knowingly aiding, assisting, procuring or advising an unlicensed person to practice osteopathic medicine and surgery contrary to this act, or the regulations of the board.

(8) Being guilty of immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or the failure to conform to, the standards of acceptable and prevailing osteopathic medical practice. Actual injury to a patient need not be established.

(b) The board shall have authority to refuse, revoke or suspend the certification of a physician assistant for any or all of the following reasons:

(1) Failing to demonstrate the qualification for certification contained in this act or regulations of the board.

(2) Making misleading, deceptive, untrue or fraudulent representations in his serving as a physician assistant; practicing fraud or deceit in obtaining a certification to serve as a physician assistant; or making a false or deceptive biennial registration with the board.

(3) Conviction of a felony in this Commonwealth or any other state, territory or country. Conviction as used in this paragraph shall include a finding or verdict of guilt, an admission of guilt or a plea of nolo contendere, or receiving probation without verdict, disposition in lieu of trial, or an Accelerated Rehabilitative Disposition in the disposition of felony charges. *((3) amended Dec. 20, 1985, P.L.398, No.108)*

(4) Having his certification to serve as a physician assistant revoked or suspended or having other disciplinary action taken, or his application for certification refused, revoked or suspended by the proper certifying authority of another state, territory or country.

(5) Being unable to serve as a physician assistant with reasonable

*mlaints officer*—The administrator of the Complaints Office for the of Professional and Occupational Affairs.

*ring examiner*—The hearing examiner employed by the Board and ed by the Governor for the purpose of conducting hearings involving the ine of a licensed physician or surgeon and rendering the adjudication.

*ical consultant*—A licensed physician or surgeon employed by the Board in the review of complaints when required, to advise the Board prosecu- preparing for and requesting of investigations, to aid in interpreting gation results, to assist the hearing examiner in interpreting technical ny of a medical nature, to examine physicians who are thought to be ed and to serve as a medical expert when required.

*ical investigator*—An investigator employed by the Board to conduct nary investigations in following up complaints and assisting the Board utor and counsel in obtaining information relative to cases requiring a or follow-up investigation after hearing and who may serve as witness Commonwealth at hearings.

## HEARING EXAMINERS AND MEDICAL CONSULTANTS

**Creation of list of hearing examiners.**

vided under section 902 of the Health Care Services Malpractice Act (40 301.902), the Board has created a list of individuals with the approval of rnor from which hearing examiners can be selected to serve on a part- s in order to hear formal hearings and render adjudications.

**Creation of lists of medical consultants.**

ard, through the cooperation of various State and local professional has created lists of licensed physicians and surgeons of varied expertise, and training from which medical consultants can be selected to serve on ie basis as resource personnel, with medical expertise required for the case.

**Powers and duties of hearing examiners.**

e hearing examiner has the power to conduct a hearing under this Pa. Code Part II (relating to general rules of administrative practice and ) and 2 Pa.C.S. §§ 501—508 and 701—704 (relating to the Adminis- ency Law).

ie hearing examiner has the following powers:

The power to issue subpoenas requiring the attendance and testimony iduals and the production of pertinent books, records, documents and

(2) The power to continue a formal hearing in order to call additional witnesses he may believe are required, or to get additional documented evidence before reaching his decision.

(3) The power to question and cross-examine witnesses presented by either party.

(4) The power to administer oaths.

(c) The hearing examiner is required to hear the evidence submitted and arguments of counsel and render a decision.

(d) The hearing examiner shall record his decision in the form of an adjudication and order, supported by findings of fact and conclusions of law.

(e) The hearing examiner shall provide copies of the adjudication and order to the Board, along with the transcript of the evidence. A copy of the adjudication and order shall also be furnished to the counsel of record or to the parties in the dispute.

(f) Subsection (b) supplements 1 Pa. Code § 35.187 (relating to authority delegated to presiding officers).

### § 16.54. Powers and duties of medical consultants.

A medical consultant shall perform the following:

(1) Review medical aspects of a complaint referred to him by the Board prosecutor and prepare a written report of recommendations based on the review and inquiries deemed necessary to determine whether further action is required.

(2) Review a complaint in order to aid the Board prosecutor in recognizing medical issues and determining what information should be obtained and what additional investigation is required.

(3) Attend a prehearing conference which may be scheduled regarding complaints assigned to him.

(4) Administer physical and mental examinations to physicians for evaluation of impairment.

(5) Testify as an expert witness if required by the Board prosecutor.

## COMPLAINTS

### § 16.61. Unprofessional and immoral conduct.

(a) A physician who engages in unprofessional or immoral conduct is subject to disciplinary action under section 41 of the act (63 P. S. § 422.41). Unprofessional conduct includes, but is not limited to, the following:

(1) Revealing personally identifiable facts, obtained as the result of a physician-patient relationship, without the prior consent of the patient, except as authorized or required by statute.

