**National Railroad Passenger Corporation**
**Equipment Condition Report – Map 100**

TRAIN NUMBER _____ LOCOMOTIVE NUMBER _*1074*_ POSITION IN CONSIST _____
USE SEPARATE REPORT FOR EACH UNIT IN CONSIST

Each locomotive unit, self propelled car and turboliner shall be inspected in accordance with CRF Title 49 Parts 229.21, and 238.587, and MAP 101 must be signed.

| SIGNATURE OF EMPLOYEE MAKING DAILY MECHANICAL INSPECTIONS | OCCUPATION | PLACE | DATE | TIME |
|---|---|---|---|---|
| | *MACH* | *Mld* | *3/16* | *5AM* |

TRAIN CONTROL __*050750*__     SEAL NUMBERS
ALERTOR __*024233*__     SPEEDOMETER OVERSPEED __*040186*__
ACSES C.O. COCK __*NA*__     SPEED CONTROL SWITCH _____
     SPEED RECORDER __*834020*__

**CAB SIGNAL / IITS TEST / ACSES TEST**

AMTRAK     BN/SF (IITS)
     F END: __*1*__          R END: _____

C. S. / IITS DEPARTURE TEST _*KC*_          C. S. DAILY OR AFTER TRIP TEST _*KC*_
               Receiver bars OK: _*KC*_
ACSES DEPARTURE TEST _*NA*_          Penalty warning less than 8 sec.: _*KC*_
               ACSES DAILY OR AFTER TRIP TEST _*NA*_

| SIGNATURE OF EMPLOYEE MAKING C.S./IITS TEST: | OCCUPATION | PLACE | DATE | TIME |
|---|---|---|---|---|
| *Kevit Cn* | *mach* | *3/16/01* | *5:25A* |

LOCOMOTIVE INITIAL TERMINAL AIR BRAKE TEST:     F. END: _____     R END: __*Wicket*__

| SIGNATURE OF EMPLOYEE MAKING AIR TEST: | OCCUPATION | PLACE | DATE | TIME |
|---|---|---|---|---|
| | *MACH* | *Mld* | *3/16* | *5AM* |

| SIGNATURE OF SUPERVISOR APPROVING UNIT FOR SERVICE: | OCCUPATION | PLACE | DATE | TIME |
|---|---|---|---|---|
| | | | | |

**CONDITION OF EQUIPMENT**

| | | | |
|---|---|---|---|
| SPEED INDICATOR | | CROSSING BELL | |
| H.E.P./M.A. | | HORN | |
| DYNAMIC BRAKING | | CAB SIGNALS | |
| BRAKES & RIGGING | | SPEED CONTROL | |
| RADIO | | DEADMAN/ALERTOR | |
| SANDERS | | WIPERS | |
| BRAKE PIPE PRESSURE _____ PSI | | MAIN RESERVOIR PRESSURE _____ PSI | |
| RADIO SERIAL NUMBER: F. END | | R. END: | |

| FAILURES ENROUTE | ENGR. INIT. | REPAIRED BY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

THE ABOVE WORK HAS BEEN PREFORMED, EXCEPT AS NOTED, THE REPORT IS APPROVED, AND THIS UNIT IS AVAILABLE FOR SERVICE.

| SIGNATURE OF LOCOMOTIVE ENGINEER | LOCATION | DATE | TIME |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

*USE REVERSE SIDE FOR ADDITIONAL COMMENTS OR DETAILS*

. ·H. Nutter SECRETARY TREASURER
ADDRESS 83 Main Street
Northfield, MA
01360

M. J. Sullivan PRESIDENT
ADDRESS 76 Bianca Road
Duxbury, MA
02332

M. J. O'Bryan LOCAL CHAIRMAN
ADDRESS 23 Stevens Road
Westborough, MA
01581-1429

# Brotherhood of Locomotive Engineers 

| DIVISION   57 |

September 19, 2000

Michael J. O'Malley, Assistant General Manager
MBTA Commuter Operations
National Railroad Passenger Corporation
89 Canal Street
Boston, MA  02110

Dear Mr. O'Malley:

By letters dated February 8 and 9 you advised the following Passenger Engineers that they had
been excessively absent during the month of January:

Christopher L. Barnard          Lawrence S. Goddard          Daniel W. Kelley
Richard M. Bongiorno            Allen J. Gray                Ann Marie LeBlanc
Joseph T. Carmack               Marc E. Grinter             William J. Marsden, Jr.

