UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH T. CARMACK<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION<br><br>Defendant. | Civil Action No. 03 12488 PBS |

**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S STATEMENT OF MATERIAL
FACTS IN SUPPORT OF HIS OPPOSITION TO
NATIONAL RAILROAD PASSENGER CORPORATION'S
STATEMENT OF MATERIAL FACTS**

INTRODUCTION

Defendant National Railroad Passenger Corporation. ("Amtrak") objects to and opposes *Plaintiff Joseph Carmack's Statement of Material Facts in Support of Opposition to Defendant National Railroad Passenger Corporation's Motion for Summary Judgment* on grounds that it does not amount to competent evidence because it contains numerous factual errors, misstatements of fact, and unsupported allegations. Remarkably, a large number of Plaintiff's allegations cite to exhibits which either do not address the issue at hand, or contradict it entirely. Moreover, the allegations which are undisputed either support Amtrak's position in this matter, or are not "material facts" and therefore cannot defeat a ruling for summary judgment on behalf of Amtrak.

LR 56.1 requires oppositions to motions for summary judgment to "include a concise

statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Most significantly, LR 56.1 states that the moving party's statements will be deemed "to be admitted by opposing parties unless controverted by the statements required to be served by opposing parties." Plaintiff has failed to provide support for many of his statements. Hence, they do not meet the requirement of LR 56.1 and those unsupported statements cannot serve to contradict or undermine Amtrak's Statement of Material Facts.

Furthermore, it is well established that "[g]enuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991); Garside at 48. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." See Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996) (citations omitted).

Additionally, Plaintiff's Statement of Material Facts cannot support Plaintiff's cross motion for summary judgment because all the alleged material facts are controverted by evidence supporting Amtrak's Statement of Undisputed Material Facts or attachments referenced herein.

### REBUTTAL OF PLAINTIFF'S STATEMENT OF MATERIAL FACTS

The following consists of a paragraph by paragraph refutation of Plaintiff's Statement of Material Facts, with cites to existing exhibits and two new exhibits (attached to this pleading) showing why Plaintiff's Opposition cannot defeat Amtrak's Motion for Summary Judgment or adequately support Plaintiff's Counter (Cross) Motion for Summary Judgment. Amtrak begs the

Court's patience on this laborious set of objections which are necessary, in part, to undercut the unfairly prejudicial effect that these largely spurious and unfounded allegations might otherwise have.

π SMF
¶ #     Amtrak Commentary

1. This paragraph about Plaintiff's early history at Amtrak is not supported by any competent evidence, e.g. an affidavit or any sworn testimony. Moreover, it is irrelevant to the issues in Amtrak's Motion for Summary Judgment.

2. This paragraph about Plaintiff's history of emotional disorders in 1985 should not be permitted because it violates this Court's Order dated June 29, 2005 which prevented Amtrak from seeking and obtaining any such psychological information prior to January 1, 1999. *See* Order, page 7. Plaintiff cannot oppose the disclosure of such information in discovery and then ambush Amtrak by using the information for his own advantage subsequently. Moreover, Plaintiff's emotional status in 1985 is not relevant to the issues in this litigation or Amtrak's motion for summary judgment. Furthermore, these allegations are not supported by competent evidence since Plaintiff cites to notes from his psychiatrist who did not begin treating him until ten years later, to correspondence with his supervisor at Amtrak which does not provide any such information, and to his own supplemental answers to Amtrak's interrogatories numbers 13 and 14 which also do not provide such information.

3. This paragraph about his alleged interactions with his Commissary supervisor in 1985 and his psychiatrist's correspondence about his medical leave of absence at that time should not be considered for the same reasons described with respect to Paragraph 2.

4. This paragraph about his treatment from 1986 to the present should not be considered for

the same reasons described with respect to Paragraph 2 except the undisputed fact that he has been treating with Dr. Gurian since 1999, the time frame deemed relevant by the Court.