(2) Violating a statute, or a regulation adopted thereunder, which imposes a standard for the practice of medicine in this Commonwealth. The Board, in reaching a decision on whether there has been a violation of a statute, rule or regulation, will be guided by adjudications of the agency or court which administers or enforces the standard.

(3) Performing a medical act incompetently or performing a medical act which the physician knows or has reason to know that he is not competent to perform.

(4) Unconditionally guaranteeing that a cure will result from the performance of medical services.

(5) Advertising of medical business which is intended to or has a tendency to deceive the public.

(6) Practicing medicine fraudulently, or with reckless indifference to the interests of a patient on a particular occasion, or with negligence on repeated occasions.

(7) Practicing medicine while the ability to practice is impaired by alcohol, drugs or physical or mental disability.

(8) Knowingly permitting, aiding or abetting a person who is not licensed or certified, or exempt from license or certification requirements, to perform activities requiring a license or certification in a health care practice.

(9) Continuing to practice while the physician's license has expired, is not registered or is suspended or revoked.

(10) Impersonating another health-care practitioner.

(11) Possessing, using, prescribing for use or distributing a controlled substance or a legend drug in a way other than for an acceptable medical purpose. An acceptable experimental purpose is considered an acceptable medical purpose.

(12) Offering, undertaking or agreeing to cure or treat a disease by a secret method, procedure, treatment or medicine, or the treating, operating or prescribing for a human condition by a method, means or procedure which the licensee refuses to divulge to the Board upon demand of the Board.

(13) Charging a patient or a third-party payor for a medical service not performed. This paragraph does not apply to charging for an unkept office visit.

(14) Delegating a medical responsibility to a person when the physician knows or has reason to know that the person is not qualified by training, experience, license or certification to perform the delegated task.

(15) Failing to exercise appropriate supervision over a person who is authorized to practice only under the supervision of the physician.

(16) Willfully harassing, abusing or intimidating a patient.

(17) Abandoning a patient. Abandonment occurs when a physician with draws his services after a physician-patient relationship has been established by failing to give notice to the patient of the physician's intention to withdraw in sufficient time to allow the patient to obtain necessary medical care. Aban-

Case 1:03-cv-12488-PBS Document 96-9 Filed 10/11/2005 Page 7 of 10



...ng a decision on whether there has been a violation of a statute, rule or ...ation, will be guided by adjudications of the agency or court which admin-...or enforces the standard.

...Performing a medical act incompetently or performing a medical act ...the physician knows or has reason to know that he is not competent to ...m.

Unconditionally guaranteeing that a cure will result from the perfor-...of medical services.

...Advertising of medical business which is intended to or has a tendency ...ive the public.

...Practicing medicine fraudulently, or with reckless indifference to the ...ts of a patient on a particular occasion, or with negligence on repeated ...s.

...Practicing medicine while the ability to practice is impaired by alcohol, ...or physical or mental disability.

Knowingly permitting, aiding or abetting a person who is not licensed ...fied, or exempt from license or certification requirements, to perform ...s requiring a license or certification in a health care practice.

...Continuing to practice while the physician's license has expired, is not ...ed or is suspended or revoked.

...Impersonating another health-care practitioner.

...Possessing, using, prescribing for use or distributing a controlled sub-...or a legend drug in a way other than for an acceptable medical purpose. ...eptable experimental purpose is considered an acceptable medical pur-

...Offering, undertaking or agreeing to cure or treat a disease by a secret ...procedure, treatment or medicine, or the treating, operating or pre-...for a human condition by a method, means or procedure which the lic-...fuses to divulge to the Board upon demand of the Board.

...Charging a patient or a third-party payor for a medical service not per-... This paragraph does not apply to charging for an unkept office visit.

...Delegating a medical responsibility to a person when the physician ...r has reason to know that the person is not qualified by training, expe-...icense or certification to perform the delegated task.

...Failing to exercise appropriate supervision over a person who is autho-...practice only under the supervision of the physician.

Willfully harassing, abusing or intimidating a patient.

Abandoning a patient. Abandonment occurs when a physician with-...is services after a physician-patient relationship has been established, ...g to give notice to the patient of the physician's intention to withdraw ...ient time to allow the patient to obtain necessary medical care. Aban-





donment also occurs when a physician leaves the employment of a group practice, hospital, clinic or other health-care facility, without the physician giving reasonable notice and under circumstances which seriously impair the delivery of medical care to patients.