We suggest that more recent attendance histories of these employees justify reconsideration of
entries to their records. Therefore, regardless of our respective positions regarding application of
the Attendance Policy, and without prejudice to the employees' agreement rights, we propose
that you expunge from their records all references to the incidents that precipitated your February
letters and the ensuing counseling sessions.

Please advise of your position in this matter.

Yours truly,

Michael J. O'Bryan
Local Chairman
Division 57, BLE

copy: claimants



.·H. Nutter SECRETARY TREASURER      M. J. Sullivan PRESIDENT         M. J. O'Bryan LOCAL CHAIRMAN
ADDRESS 83 Main Street              ADDRESS 76 Bianca Road            ADDRESS 23 Stevens Road
       Northfield, MA                      Duxbury, MA                       Westborough, MA
       01360                               02332                             01581-1429



# Brotherhood of Locomotive Engineers

DIVISION 57

September 19, 2000

Michael J. O'Malley, Assistant General Manager
MBTA Commuter Operations
National Railroad Passenger Corporation
89 Canal Street
Boston, MA 02110

Dear Mr. O'Malley:

By letters dated February 8 and 9 you advised the following Passenger Engineers that they had
been excessively absent during the month of January:

Christopher L. Barnard        Lawrence S. Goddard        Daniel W. Kelley
Richard M. Bongiorno          Allen J. Gray              Ann Marie LeBlanc
Joseph T. Carmack             Marc E. Grinter            William J. Marsden, Jr.

We suggest that more recent attendance histories of these employees justify reconsideration of
entries to their records. Therefore, regardless of our respective positions regarding application of
the Attendance Policy, and without prejudice to the employees' agreement rights, we propose
that you expunge from their records all references to the incidents that precipitated your February
letters and the ensuing counseling sessions.

Please advise of your position in this matter.

Yours truly,

Michael J. O'Bryan
Local Chairman
Division 57, BLE

copy: claimants



National Railroad Passenger Corporation, Two South Station, Boston, MA. 02110-2215



October 6, 2000

Mr. Michael J. O'Bryan
23 Stevens Road
Westborough, MA 01581

Dear Mr. O'Bryan:

I have reeived your letter of September 19, 2000, concerning the letters sent to Christopher Barnard, Richard Bongiorono, Joseph Carmac, Lawrence Goddard, Alan Gray, Marc Grinter, Daniel Kelley, Ann Marie LeBlanc and William Marsden, Jr., concerning their excessive absence, as defined in Customer Service Notice no. 99-05 during the month of January, 2000.

I agree that the more recent work history of these employees justifies the expungement of these entries and the ensuing counseling sessions from their records.

Thank you for your attention to this matter.

Sincerely yours,

Michael J. O'Malley
Assistant General Manager – Commuter Operations

October 16, 2000
398 Columbus Ave. #130
Boston, MA 02116

Michael J. O'Malley
Amtrak Asst. General Manager - Commuter Operations
89 Canal St.
Boston, MA 02114

Dear Mr. O'Malley:

It is my understanding that you refuse to meet with me and that you have lost all confidence in me. I'm sorry you feel that way, Mike. Also, I have been told that you believe I promised Mike O'Bryan that I wouldn't write letters or memos to your attention. Why would you think this, Mike? I don't work for Mike O'Bryan. I work for Amtrak Commuter Rail. Who do you work for?

Rest assured that I will do whatever is required to protect the service and the interests of commuter rail engineers.