5. This paragraph provides a broad history of Plaintiff's psychiatric treatment and its effect on his employment by Amtrak since 1985. Again, this has no relevance to Amtrak's Motion for Summary Judgment or the issues in this case. Moreover, with respect to the application of these statements to the time frame authorized to be addressed by the Court, i.e. 1999 to the present, Plaintiff has not supported these allegations with any competent evidence from his psychiatrist. Rather, he merely makes self-serving statements to which he as a layman cannot attest, e.g. "[w]ithout treatment, Plaintiff's symptoms become chronic and he is unable to work," and "[e]xtreme confidentiality is required for the treatment to be successful." With respect to the last sentence, he also cites to the notes from his current psychiatrist which state, "I agree with Mr. Carmack that a forced non-confidential psychiatric examination would be inadvisable for medical reasons," (5/30/01 note) and "[i]n the past, I advised Mr. Carmack that a forced non-confidential psychiatric consultation, because of its coercive and intrusive nature, would be medically harmful to him..." (4/4/02 note). These do not support Plaintiff's statement in paragraph 5. Moreover, as shown in Amtrak's Statement of Material Facts, the proposed psychiatric fitness for duty exam would have been entirely confidential, with the sole exception that it would have been provided to Amtrak's Medical Department which is not permitted to disseminate it to Plaintiff's Department or other non-legal employees of Amtrak. SMF ¶¶ 27, 28, 85.

6. This paragraph about his transfer to a position as a locomotive engineer is not relevant to

any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, the only evidentiary support to which he cites is his Declaration which was not produced to Amtrak. Therefore these allegations must be disregarded.

7. This paragraph about his transfer in 1997 is also not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint.

8. This paragraph about Mr. DeModena's history of employment in the railroad is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint.

9. This paragraph about the MBTA's award of the commuter rail contract to Amtrak is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, there is no citation to any evidentiary support for this claim and it must therefore be disregarded.

10. This paragraph about Amtrak and MBTA endeavors in the 1990's is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, the only evidentiary support to which he cites is his Declaration which was not produced to Amtrak. Therefore these allegations must be disregarded.

11. This paragraph about Mr. DeModena and Mr. Laxton is replete with false statements and not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Rather, it has been inserted apparently solely for the inappropriate and unfairly prejudicial purpose of trying to smear the reputation of Mr. DeModena. Furthermore, Plaintiff supports these false allegations by citing to Amtrak's Statement of Material Facts, ¶3. Said paragraph merely indicates that Mr. DeModena was a road foreman who trained and supervised engineers. It does not provide any support for the false statements about his discharge, an event which never occurred. Amtrak Exhibit A, 2nd affidavit of Mr.

O'Malley, ¶1.

12. This paragraph about changes in the staffing of Amtrak management positions is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint.

13. This paragraph about Mr. DeModena is replete with false statements and not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Rather, it has been apparently inserted solely for the inappropriate and unfairly prejudicial purpose of trying to smear the reputation of Mr. DeModena. Furthermore, Plaintiff cites only to his Declaration for evidentiary support of these false allegations. Nonetheless, Plaintiff's Declaration was not produced to Amtrak. Therefore these allegations must be disregarded. Mr. DeModena was never fired from his position as a road foreman at Amtrak. Amtrak Ex. A ¶1.

14. Amtrak does not deny that Mr. DeModena was a road foreman in January 1998 whose many responsibilities at that time included the supervision of certification of south side engineers, one of whom was Plaintiff.

15. This paragraph about Mr. DeModena's class work is replete with false statements and is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. In fact, it is never referenced as support for any of Plaintiff's arguments in his Opposition to Amtrak's Motion for Summary Judgment. Consequently, its inclusion in Plaintiff's *Statement* must be intended to distract the Court from the issues in this case and to poison the Court against Mr. DeModena by implying that he has somehow betrayed Plaintiff. Furthermore, to the extent this paragraph is somehow found to be relevant to any of the Counts in Plaintiff's Complaint, it is important to note that its factual support consists only of two notes in Exhibit 15 to his Opposition concerning Mr. DeModena's alleged

6

interest in reading some of Plaintiff's essays. Significantly these documents were never previously produced despite Amtrak's Request for Production of Documents which sought all documents that support the eight enumerated counts in Plaintiff's Second Amended Complaint. Consequently, they cannot be used now to ambush Amtrak.

16. Amtrak does not dispute that Plaintiff worked on the north side between early 1998 and May 2000 and that there was little contact, if any, between him and Mr. DeModena. Nevertheless, Amtrak does not understand how these facts have any bearing on the issues in this civil action.

17. This paragraph about absenteeism issues among Amtrak employees in the winter of 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. It also contains a misstatement of fact when he alleges that, "[t]he engineers who were out of work due to illness received reprimands." Plaintiff has no competent evidence in support of this inflammatory and misleading allegation, merely citing to his own self-serving letters from that period of time, rather than providing specific evidentiary support such as names, medical records, and discipline histories for those who supposedly suffered this mistreatment. Consequently, these allegations must be disregarded.