(18) Failing to make available to the patient or to another designated health care practitioner, upon a patient's written request, the medical record or a copy of the medical record relating to the patient which is in the possession or under the control of the physician; or failing to complete those forms or reports, or components of forms or reports, which are required to be completed by the physician as a precondition to the reimbursement or direct payment of the medical expenses of a patient by a third party. Reasonable fees may be charged for making available copies, forms or reports. Prior payment for professional services to which the records relate—this does not apply to fees charged for reports—may not be required as a condition for making the records available. A physician may withhold information from a patient if, in the reasonable exercise of his professional judgment, he believes release of the information would adversely affect the patient's health.

(19) Violating a provision of this chapter, Chapter 17 or Chapter 18 (relating to State Board of Medicine—medical doctors; or State Board of Medicine—practitioners other than medical doctors) fixing a standard of professional conduct.

(b) Immoral conduct includes, but is not limited to, the following:

(1) Misrepresentation or concealment of a material fact in obtaining a license to practice medicine or a reinstatement thereof.

(2) The commission of an act involving moral turpitude, dishonesty or corruption when the act directly or indirectly affects the health, welfare or safety of citizens of this Commonwealth. If the act constitutes a crime, conviction thereof in a criminal proceeding is not a condition precedent to disciplinary action.

## § 16.62. [Reserved].

**Source**

The provisions of this § 16.62 reserved March 13, 1998, effective March 14, 1998, 28 Pa.B. 1315. Immediately preceding text appears at serial pages (209927) to (209929).

**Notes of Decisions**

*Validity*

The procedures followed by the State Board of Medicine under this section created an unconstitutional commingling of the prosecutorial and adjudicatory functions in a single entity. *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992).

# MEDICAL PRACTICE ACT

# ACT 112 OF 1985

STATE BOARD
OF
MEDICINE

COMMONWEALTH OF PENNSYLVANIA

in accordance with subsections (a) and (b). A medical doctor's responsibility for the medical service delegated to the health care practitioner or technician is not limited by any provisions of this section.

**Section 18. Federal medical personnel.**

Nothing in this act shall be construed to prohibit a medical doctor in the medical service of the armed forces of the United States, the United States Public Health Service or the Veterans' Administration, or a Federal employee, from discharging official duties.

**Section 19. Osteopathic act.**

(a) **General rule.** Nothing in this act shall be construed to prohibit a doctor of osteopathy from practicing osteopathic medicine and surgery.

(b) **Specific authorization.** Nothing in this act shall be construed to prohibit a person authorized to practice osteopathic medicine and surgery by the act of October 5, 1978 (P.L.1109, No.261), known as the Osteopathic Medical Practice Act, to practice as authorized by that act.

**Section 20. Other health care practitioners.**

Nothing in this act shall be construed to prohibit a health care practitioner from practicing that profession within the scope of the health care practitioner's license or certificate or as otherwise authorized by the law, including using the title authorized by the practitioner's licensing act.

**Section 21. Acts outside nonmedical doctor license or certificate.**

(a) **Medical doctor involvement.** In the event the law, including this act, conditions a person's authorization to perform one or more medical services upon medical doctor involvement, and the person performs a covered service without the required involvement, the person shall be deemed to have acted outside the scope of the person's license or certificate.

(b) **Included involvements.** The medical doctor involvement referred to in subsection (a) shall include, but shall not necessarily be limited to, any of the following:

(1) An order.

(2) Direction or supervision.

(3) Presence.

    (4) Immediate availability.

    (5) Referral.

    (6) Consultation.

(c) **Limitation on providing services.** Nothing herein shall be construed as authorizing a health care practitioner or technician to perform any medical service which is not within the scope of that person's practice, as defined by the practitioner's licensing act under which that person is licensed, certificated or registered.

**Section 22. Licenses and certificates; general qualification.**

(a) **Types of licenses and certificates.** The board may grant the following licenses and certificates:

    (1) License without restriction.

    (2) Interim limited license.

    (3) Graduate license.

    (4) Institutional license.

    (5) Temporary license.

    (6) Extraterritorial license.

    (7) Midwife license.

    (8) Physician assistant certificate.

(b) **Qualifications.** The board shall not issue a license or certificate to an applicant unless the applicant establishes with evidence, verified by an affidavit or affirmation of the applicant, that the applicant is of legal age, is of good moral character and is not addicted to the intemperate use of alcohol or the habitual use of narcotics or other habit-forming drugs and that the applicant has completed the educational requirements prescribed by the board and otherwise satisfies the qualifications for the license or certificate contained in or authorized by this act. The board shall not issue a license or certificate to an applicant who has been convicted of a felony under the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or of an offense under the laws of another jurisdiction which, if committed in this Commonwealth, would be a felony under The Controlled Substance, Drug, Device and Cosmetic Act, unless:

    (1) at least ten years have elapsed from the date of conviction;

    (2) the applicant satisfactorily demonstrates to the board that he has made significant progress in personal rehabilitation since the conviction such that licensure of the applicant should not