Sincerely,

Joe Carmack

Joe Carmack

Copy: G. L. DeModena

National Railroad Passenger Corporation, Two South Station, Boston, MA. 02110-2215



October 24, 2000

Mr. Joseph T. Carmack
398 Columbus Avenue
Unit # 130
Boston, Massachusetts 02116

Dear Mr. Carmack:

On October 9, 2000, while you were assigned as engineer of train #923, your poor judgment compromised Amtrak's goal of providing a quality commuter service to the community. By failing to secure knowledge that your locomotive had been properly inspected prior to operating it in active train service, you threatened the integrity of the service and threatened the safety of the public—the very safety which agreement employees are employed to protect. The evidence of your failure has been substantiated, and must not go unchallenged. I am compelled not to hide behind technicalities, but to illuminate your violations of the following rules:

     1. AMT-Rule 3, Engineer's Responsibility, which reads in pertinent part: 3.1 (An engineer) Must Know Locomotive Have Been Inspected; 3.2, Must Know That Locomotive Brakes Are In Operative Condition.

     2. NORAC Rule 952, Qualifications, which reads in pertinent part: At a point where no mechanical forces are on duty, (engine service employees) will check the prescribed form in the cab to be sure that the unit or units of the engine consist have been inspected within the previous calendar day.

     3. NORAC Rules 90, Delay of Trains, which reads in pertinent part:  Employees must not unnecessarily delay trains.

Mr. Carmack, your co-workers and I depend on you. Therefore, it is not my intention to arbitrarily assess and impose discipline. It is, however, my intention to serve you this letter of warning. It is intended not to stigmatize your work record, but to advise you that you are to employ better judgment and compliance with all rules, instructions and policies. My office edition of Webster's dictionary refers to warning as "something that warns or serves to warn," further, it refers to warn as something which serves "to give admonishing advice: to COUNSEL: to call to one's attention." This letter of warning will be maintained in your employee file.

Sincerely yours,

Michael J. O'Malley
Assistant General Manager - Commuter Operations
  Cc:  M. J. O'Bryan, BLE Representative

Dear God,

    We're putting on a play down here.  Wanna help us fill out all the parts?

The Tragedie of
HAMLET
Prince of Commuter Rail

| Characters | Players |
|---|---|
| Claudius, King of Commuter Rail | J. Flaherty (M. O'Malley alternate) |
| Hamlet, son to the late and nephew to the present king | J. Carmack |
| Polonius, lord chamberlain | W. Gagne |
| Horatio, friend to Hamlet | ? (too bad GD couldn't play this) |
| Laertes, son to Polonius | D. Leavitt |
| Rosencrantz | G. L. DeModena |
| Guildenstern | M. J. O'Bryan |
| Fortinbras, prince of Norway | K. Lydon |
| Gertude, queen of Commuter Rail, and mother to Hamlet | A. Berry |
| Ophelia, daughter to Polonius | J. Peals |
| Ghost of Hamlet's Father | W. C. Laxton |

---

    If you were in control, perhaps we'd have the history plays. Most likely you would have ended up with Henry IV parts I and II leading into Henry the V. But since the fall of Adam, I'm in charge and this play has a messy ending more to my liking

Sinisterly,

Lucifer, prince of darkness

Act III, Scene II

Why, look you now, how unworthy a thing you make of me! You would play upon me; you would seem to know my stops; you would pluck out the heart of my mystery; you would sound me from my lowest note to the top of my compass: and there is much music, excellent voice, in this little organ; yet cannot you make it speak. 'Sblood, do you think I am easier to be played on than a pipe? Call me what instrument you will, though you can fret me, yet you cannot play upon me.

Act IV, Scene II

The body is with the king, but the king is not with the body. The king is a thing-

Scene III

King: How dangerous is it that this man goes loose! Yet must not we put the strong law on him: He's loved of the distracted multitude, who like not in their judgement, but their eyes; And where 'tis so, the offender's scourge is weigh'd, But never the offense.

---

ROSENCRANTZ AND GILDENSTERN ARE DEAD!