18. Amtrak does not dispute that Mr. O'Bryan was the chairman of the union Local at that time.

19. This paragraph about how the Chairman of the Union Local wanted to handle the absenteeism issues in of 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Moreover, the exhibits to which Plaintiff's cite do not corroborate the statement in this paragraph and therefore it must be disregarded.

20. This paragraph about Plaintiff's internal union dispute with the Local Chairman on how

to address the absenteeism issue in 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint.

21. This paragraph about the book <u>Power Plays</u> is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. It does not matter what motivated Plaintiff to write the <u>Hamlet</u> parody in the "Letters from Hell." The only relevant issue in this case is what Amtrak's managers and Dr. Pinsky knew about the document and what they understood it to signify in April and May 2001. They saw it as a threatening document and took the appropriate precautionary action in accordance with Amtrak's Workplace Violence policy. SMF ¶¶ 57, 59, 71, 77, 163.

22. This paragraph about Plaintiff's correspondence with Amtrak's manager, Mr. O'Malley, in 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, Plaintiff has offered no competent evidence to support this allegation and it must therefore be disregarded.

23. It is irrelevant whether members of the Labor Relations Department assisted Mr. O'Malley in the drafting of letters concerning Plaintiff. Furthermore, there is no support in the exhibits cited by Plaintiff for his statement that "many managers consulted with Mr. O'Bryan and complained about Plaintiff's letters to Mr. O'Bryan." While Amtrak does not dispute that Mr. O'Bryan testified that he recalled that Mr. O'Malley had complained about the letters concerning the absenteeism issue, and that Mr. DePhillips had probably also complained of same, and that Mr. O'Bryan had occasionally warned Plaintiff to discontinue the exchange of letters, these facts have nothing to do with Plaintiff's claims of defamation, invasion of privacy, disability discrimination, religious discrimination, violation of his civil rights, or his claims under FELA and for the

intentional infliction of emotional distress and should be disregarded with respect to these Counts in his complaint. Additionally, these facts do not serve to create genuine issues of fact with respect to the other Counts in Plaintiff's Complaint for the reasons set forth in Amtrak's Memorandum in Support of Its Motion for Summary Judgment.

24. This paragraph about counseling of engineers about attendance matters is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, the only evidentiary support to which he cites is his Declaration which was not produced to Amtrak. Therefore these allegations must be disregarded.

25. This paragraph about Plaintiff's meeting with Mr. DeModena in May 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, Plaintiff's only evidentiary support for this statement is his Exhibit 57, which he describes as a "transcript" of his conversation with Mr. DeModena. It is not a transcript because this conversation was not recorded, nor does Plaintiff suggest that it was. Rather, this document is merely a self-serving account that Plaintiff wrote at an unspecified date subsequent to the meeting. In addition, it is not a sworn statement and therefore cannot serve as evidence to contradict Amtrak's Motion for Summary Judgment.

26. This paragraph about Plaintiff's alleged conversation on May 16, 2000 with Mr. DeModena is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, the only evidentiary support to which he cites is his Declaration which was not produced to Amtrak. Therefore these allegations must be disregarded.

27. This paragraph about Plaintiff's viewing of a movie of <u>Hamlet</u> is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. It does not matter what

motivated Plaintiff to write the Hamlet parody in the "Letters from Hell." The only relevant issue in this case is what Amtrak's managers and Dr. Pinsky knew about the document and what they understood it to signify in April and May 2001. They saw it as a threatening document and took the appropriate precautionary action in accordance with Amtrak's Workplace Violence policy. SMF ¶¶ 57, 59, 71, 77, 163. Furthermore, the only evidentiary support to which he cites is his Declaration which was not produced to Amtrak. Therefore these allegations must be disregarded.

28. This paragraph about Plaintiff's viewing of the movie Godzilla 2000 and a review of same is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. It does not matter what motivated Plaintiff to include the Godzilla information in the "Letters from Hell." The only relevant issue in this case is what Amtrak's managers and Dr. Pinsky knew about the document and what they understood it to signify in April and May 2001. They saw it as a threatening document and took the appropriate precautionary action in accordance with Amtrak's Workplace Violence policy. SMF ¶¶ 57, 59, 71, 77, 163. Furthermore, the only evidentiary support to which Plaintiff cites is his Declaration which was not produced to Amtrak. Therefore these allegations must be disregarded.

29. This paragraph about Plaintiff's internal union dispute with the Local Chairman on how to address grievances in 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Therefore these allegations must be disregarded.

30. This paragraph about the resolution of the union's dispute with management concerning reprimands for absenteeism is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Therefore these allegations must be disregarded.