CERTIFIED MAIL
#7000 0600 0028 6573 2143
Return Receipt Requested
398 Columbus Ave. #130
Boston, MA  02116

Michael J. O'Malley
Amtrak Asst. General Manager
Commuter Operations
89 Canal St.
Boston, MA  02114

Dear Mr. O'Malley:

Please consider this letter as grievance on my own behalf claiming Amtrak is in violation of current Amtrak/BLE agreements as well as applicable state and federal laws. Violations include, but are not limited to, Rule 21 "Discipline and Investigation".

I am in receipt of your letter of October 24, 2000 in which you claim I have violated Amtrak Rules (AMT-Rule 3, NORAC Rule 952 and NORAC Rule 90). In your letter you declare it as a "letter of warning" to be maintained in my employee file. Your letter of October 24 constitutes discipline and as such is a violation of Rule 21 referenced above which reads in part:

> ...no Passenger Engineer will be disciplined, suspended or dismissed until a fair and impartial formal investigation has been conducted by an authorized Corporation officer.

In spite of your assertion to the contrary, the charges listed in your letter are unsubstantiated and false. You are apparently misinformed regarding my job performance on October 9, 2000 and you have arbitrarily assessed and imposed discipline. It is my understanding that you have been advised by the BLE "duly accredited representative" and others that I have been willing to discuss these and any other matters with you at any time, but you have refused to do so.

Therefore, claim is made for eight hours pay at the punitive rate for time spent preparing this letter and claim is made that your above referenced letter of October 24, 2000 be rescinded in writing by Certified Mail "Return Receipt Requested." Furthermore, claim is made that the aforementioned letter be expunged from my employee file.

This claim is made with all due respect; it is in order and it should be allowed. Your prompt attention to this matter will be greatly appreciated and as always I will be glad to discuss this with you at our mutual convenience.

Respectfully,

Joseph T. Carmack

copy:  Francis J. O'Connor
       BLE-57 Members

National Railroad Passenger Corporation, Two South Station, Boston, MA 02110-2215



December 22, 2000

Mr. Joseph T. Carmack
398 Columbus Avenue
Unit # 130
Boston, Massachusetts 02116

Dear Mr. Carmack:

This will acknowledge receipt of your letter, undated, which arrived at this office
on Monday, December 18th, 2000.

In your letter you alleged that Amtrak is in violation of current Amtrak/BLE
agreements... including but not limited to rule 21.

This letter of warning was the result of a good faith negotiation between this
office, you, and your union representative. If you have any questions or concerns
regarding this matter, please confer with BLE Representative Michael J. O'Bryan.

Sincerely yours,

Michael J. O'Malley
Assistant General Manager – Commuter Operations

CERTIFIED MAIL
#7000 0600 0028 6573 2129
Return Receipt Requested
January 9, 2001
398 Columbus Ave. #130
Boston, MA  02116

Michael J. O'Malley
Amtrak Asst. General Manager
Commuter Operations
89 Canal St.
Boston, MA  02114

Dear Mr. O'Malley:

Please consider this letter as grievance on my own behalf claiming Amtrak is in violation of current Amtrak/BLE agreements as well as applicable state and federal laws. Violations include, but are not limited to, Rule 21 "Discipline and Investigation".

I am in receipt of your letter of December 22, 2000. Thank you for acknowledging receipt of my undated letter sent to you by US Certified Mail Article #7000 0600 0028 6573 2143, henceforth referred to as my letter of December 15, 2000. Please consider the current letter as reiteration of the claims made in my letter of December 15. I hereby maintain those grievances. With the current letter I intend to counter your misrepresentation of the facts and discuss application of the Amtrak/BLE agreement with the hope that we can pursue a more amiable agreement and thereby avoid the appeal process and further confusion.

In your letter of December 22, 2000 you make the following claim:

This letter of warning was the result of a good faith negotiation between this office, you, and your union representative.

The following list of facts contradict your claim:

1. No charges were ever filed. At no time was I ever made aware of any charges against me. If there were no charges filed, there was nothing to negotiate.