31. This paragraph about Plaintiff's discussions with the Local Chairman regarding whether

he would be disciplined for his misconduct on October 9, 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Although the incident of October 9th is mentioned in some of the documents in the "Letters from Hell" the only relevant matter is the undisputed fact that Dr. Pinsky found elements of the package of documents to be threatening and therefore took the appropriate precautionary action in accordance with Amtrak's Workplace Violence policy. SMF ¶¶ 57, 59, 71, 77, 163. Therefore these allegations must be disregarded.

32. This paragraph about Plaintiff's discussions with the Local Chairman regarding whether he would be disciplined for his misconduct on October 9, 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint as mentioned in Paragraph 31. Therefore these allegations must be disregarded.

33. This paragraph about Plaintiff's meeting with Mr. DeModena on October 9, 2000 includes misstatements of fact and is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint as mentioned in Paragraph 31. Moreover, Plaintiff has not cited to any competent evidence to support his perspective of what transpired. Rather, he merely cites to a self-serving letter he wrote on 4/4/01 that does not even say what is alleged in this paragraph. Therefore these allegations must be disregarded.

34. This paragraph about Plaintiff's discussions with the Local Chairman regarding whether he would be disciplined for his misconduct on October 9, 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint as mentioned in Paragraph 31. Therefore these allegations must be disregarded.

35. This paragraph about Plaintiff's discussions with the Local Chairman regarding whether he would be disciplined for his misconduct on October 9, 2000 includes misstatements of

fact and is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint as mentioned in Paragraph 31. Moreover, his allegation is contradicted by the sworn testimony of Mr. O'Bryan. Exhibit B, Deposition I of Mr. O'Bryan at 33, 63-64. Therefore these allegations must be disregarded.

36. This paragraph about Plaintiff's discussions with the Local Chairman regarding whether he would be disciplined for his misconduct on October 9, 2000 includes misstatements of fact and is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint as mentioned in Paragraph 31. Moreover, his allegation is contradicted by the sworn testimony of Mr. O'Bryan. Ex. B, Deposition I of Mr. O'Bryan at 33; 63-64. Therefore these allegations must be disregarded.

37. This paragraph about his letter to Mr. O'Malley of October 16, 2000 includes misstatements of fact and is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint as mentioned in Paragraph 31. Moreover, his allegation is contradicted by the sworn testimony of Mr. O'Bryan. Ex. B, Deposition I of Mr. O'Bryan at 66-68. Furthermore, the meaning of one of the phrases in the letter, "was to be copied to Mr. DeModena," is entirely lacking. Therefore these allegations must be disregarded.

38. This paragraph about Plaintiff's illness in October 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, Plaintiff cites to his Exhibit 60 as evidentiary support for this allegation, but that document offers no such corroboration. Therefore these allegations must be disregarded.

39. This paragraph about alleged communications between Plaintiff and Mr. O'Bryan in October 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's

Complaint. Moreover, he cites as evidence Mr. O'Bryan's letter of March 11, 2001 (Amtrak Ex. 14) which does not support the allegations. In addition, the only other support to which he cites is his only self-serving diatribe written to Mr. O'Bryan on April 4, 2001 which is an unsworn statement. Therefore these allegations must be disregarded.

40. This paragraph about documents that allegedly were attached to his October 16, 2000 letter to Mr. O'Malley contains substantial false statements without any competent supporting evidence. The letter itself, which can be found in Amtrak's Exhibit 22, the "Letters from Hell," makes no reference to any enclosures or to other documents that Plaintiff may be bringing to Mr. O'Malley's attention. Furthermore, Mr. O'Bryan's letter of March 11, 2000, Amtrak's Ex. 14, never states that Amtrak ever received or was even aware of the existence of the Godzilla document and the Shakespeare parody, as is implied in this allegation. Amtrak's original exhibits in support of its Motion for Summary Judgment contain sworn statements from Mr. DeModena(¶8-9), Mr. Rae (¶4), and Dr. Pinsky (¶18) that they never saw this document prior to April 10, 2001. Furthermore, Mr. O'Malley has submitted a new affidavit which confirms that he never saw the <u>Hamlet</u> parody until Mr. DeModena brought it to his attention on April 10, 2001 or shortly thereafter. Amtrak Ex. A, ¶1. Plaintiff has no competent evidence from any source to refute the above-mentioned testimony. Therefore Plaintiff's allegations in this Paragraph must be disregarded and there can be no genuine issue of dispute that Amtrak did not become aware of these documents until April 11, 2001.