2. You refused to negotiate. On October 11, 2000, in a discussion with BLE Representative Michael J O'Bryan, Mr. O'Bryan expressed concern that you may be scheduling an investigation concerning my job performance. I mentioned that I thought such action would be discriminatory and that I was nonetheless prepared to confront any questions regarding my performance either in formal investigation or in informal discussion with you or any other employee or member of your staff. Later, on October 13, 2000, Mr. O'Bryan

CERTIFIED MAIL
#7000 0600 0028 6573 2129
Return Receipt Requested
January 9, 2001
. 398 Columbus Ave. #130
Boston, MA 02116

Michael J. O'Malley
Amtrak Asst. General Manager
Commuter Operations
89 Canal St.
Boston, MA 02114

Dear Mr. O'Malley:

Please consider this letter as grievance on my own behalf claiming Amtrak is in violation of current Amtrak/BLE agreements as well as applicable state and federal laws. Violations include, but are not limited to, Rule 21 "Discipline and Investigation".

I am in receipt of your letter of December 22, 2000. Thank you for acknowledging receipt of my undated letter sent to you by US Certified Mail Article #7000 0600 0028 6573 2143, henceforth referred to as my letter of December 15, 2000. Please consider the current letter as reiteration of the claims made in my letter of December 15. I hereby maintain those grievances. With the current letter I intend to counter your misrepresentation of the facts and discuss application of the Amtrak/BLE agreement with the hope that we can pursue a more amiable agreement and thereby avoid the appeal process and further confusion.

In your letter of December 22, 2000 you make the following claim:

This letter of warning was the result of a good faith negotiation between this office, you, and your union representative.

The following list of facts contradict your claim:

1. No charges were ever filed. At no time was I ever made aware of any charges against me. If there were no charges filed, there was nothing to negotiate.

2. You refused to negotiate. On October 11, 2000, in a discussion with BLE Representative Michael J O'Bryan, Mr. O'Bryan expressed concern that you may be scheduling an investigation concerning my job performance. I mentioned that I thought such action would be discriminatory and that I was nonetheless prepared to confront any questions regarding my performance either in formal investigation or in informal discussion with you or any other employee or member of your staff. Later, on October 13, 2000, Mr. O'Bryan

advised me that you refused to meet with me. I have never met with you
regarding any matter whatsoever. This fact alone shows your claim of "good
faith" negotiations to be false.

In addition to your assertion of 'good faith negotiation', in your letter of December
22, 2000 you also requested that I confer with BLE Representative M. J. O'Bryan. I have
conferred with Mr. O'Bryan and the following points made in that conference further
challenge your assertions.

1. Even without an investigation, Mr. O'Bryan proclaimed judgments 2 and 3 in
   your "warning letter" of October 24, 2000 to be without basis.

2. Mr. O'Bryan merely had questions regarding the first judgment in your
   "warning letter" of October 24, 2000 and he agreed that I should have been
   afforded an investigation to confront charges and answer those questions.

3. A "fair and impartial" investigation would have been impossible without
   charging a number of other engineers regarding any questions Mr. O'Bryan had
   concerning judgment No. 1. in your "warning letter" of October 24, 2000.

4. Mr. O'Bryan agreed your "warning letter" or any other discipline relating to my
   job performance on October 9, 2000 would not be allowable because I had not
   been notified of any charges against me within 7 days of the alleged offense.

These four points which were discussed in my conference with Mr. O'Bryan show that
Mr. O'Bryan is in disagreement with your judgments. Indeed, he is legally obligated to
assist in defense against any violation of the BLE agreement or against any charges you or
anyone else may decide to level against me or any other BLE-57 member. This fact and
the fours points listed above further contradict your claim of "good faith" negotiations.