41. This paragraph about the use of the term "God" to refer to union representatives is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. The only relevant issue in this case is what Amtrak's managers and Dr. Pinsky knew about the

document and what they understood it to signify in April and May 2001. The evidence shows that they saw it as a threatening document purportedly written by the devil, and therefore took the appropriate precautionary action in accordance with Amtrak's Workplace Violence policy. SMF ¶¶ 57, 59, 71, 77, 163. No evidence has been produced in this matter showing that Mr. DeModena, Mr. O'Malley, or Dr. Pinsky knew that the word "God" had sometimes been used by BLE members as a nickname for Mr. O'Bryan. Mr. O'Malley has testified that he was unaware of this occasional practice until the Amtrak hearing on Plaintiff's insubordination in the spring of 2002. Amtrak Ex. A ¶4. Furthermore, Plaintiff has offered no competent evidence in support of the allegations in this paragraph. He merely cites to Mr. O'Bryan's deposition. However, Mr. O'Bryan testified that he knew of no such tradition and was only aware that union members would occasionally call him God. Ex. B, Deposition I of Mr. O'Bryan at 152-157. Therefore these allegations must be disregarded.

42. This paragraph about Mr. O'Malley's warning letter to Plaintiff due to the events of October 9, 2000 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Therefore these allegations must be disregarded.

43. There is no dispute that Plaintiff was on medical leave in that time frame.

44. This paragraph about Plaintiff's communications during his leave of absence is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, Plaintiff cites to no evidentiary support for these statements. Therefore these allegations must be disregarded.

45. This paragraph about Plaintiff's communications with Mr. O'Malley in late January 2001 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint.

Furthermore, Plaintiff cites to no evidentiary support for these statements. Therefore these allegations must be disregarded.

46. This paragraph about Plaintiff's letter to Mr. O'Bryan of February 20, 2001 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, Plaintiff cites to no evidentiary support for these statements. Therefore these allegations must be disregarded.

47. This paragraph about Plaintiff's meeting with Mr. DeModena in March 2001 is replete with false statements and is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. In fact, Plaintiff cites to no evidentiary support for these statements. Moreover, Plaintiff's statement that he "told Mr. DeModena that Plaintiff was a Christian," is contradicted by Plaintiff's own sworn testimony in his deposition that he told Mr. DeModena that he was a "Southern Baptist atheist." Amtrak SMF ¶169; Ex. 55 at 429. Additionally, Plaintiff's deposition testimony on the subject of religion shows that he is not a Christian or a religious person. SMF ¶172. Therefore these allegations must be disregarded.

48. This paragraph about Mr. O'Bryan's letter to Plaintiff of March 11, 2001 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Therefore these allegations must be disregarded.

49. This paragraph about the history behind Plaintiff's alleged reply to Mr. O'Bryan's letter of March 11, 2001 is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. It does not matter what motivated Plaintiff to write the "Letters from Hell." The only relevant issue in this case is what Amtrak's managers and Dr. Pinsky knew about the document and what they understood it to signify in April and May 2001. They

saw it as a threatening document and took the appropriate precautionary action in accordance with Amtrak's Workplace Violence policy. SMF ¶¶ 57, 59, 71, 77, 163. Furthermore, Plaintiff cites to no evidentiary support for these statements. Therefore these allegations must be disregarded.

50. This paragraph about the alleged dissemination of Plaintiff's "Letters from Hell" is not supported by citations to any evidence in violation of LR 56.1. It is also not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. It does not matter how Plaintiff disseminated the "Letters from Hell." The only relevant issue on this point is whether Mr. DeModena was surprised to find the document on his desk as he described in his Workplace Violence report and in his declaration. Plaintiff's comments about how he distributed the document do not in any way contradict Mr. DeModena's statements which therefore must be accepted as valid. Therefore these allegations must be disregarded.

51. Amtrak does not dispute Plaintiff's description of the contents of the "Letters from Hell."

52. Amtrak does not dispute Plaintiff's description of the contents of the "Letters from Hell."

53. Amtrak does not dispute Plaintiff's description of the contents of the "Letters from Hell."

54. This paragraph about the alleged revision and dissemination of Plaintiff's "Letters from Hell" is not supported by citations to any evidence in violation of LR 56.1. It is also not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. It does not matter how Plaintiff disseminated or revised the "Letters from Hell." The only relevant issue on this point is whether Mr. DeModena was surprised to find the document on his desk as he described in his Workplace Violence report and in his declaration. Plaintiff's comments about how he distributed or revised the document do not in any way contradict