As with your claim that there have been good faith negotiations, your claim that
an alleged "failure has been substantiated" also misrepresents the facts. Such failure can't
be substantiated without a "fair and impartial" investigation and our previous
correspondence shows that I would accept nothing less. On October 9, I communicated
to members of your staff my willingness to discuss problems concerning trains #917 and
#923, but you have refused to meet with me. I am fully prepared to accept my
responsibilities and my willingness to confront the charges you attempt to level against
me is a clear indication of that. You, however, are not willing to fulfill your own
responsibilities to employees or the service. You are unwilling to confront me, because
your judgments are false and discriminatory. Members of your staff, Mr. O'Bryan and I
have been engaged in a sincere attempt to confront and address problems. Rather than
assist us in pursuing the goal of providing a quality service, you are seeking to arbitrarily
assign blame. In doing so, you are neglecting your own responsibility to the service as
outlined in the Amtrak/BLE agreement. Instead, it is my belief that you are attempting to

CERTIFIED MAIL #7000 0600 0028 6573 2129

M. J. O'Mally                                    3                        Januray 9, 2001

harass and retaliate against Mr. O'Bryan and me for standing by the BLE agreement and
sincerely confronting problems with the service.

Therefore, claim is made for eight hours pay at the punitive rate for time spent preparing
this letter and claim is made that your above referenced letter of October 24, 2000 be
rescinded in writing by Certified Mail "Return Receipt Requested." Furthermore, claim is
made that the aforementioned letter be expunged from my employee file.

        This claim is made with all due respect; it is in order and it should be allowed.
Your prompt attention to this matter will be greatly appreciated and as always I will be
glad to discuss this with you at our mutual convenience.

                            Respectfully,

                            Joseph T. Carmack

                            Joseph T. Carmack

copy: BLE-57 Members
      UTU-898 Members
      Francis J. O'Connor - Certified Mail #7000 0600 0028 6573 2105
      L. DePhillips

                    CERTIFIED MAIL #7000 0600 0028 6573 2129

National Railroad Passenger Corporation, 32 Cobble Hill Road, Somerville, MA 02143



January 18, 2001

Mr. Joseph T. Carmack
398 Columbus Avenue # 130
Boston, MA 02116

Dear Mr. Carmack:

This letter will acknowledge receipt of your undated letter, which was received on December 18, 2000. Included was a copy of a prior response to you from Mr. O'Malley, along with a copy of an undated letter addressed to Mr. O'Malley.

Your undated letter of grievance presented to me is outside the boundaries outlined in Rule 20 of the labor agreement. Notwithstanding the foregoing fatal flaw, you offer violation of the law and Rule 21 of the labor agreement. The law and alleged violations of same, are matters for remedy under that forum.

Regarding rule 21, and in address of 'formal' vs informal' and 'counseling' vs. discipline, both you and Mr. O'Malley had exchanged viewpoints. I see no need for embellishment of the carrier's position.

In addition to the above, your claim for eight hours pay at punitive rate for time spent preparing this letter is respectfully declined. There is no contractual foundation for your request

Yours truly,

Francis J. O'Conner Jr.
Director of Manpower Utilization
32 Cobble Hill Road
Somerville, MA 02143

CC:    M.J. O'Malley
       J. N. White
       L.F. DePhillips

AN EQUAL OPPORTUNITY EMPLOYER

CERTIFIED MAIL
#7000 0600 0028 6573 2105
Return Receipt Requested
398 Columbus Ave. #130
Boston MA 02116
February 28, 2001

Mr. Francis J. O'Connor Jr.
Director of Manpower Utilization
Amtrak Commuter Rail
32 Cobble Hill Road
Somerville, MA 02143

Dear Mr. O'Connor:

Thank you for responding to my undated letter (Certified Mail #7000 0600 0028 6573 2136) henceforth referred to as my letter of December 15, 2000. Your response of January 18, 2001 contains some thoughtful considerations including a valid technical objection which I will discuss and satisfy with time claims (copies enclosed). But your letter also raises a few questions of procedure I would like to discuss. In addition, some of the points you raise presume a sequence of events that did not take place. Enclosed is a copy of a letter I sent to Mr. O'Malley dated January 9, 2001 which I hope will bring you up to date on the matter of "informal handling".

You raised a valid point concerning Rule 20 of the BLE agreement, but it seems to me that your point only resolves my claim for pay as compensation. I was asking for further redress: that discipline be rescinded. It could be that in order to receive this specific redress I would supply such a request on a time slip. I would have thought Rule 20 was designed specifically for time claims as in claim for time worked. Indeed, you could make the case that my claim for pay for writing the letter was a claim for "compensation" as Rule 20 reads. In that case, I would have to write the letter along with supplying a time slip in order that you may fully understand the claim. To write the letter on the time slip would be impractical. Couldn't you consider the letter alone as sufficient? In addition, what about my claim that discipline should be rescinded? Do I claim that on the same time slip or a different one? Again, wouldn't the letter be sufficient? I am pleased that you clarify that Rule 20 covers all matters of violation, including Rule 21 and the law, but what if I were merely asking for compliance? Is such a remedy considered as "compensation" under the tenets of rule 20? What do you think?

Regarding Rule 21, you mentioned that I had "exchanged viewpoints" addressing "formal vs. informal' and 'counseling' vs. discipline". Are you aware of those viewpoints? There remain unanswered questions regarding that discussion. As with the case under discussion with Mr. O'Malley at the time, the current matter did not allow for any "informal handling" in accordance with Rule 21. I was never made aware of any charges nor given the opportunity to confront the charges formally or informally. This is

a serious matter to me. I believe Mr. O'Malley's current disregard of my legal rights is intentional and designed as retaliation against me for seeking to have those rights respected. Please note my letter to Mr. O'Malley of January 9, 2001 enclosed with this letter. In my letter I specify my concerns in detail. I hope you are not attempting to imply that I had any opportunity to confront charges before Mr. O'Malley's letter of discipline of October 24, 2000. I have been on record since March of 2000 demanding that right and I would not seek to give it up regarding the current matter.

To return to the matter of compensation, I believe you have contradicted yourself. At the close of your letter you claim "there is no contractual foundation for your request". This statement conflicts with your earlier claim regarding Rule 20: "The law and alleged violations of same, are matters for remedy under that forum." There may be no contractual basis per se, but there is legal basis. Considering that a violation of Rule 21 would represent a breach of contract, I believe I would be entitled to injunctive prayer for relief, including, but not limited to: compensation for damages, pain and suffering, and reasonable attorney's fees. Were we not to avail ourselves of the collective bargaining process, I would have to appeal to the state and federal attorneys general through the respective judiciaries. It only stands to reason we should take advantage of the arbitration process set up by Amtrak and the BLE through the Labor Relations department. But, you go me one step further. You claim that the matter is even covered under Rule 20; in which case, I only need to supply a time slip.

Enclosed, please find copies of time slips I have filed to resolve these matters. To facilitate resolution, I will remind you that these time slips are in order with Rule 20. Given the fact that I was out sick from November to January 25 and including two weeks at the end of October, these time slips are presented with extended time limits in accordance with Rule 20 Paragraph b.

Thank you for your kind consideration of these matters. Should you so desire, I would be willing to discuss them at a mutually convenient time. Indeed, it would be a pleasure.

sincerely,

Joe Carmack

Copies: BlE-57 Members
       Mark Kenny - BLE General Chairman
       M. J. O'Malley
       L. DePhillips



**COMMUTER TRAIN AND ENGINE SERVICE CLAIMS**
PAYROLL / OPERATIONS COPY
CONDUCTOR / ENGINEER WORKING WITH

EMPLOYEE NAME (LAST): CARMACK

| JOB/CODE | AMOUNT | WORK/ORDER |
|---|---|---|
| PM 3.00 | 700 | |

Handwritten notes:
- ON DATES ... 15 MOS THAN ... AIG HT
- OIL WASHING - WATER AUT...
- CREW WM - VIPYATION

TIME WORKED HRS: 08 00 0.3
TOTAL HRS PAY / TOTAL: 08 00

Certified Mail #7000 ᵅ ᵝ 𝟟00000 6695 6536
Return Receipt Requested
February 20, 2001.

Michael J. O'Bryan
BLE-57 Local Chairman
23 Stevens Rd.
Westboro, MA 01581-1429

Dear Brother O'Bryan:

Enclosed, please find copies of correspondences between Mr. M. J. O'Malley and me as well as correspondences between Mr. F. J. O'Connor and me. These letters represent a record of grievance I have with Amtrak regarding the "warning letter" dated October 24, 2000 (copy enclosed) which I received from Mr. O'Malley. In spite of my concern about your own involvement in this matter, I am nonetheless forced to rely on your responsibilities and duties as Local Chairman and "duly accredited representative". It is important that this matter be appealed to labor relations immediately without any extensions.

You have continuously opposed and obstructed my attempts to defend myself in this and other matters even while you recognized the merits in my arguments. Notwithstanding the fact that any discipline on this matter would be discriminatory and a "fair and impartial" investigation would have been impossible for the same reason (a fact to which you admitted on October 11, 2000) you continued to insist that I submit to discipline while I demanded an investigation. You had made up your mind that I should be disciplined when I was not even aware of any charges against me! At the very least, whether there would have been an investigation or not, I should have been notified of whatever charges would be pending against me. But, you colluded with managers to deny me that notification. You had met with management and tried me in absentia without having conducted the slightest investigation or inquiry into the facts. Indeed, it would have been impossible to do so without having any offense to charge me with or defend against. You were asking me to submit to arbitrary discipline for no apparent reason.

Your behavior is entirely inappropriate and outside the bounds of your duties as Local Chairman and outside the bounds of your assignment as "duly accredited representative". I believe you are attempting to silence my voice in BLE-57 to stifle our disagreements. You have positioned yourself as broker of my union privileges in order to deny them to me. The constitution gives you no such power. For the past year I have consistently stood between you and Mr. O'Malley and stood by the Amtrak/BLE agreement and the BLE constitution. I have demanded that Mr. O'Malley comply with his duties to the agreement and that you comply with your constitutional obligations to BLE-57. I will once again remind you of those duties.

When the General Chairman designates you to act as "duly accredited representative" in accordance with Rule 1 of the agreement, it is generally intended that

you will represent the BLE in a manner that assists BLE members. It is not intended that you represent Amtrak or any manager against BLE members. During the week of October 9, 2000, and again more specifically in a meeting with Mr. O'Malley on October 23, 2000 you encouraged Amtrak management to discipline me outside the scope of the BLE agreement and outside your duties as "duly accredited representative". As noted above, I was never notified of any charges pending against me.

Given the betrayals outlined above, you can see why I am concerned about you applying any extensions to appeals. If you go beyond the deadline you can claim technical oversight, misunderstanding or betrayal of verbal agreement on the part of labor relations. Nonetheless, I would be forced to perceive an act of sabotage. Therefore, I will recall your attention to section 36 of the BLE constitution which reads in part:

> Should a member present a grievance to his division for adjustment,
> he shall receive every assistance from the local and general committee...

The pertinent document for my purposes, I believe, would be Mr. O'Connor's letter of January 18, 2001 which I received on January 23, 2001. To be certain, please ensure appeal is made before March 19, 2001. In the meantime, I will apply time claims and a written answer to Mr. O'Connor. Due to an extended absence on medical leave I have an extension on filing the time claims. I'm hoping a written answer to Mr. O'Connor, will assist you with Labor Relations on appeal.

Incidentally (as regards the constitutional duties of the Local Committee) at the November meeting, I was requesting that division business be shared more openly with union members as required by the constitution. I was hoping to begin addressing the apparent conflict of interest that I have outlined above. General Chairman Brother Mark Kenny read from the constitution and proclaimed that if BLE-57 expected you to comply with the constitution you would spend more money. Notwithstanding this threat to squander the treasury, Brother O'Bryan, if you do not feel that you can comply with your duties to members individually or the division as a whole I suggest you step aside and allow us to fill the position of Local Chairman with someone who will perform the office loyally and with respect. In the meantime, if you are going to accept election to the position of Local Chairman, please accept the duties that come with it. Please act on the grievance addressed here promptly in order to schedule appeal with Labor Relations before March 19, 2001. Feel free to call me if you have any questions or require assistance.

respectfully,

*Joe Carmack*

Joe Carmack

Copies:    BLE-57 Members
           Mark Kenny - BLE General Chairman

Certified Mail #7000 3870 0000 6695 6536