Mr. DeModena's statements which therefore must be accepted as valid. Therefore these allegations must be disregarded.

55. This paragraph about Amtrak's scheduling of its transportation managers is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Furthermore, Plaintiff cites to no evidentiary support for these statements. Therefore these allegations must be disregarded.

56. This paragraph about who had the keys to the office shared by Mr. DeModena and Mr. Rae in April 2001 is replete with false statements and is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. The only relevant issue on this point is whether Mr. DeModena was surprised to find the document on his desk as he described in his Workplace Violence report and in his declaration. Plaintiff's comments about who had keys to the office do not in any way contradict Mr. DeModena's statements which therefore must be accepted as valid. There is no proof that the door was not left open or unlocked at various times. In fact, Plaintiff cites to no evidentiary support at all for these statements in violation of LR 56.1. Therefore these allegations must be disregarded.

57. This allegation about who left the "Letters from Hell" on Mr. DeModena's desk is not based upon anything other than pure speculation by Plaintiff as can be seen from the fact that Plaintiff cites to no evidentiary support at all for these statements in violation of LR 56.1. Moreover, it is irrelevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. The only relevant issue on this point is whether Mr. DeModena was surprised to find the document on his desk as he described in his Workplace Violence report and in his declaration. Even if one of these transportation managers put the document on the desk, which Amtrak denies and can disprove, does not in any way

17

contradict Mr. DeModena's statements which therefore must be accepted as valid. As a result Plaintiff's allegations in this Paragraph must be disregarded.

58. Amtrak does not dispute that Mr. DeModena found the "Letters from Hell" on his desk on April 11, 2001 and contacted Mr. O'Malley soon thereafter.

59. This allegation about Mr. O'Malley viewing the "Letters from Hell" several days before April 11, 2001 is patently false, as indicated in the attached second affidavit from Mr. O'Malley. Amtrak Ex. A. Moreover, Plaintiff cites to no evidentiary support at all for this statement in violation of LR 56.1. Therefore this allegation must be disregarded.

60. This paragraph about Mr. DeModena's communications with Mr. O'Malley contains false and misleading statements. Mr. DeModena and Mr. O'Malley have never testified that Mr. DeModena "wanted to make a workplace violence complaint against the Plaintiff." Furthermore, Plaintiff cites to no evidentiary support for these statements. Therefore these allegations must be disregarded.

61. This paragraph about Mr. O'Malley's reaction to Mr. DeModena's concerns contains false and misleading statements. Mr. O'Malley never testified that the "Letters from Hell" did not warrant workplace violence proceedings or that these documents did not constitute a threat. To the contrary, Mr. O'Malley testified at the Amtrak hearing that he instructed Mr. DeModena to forward information concerning Mr. DeModena's concerns to the TART committee. Amtrak Ex. 24 at 196-198. Mr. O'Malley's second affidavit affirmatively states his perspective on this matter. Amtrak Ex. A ¶3. Furthermore, Plaintiff cites to no evidentiary support for his allegations which must therefore be disregarded.

62. This paragraph about Mr. O'Malley's comments to Mr. DeModena contains false and

misleading statements. Mr. O'Malley did not testify at the Amtrak hearing as indicated by Plaintiff. Rather, he merely informed Mr. DeModena about proper procedure for addressing workplace violence concerns. Amtrak Ex. 24 at 196-198; Amtrak Ex. A ¶3. Therefore these allegations must be disregarded.

63. This paragraph about Mr. DeModena's interactions with Mr. DePhillips contains false and misleading statements. There has been no testimony that Mr. DeModena returned the workplace violence report form that he had filled out to Mr. DePhillips. Furthermore, Plaintiff cites to no evidentiary support for these statements. Therefore these allegations must be disregarded.

64. Amtrak does not dispute that Mr. DeModena wrote threat on his Workplace Violence report and that he felt threatened by the "Letters from Hell."

65. This paragraph about Mr. DeModena's comments in the workplace violence report contains false and misleading statements because Mr. DeModena's comments therein were not limited to the "Hamlet God/Lucifer letter". Amtrak does not dispute that Mr. DeModena correctly ascribed the words of Lucifer in the "Letters from Hell" to Plaintiff. Amtrak Ex. 21.

66. Amtrak does not dispute the contents of this paragraph.

67. This paragraph about Mr. DeModena's meeting with Plaintiff on October 9, 2000 concerns contains false and misleading statements because Mr. DeModena did speak to Plaintiff about his conduct on that date. Amtrak Ex. 2 ¶7. Furthermore, Plaintiff cites to no evidentiary support for these statements. Therefore these allegations must be disregarded.

68. This paragraph misrepresents the contents of Mr. DeModena's Workplace Violence

Report in which he mentions receipt of a compilation of letters and documents, but specifically only describes his concerns about the Hamlet parody. Amtrak Ex. 21.

69. [There is no paragraph 69 in Plaintiff's Statement of Material Facts]

70. This paragraph about Mr. DeModena's employment as a locomotive engineer is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Therefore these allegations must be disregarded.

## AMTRAK MEDICAL PROTOCOLS AND PROCEDURES

71. This paragraph about Amtrak's instructions to its outside medical examiners is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Therefore these allegations must be disregarded.

72. This paragraph is incomplete and ambiguous. Nonetheless, its subject matter is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Therefore these allegations must be disregarded.

73. This paragraph about the contents of Amtrak's Medical Guidelines is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Moreover, the text alleged to be contained on page 17 of Plaintiff's Exhibit 4 does not exist. Therefore these allegations must be disregarded.

74. This paragraph about some of the contents of Amtrak's Medical Protocols and Procedures is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. In particular, pages 4 through 5 concern guidelines for physical, not mental or psychiatric, examinations. Therefore these allegations must be disregarded.

75. The source of this paragraph concerning the Health Services Manager has not been identified. Amtrak produced hundreds of pages of existing and proposed medical

guidelines and protocols. Amtrak lacks knowledge as to whether this page emanates from actual or proposed guidelines and protocols or some other source. Moreover, even if it is a legitimate document that reflects an actual policy or guideline, it is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. Therefore these allegations must be disregarded.

76. Amtrak does not dispute that it has a policy of adhering to federal, state, and local laws governing the collection, retention, and disclosure of official employee personnel and medical information.

77. Amtrak does not dispute that this paragraph contains portions of Amtrak's policy regarding access to employee personnel and medical information.

78. The source of this segment of this paragraph in quotations, concerning seeking further medical information from an employee, has not been identified. Amtrak produced hundreds of pages of existing and proposed medical guidelines and protocols. Amtrak lacks knowledge as to whether this page emanates from actual or proposed guidelines and protocols, from one of Amtrak's regions other than the one that includes Boston, or some other source. Moreover, even if the phrases placed within quotes emanate from a legitimate document that reflects an actual policy or guideline pertinent to Amtrak's New England Division in 2001, this information is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint. The remainder of this paragraph consists of Plaintiff's vague and ambiguous commentary for which no authority is given. Therefore these allegations must be disregarded.

79. This text is taken from a proposed medical procedures manual that was never completed. Moreover, even if the phrases placed within quotes had emanated from a legitimate

document that reflects an actual policy or guideline followed by Amtrak in 2001, this information is not relevant to any of the issues in Amtrak's Motion or in Plaintiff's Complaint because Plaintiff was not an individual "returning to duty from disability." Furthermore, the comment that "[w]here appropriate, the examiner attempts to obtain pertinent information from the examinee's personal physician..." is not relevant here because Dr. Vasile was never able to commence his exam, and therefore never got far enough to consider conferring with Plaintiff's psychiatrist. There is no evidence from anyone at Amtrak or Dr. Vasile that he would not have eventually contacted Plaintiff's psychiatrist before providing his conclusions to Amtrak. Therefore these allegations must be disregarded.

## MEDICAL DISQUALIFICATION OF PLAINTIFF

80. Amtrak does not dispute that Mr. DePhillips contacted Amtrak's Health Services and sent the most threatening and troubling pages of the "Letters from Hell" to Ms. Letterio.

81. This paragraph about the actions of Mr. DeModena and Mr. DePhillips contains misstatements of fact. Furthermore, Plaintiff cites to no evidentiary support for these statements. Since Mr. DeModena has filed a sworn affidavit which contradicts the first phrase in Plaintiff's paragraph, these allegations must be disregarded.

82. This paragraph about Mr. DePhillips allegedly changing his mind about whether the "Letters from Hell" constituted a threat is false. In fact neither document cited to by Plaintiff states, nor even suggests, that Mr. DePhillips "no longer assessed a threat." To the contrary, Mr. DePhillips testified at length at the Amtrak hearing that he found the "Letters from Hell" to be troubling, disturbing, and threatening. Amtrak Ex. 24 at 257, 259, 261.

83. This paragraph about Mr. DeModena's response to further commentary by Mr. DePhillips on April 12, 2001 is misleading to the extent that it implies what Plaintiff alleges in Paragraph 82, and it assumes too much from Mr. DeModena's diary entry. Mr. DeModena does not say that he was disappointed in Mr. DePhillips, or that Mr. DePhillips had changed his mind. Rather, Mr. DeModena merely observes that Mr. DePhillips was considering the facts from some new perspectives. Mr. DePhillips' subsequent e-mail of April 13, 2001 (Exhibit 25) and his testimony at the Amtrak hearing clearly refute that he had changed his mind that the "Letters from Hell" were threatening.

84. This paragraph erroneously states that the TART included a member of Amtrak's Law Department. Several sworn statements of the members of the TART contradict this allegation which does not cite to any evidentiary support. Therefore these allegations must be disregarded.

85. This paragraph is a flagrant misrepresentation of the testimony of the TART members at the Amtrak hearing. Captain Smith and Ms. Allan never made such a statement and never gave their personal opinions as to whether the "Letters from Hell" were threatening. Amtrak SMF 24 at 144-146; 230-232. Moreover, Plaintiff's allegation is contradicted by the sworn affidavits of Inspector Smith and Ms. Allan. SMF ¶¶59, 62, 69. Furthermore, Plaintiff does not cite to any evidentiary support. Therefore, the allegations in this paragraph must be disregarded.

86. This paragraph consists of erroneous conclusions about whether there was basis to discipline or medically disqualify Plaintiff. These conclusions are unsupported by the very pages of the Amtrak hearing transcript to which Plaintiff cites.[1] Hence, these

---

[1] He actually cites to Amtrak's Exhibit 25, which is a single page document. Presumably Plaintiff intended to cite to Ex. 24.

23

allegations must be disregarded.

87. This paragraph misrepresents Mr. DePhillips' views as expressed in his testimony at the Amtrak hearing, although it is undisputed that he stated that he found the entire packet of documents disturbing.

88. This paragraph consists merely of a self-serving interpretation of Mr. DePhillips' e-mail of April 13, 2001 based upon conjecture and surmise. There is nothing in the document itself, nor in anyone else's testimony, to support the idea that Mr. DePhillips was trying to persuade anyone about how to address Plaintiff's writings. Rather, Mr. DePhillips merely outlined one course of action (which, incidentally, was not followed by Dr. Pinsky) and the consequences if Plaintiff were to refuse to cooperate. No one could know at that time that Plaintiff would be so foolish as to repeatedly ignore orders from his supervisor, despite being warned by Mr. O'Malley and Mr. O'Bryan of the dire consequences of doing so. SMF ¶¶ 90, 102, and 105. Hence, Plaintiff's allegations in this paragraph must be disregarded.

89. This paragraph makes no sense. Mr. O'Malley did not and could not make the decision for Plaintiff to undergo a psychiatric fitness for duty examination. Dr. Pinsky, the only person with such authority, required Plaintiff to undergo the evaluation. Moreover, Plaintiff cites to Dr. Vasile's letter of April 2, 2002, which makes no such statement. Therefore, Plaintiff's allegations in this paragraph must be disregarded.

90. For the same reasons described above in response to Plaintiff's allegations in paragraph 88, these wild allegations have no evidentiary support, consist only of self-serving assumptions, and must be disregarded.

91. For the same reasons described above in response to Plaintiff's allegations in paragraph

88 and 90, these wild allegations have no evidentiary support, consist only of self-serving assumptions, and must be disregarded.

92. This paragraph consists of a false allegation that Mr. DePhillips spoke with Ms. Letterio on April 11, 2001 and faxed her selected pages of the "Letters from Hell" on that day. At no time in his testimony at the Amtrak hearing did Mr. DePhillips state that he sent Ms. Letterio these documents on that date. Moreover, there is no evidence or testimony from anyone to corroborate Plaintiff's allegations. Hence, this allegation must be disregarded.

93. There is no dispute that Ms. Allan contacted Ms. Letterio by e-mail on May 3, 2001 and asked for a response from Health Services to Mr. DePhillips' April 13, 2001 e-mail.

94. This paragraph again consists entirely of self-serving conjecture and surmise as to what Ms. Letterio thought. There is nothing in the record to indicate that the TART wanted Dr. Pinsky to order a psychiatric exam. Moreover, Dr. Pinsky did not "oblige" the TART, because he chose a different course of action, i.e. medical disqualification, instead of an in-service examination. Since Plaintiff's allegations have no basis in evidence, they must be disregarded for purposes of Amtrak's motion for summary judgment.

95. This paragraph again distorts the facts in the record, as shown by the exhibit to which it purportedly relies. Mr. O'Malley did not disqualify Plaintiff medically or otherwise. In this document, Mr. O'Malley merely reported that Dr. Pinsky had medically disqualified Plaintiff pending a fitness for duty exam. Mr. O'Malley then informed Plaintiff that, as a result, he was removed from service with pay. Amtrak Ex. 27.

96. This paragraph contains unsupported allegations that Mr. O'Bryan had no authority from Plaintiff to speak with Dr. Pinsky. It was Mr. O'Bryan's role as the chairman of the union local to represent his brethren. Moreover, O'Bryan testified that no confidential

medical information was provided to him. Additionally, Dr. Pinsky's notes of May 7, 2001 (Amtrak's Exhibit 57), to which Plaintiff cites, makes no reference to comments by Dr. Pinsky to Mr. O'Bryan that Dr. Pinsky suspected Plaintiff of having a "severe psychiatric disorder" or "personality disorder, bi-polar disorder, etc." Dr. Pinsky merely mentioned at the Amtrak hearing that these were thoughts that he had when he decided to medically disqualify Plaintiff. Since Plaintiff's allegations have no basis in evidence, they must be disregarded for purposes of Amtrak's motion for summary judgment.

97. This paragraph cites only to Amtrak's Position Statement to MCAD of March 2002 which does not support any of these false allegations. These statements are particularly disingenuous because Plaintiff knew as early as May 8, 2001, due to the conversation between Mr. O'Bryan and Dr. Pinsky, that he was medically disqualified pending a fitness for duty examination due to the troubling nature of the "Letters from Hell." SMF ¶76. While there is no dispute that Plaintiff continued to seek information from Dr. Pinsky, there is also no dispute that he took this action because he disagreed with the basis for Amtrak's decision. Hence, these allegations must be disregarded.

98. There is no dispute that Mr. O'Malley sent Plaintiff a letter instructing him to meet with Dr. Vasile to undergo a psychiatric fitness for duty exam on June 4, 2001. Rather disingenuously, Plaintiff argues that he was not ordered to undergo the exam because there are no words to that effect in the letter. Nonetheless, a reading of the text in the context of recent events indicates that an order was clearly implied.

99. This paragraph contains false and unsupported allegations concerning the nature of Plaintiff's letter to Dr. Pinsky dated May 24, 2001 (presumably he meant 2001, not 2005 as he wrote in this paragraph). A review of this letter, part of Amtrak's Ex. 30, shows

that Plaintiff was not seeking information regarding the purpose of the exam, but was seeking the legal and medical basis for his medical disqualification. Hence, there is no support for these allegations and they must be disregarded.

100. Amtrak does not dispute that Plaintiff's psychiatrist wrote on May 30, 2001 that Plaintiff has been able to work since January 2001.

101. This paragraph contains numerous misstatements of fact that are unsupported by competent evidence. First, on June 8, 2001, not June 15, 2001, Mr. O'Malley ordered Plaintiff to see Dr. Vasile. Amtrak Ex. 34. Second, it is not clear whether Plaintiff's psychiatrist advised him not to submit to the examination that Dr. Vasile intended to conduct. She merely supported *Plaintiff's* description of what was to occur, i.e. "a forced non-confidential psychiatric consultation." Ex. 56. She may not have known that Amtrak's policy limits the dissemination of Dr. Vasile's observations and conclusions to Health Services. Also Plaintiff states that Ms. Letterio told him that Dr. Pinsky would not respond to Plaintiff's request for his medical file. Plaintiff provides no evidentiary support for this allegation which is contradicted by the sworn testimony of Dr. Pinsky, and Ms. Letterio's note about sending the file to Plaintiff on June 4, 2001. Amtrak Ex. 7 at ¶¶ 28, 29; Ex. 31. Therefore, these statements must be disregarded with respect to Amtrak's Motion for Summary Judgment.

102. This paragraph contains a number of unsupported allegations concerning Mr. O'Bryan's efforts to assist Plaintiff after he was medically disqualified pending a psychiatric fitness for duty exam. Plaintiff cites only to Amtrak's Ex. 59 which consists of two letters written in May 2001 from Mr. O'Bryan to Mr. O'Malley. There are no requests for "special accommodations," for Plaintiff to be afforded an interview with the TART, or

27

for an exact description of the requirements for an exam. Therefore these allegations must be disregarded with respect to Amtrak's Motion for Summary Judgment.

103. This paragraph consists of two conclusory allegations for which he offers no competent evidence, merely citing to his union representative's letters of May 2001. First, Plaintiff knew very well what his alleged "transgression" was because he had been informed about Mr. O'Bryan's conversation with Dr. Pinsky on May 8, 2001. SMF ¶80. Second, Dr. Pinsky had concerns about Plaintiff's ability to perform his job safely due to the "Letters from Hell." Hence, these allegations cannot be seen as established facts, and must be disregarded.

104. This paragraph consists of an unsupported allegation that Plaintiff told Mr. O'Malley that he did not want to discuss medical matters with anyone but the medical department. The only document cited by Plaintiff does not make this statement. As a result, this paragraph must be disregarded.

105. [There is no paragraph 105 in Plaintiff's document]

106. This paragraph is replete with false and unsupported allegations. Mr. O'Malley never warned Mr. Carmack that, if he continued making special requests and did not submit to the psychiatric exam in its entirety, he would be charged with insubordination and terminated for failure to provide information on a previous medical condition. Rather, Mr. O'Malley merely instructed Mr. Carmack on several occasions that his refusal to undergo the fitness for duty examination would constitute insubordination for which discipline up to and including termination could be assessed. Amtrak Ex. A ¶5. Not surprisingly, the documents cited to by Plaintiff do not support these allegations which must therefore be disregarded.

107. This paragraph also contains substantial misstatements of fact. Nowhere in Amtrak's Ex. 54, or anywhere else for that matter, does Mr. O'Malley state that he does not believe that Plaintiff was impaired. Furthermore, he did not state in his letter of May 15, 2001 that it was obvious that Plaintiff was mentally impaired. Rather, after quoting Rule 25B of the CBA, Mr. O'Malley explained the basis for Dr. Pinsky's decision to medically disqualify Plaintiff and how this was in keeping with other practices, except that Amtrak made Plaintiff whole by volunteering to pay Plaintiff while he was held out of service. Furthermore, Mr. O'Malley had refuted this allegation in his first affidavit. Amtrak Ex. 26. Therefore these false allegations must be disregarded.

108. This paragraph makes a number of allegations concerning his communications with Dr. Vasile that are completely unsupported by the document to which he cites. Ex. 44 is Dr. Vasile's letter of April 2, 2002 which refutes most of the allegations in Plaintiff's paragraph 108. Hence, these allegations must also be disregarded.

109. This paragraph contains a variety of allegations, none of which are supported by Plaintiff's cite to page 413 of the Amtrak hearing transcript (Ex. 24).[2] Therefore, all of these allegations must be disregarded with respect to Amtrak's Motion for Summary Judgment.

110. This paragraph grossly overstates Plaintiff's testimony at the Amtrak hearing in which he made no comments that the detrimental effect of the exam would be so strong as to "sabotage" his treatment. Moreover, Plaintiff lacks the professional expertise to be able to comment on the effect of the exam on his treatment. Therefore, this self-serving comment must be disregarded.

---

[2] He actually cites to Amtrak's Exhibit 25, which is a single page document. Presumably Plaintiff intended to cite to Ex. 24.

111. Amtrak does not dispute that Plaintiff's employment was terminated and his MCAD case dismissed on May 13, 2002.

112. This paragraph contains allegations for which there is no reference to supporting evidence. Furthermore, there is no evidence in the record that Mr. DeModena ever implied that Plaintiff placed the "Letters from Hell" on his desk. Additionally, as previously mentioned, the identity of the person who placed the documents on the desk is not relevant to the issues in Amtrak's Motion for Summary Judgment. Hence, these allegations must be disregarded.

113. This paragraph misstates the testimony of Mr. O'Bryan and Mr. DeModena and is irrelevant to the issues in Amtrak's Motion for Summary Judgment and must therefore be disregarded. Ex. 24 at 165-166, 187, 297.

114. This paragraph contains allegations for which there is no reference to supporting evidence. Furthermore, it is irrelevant to the issues in Amtrak's Motion for Summary Judgment and must therefore be disregarded.

115. This paragraph distorts the well justified actions taken by Mr. DeModena in August and September 2002 in response to Plaintiff's unusual inquiries about keys to Mr. DeModena's office. Moreover, for afore-mentioned reasons, and the fact that this incident took place months after Plaintiff was discharged, these allegations are irrelevant to this civil action and to Amtrak's Motion for Summary Judgment. Hence these allegations must be entirely disregarded.

116. Again this paragraph presents only self-serving allegations from Plaintiff about his inquiries about keys to Mr. DeModena's office in August 2002 that are completely irrelevant to the issues in Amtrak's Motion for Summary Judgment.

117. Amtrak does not dispute that Mr. O'Malley sent Plaintiff a letter on August 20, 2002 forbidding him from entering employee-only areas of the property at North and South Stations. Plaintiff's Ex. A. However, there is no basis for Plaintiff to say that fear of arrest prevented him from filing time claims. Not only does Plaintiff not cite to any evidence in support of this allegation, but it is simply untrue. Plaintiff could have continued to file his time claims in person at the information booth, by mail, or through his union representative or other Amtrak employees. Amtrak Ex. A ¶6. Hence these allegations must be disregarded.

118. For the afore-mentioned reasons, these allegations are irrelevant to this civil action and to Amtrak's Motion for Summary Judgment, and must be disregarded.

119. This paragraph consists of allegations that have no relevance to the eight counts of legal claims brought by Plaintiff against Amtrak in his Second Amended Complaint. He alleges that the decision of the Public Law Board regarding the appeal by him and the BLE of his discharge was too late and therefore the discipline must be expunged. However, Plaintiff makes no such allegation in his Complaint. Moreover, Plaintiff has brought a claim before this Court (Civil Action No. 05-10185 PBS) pursuant to the Railway Labor Act for judicial review of the Public Law Board's decision. That is the appropriate case and forum for hearing this particular allegation and all of the allegations in this paragraph must be disregarded.

120. This paragraph concerns matters between Plaintiff and the Massachusetts Bay Commuter Railroad Co. ("MBCR"), a defendant in another lawsuit brought by Plaintiff before this Court (Civil Action No. 05-11430 PBS). These allegations have no relevance to Amtrak's Motion for Summary Judgment and must be disregarded.

121. This paragraph concerns matters between Plaintiff and MBCR, as described in paragraph no. 120, which have no relevance to Amtrak's Motion for Summary Judgment and must be disregarded.

122. This paragraph consists of Plaintiff's interpretations of handwritten notes on documents produced from Mr. Rae's files. No one, including Mr. Rae has ever testified to the author of said notes or to what they signify. Moreover, even if these notations reference Mr. Rae's opinions about Plaintiff's allegations in his internal Amtrak EEO complaint, they do not serve as evidence as to what action was taken by, and the motivations of, Mr. DeModena, Mr. O'Malley, Dr. Pinsky, and the members of the TART committee and therefore have no bearing on the issues in Amtrak's Motion for Summary Judgment. Therefore, for all of the above reasons, the allegations in this paragraph must be disregarded.

123. Plaintiff makes a number of allegations in this paragraph which are unsupported by citation to any evidence. Furthermore, even if this information had competent evidentiary support, the writings of Amtrak's Charging Officer during the time frame of the internal Amtrak hearing is irrelevant to the issues in Amtrak's Motion for Summary Judgment, as explained in ¶122. Hence, the allegations in this paragraph must be disregarded.

124. Similar to ¶122, this paragraph consists of Plaintiff's interpretations of handwritten notes on documents produced from Mr. Rae's files. For the reasons expressed in ¶122, this document cannot serve as competent evidence and is irrelevant to the issues in Amtrak's Motion for Summary Judgment. Therefore, the allegations in this paragraph must be disregarded.

125. Similar to ¶122, this paragraph consists of Plaintiff's interpretations of handwritten notes on documents produced from Mr. Rae's files. For the reasons expressed in ¶122, this document cannot serve as competent evidence and is irrelevant to the issues in Amtrak's Motion for Summary Judgment. Therefore, the allegations in this paragraph must be disregarded. Nonetheless, Amtrak does not deny that Plaintiff was out of service from September 10, 2001 until the decision to terminate his employment because he was insubordinate, not because he was ill.

126. Similar to ¶122, this paragraph consists of Plaintiff's interpretations of handwritten notes on documents produced from Mr. Rae's files. For the reasons expressed in ¶122, this document cannot serve as competent evidence and is irrelevant to the issues in Amtrak's Motion for Summary Judgment. Therefore, the allegations in this paragraph must be disregarded.

127. Similar to ¶122, this paragraph consists of Plaintiff's interpretations of handwritten notes on documents produced from Mr. Rae's files. For the reasons expressed in ¶122, this document cannot serve as competent evidence and is irrelevant to the issues in Amtrak's Motion for Summary Judgment. Therefore, the allegations in this paragraph must be disregarded.

128. Similar to ¶122, this paragraph consists of Plaintiff's interpretations of handwritten notes on documents produced from Mr. Rae's files. For the reasons expressed in ¶122, this document cannot serve as competent evidence and is irrelevant to the issues in Amtrak's Motion for Summary Judgment. Therefore, the allegations in this paragraph must be disregarded. Nonetheless, Amtrak does not deny that Plaintiff's removal from service was the direct result of his medical disqualification by Dr. Pinsky, not because of any

        decision by Mr. O'Malley.

129.    Similar to ¶122, this paragraph consists of Plaintiff's interpretations of handwritten notes on documents produced from Mr. Rae's files. For the reasons expressed in ¶122, this document cannot serve as competent evidence and is irrelevant to the issues in Amtrak's Motion for Summary Judgment. Therefore, the allegations in this paragraph must be disregarded.

130.    Similar to ¶122, this paragraph consists of Plaintiff's interpretations of handwritten notes on documents produced from Mr. Rae's files. For the reasons expressed in ¶122, this document cannot serve as competent evidence and is irrelevant to the issues in Amtrak's Motion for Summary Judgment. Therefore, the allegations in this paragraph must be disregarded.

## CONCLUSION

For the afore-mentioned reasons, there are no allegations in Plaintiff's Statement of Material Facts in Opposition to Amtrak's Motion for Summary Judgment that serve to undermine or invalidate Amtrak's Statement of Material Undisputed Facts. Consequently, Plaintiff's Statement of Material Facts in Opposition to Amtrak's Motion for Summary Judgment cannot serve as the basis of a denial of Amtrak's Motion for Summary Judgment.

Similarly, for the afore-mentioned reasons, there are no material undisputed facts in Plaintiff's Statement of Material Facts in Opposition to Amtrak's Motion for Summary Judgment that can serve as the basis for granting Plaintiff's Counter (Cross) Motion for Summary Judgment.

Respectfully Submitted
**DEFENDANT,**
National Railroad Passenger Corporation,
By its attorneys,

DATED:    February 14, 2006

s/Stephen E. Hughes
John A. Kiernan (BBO No. 271020)
Stephen E. Hughes (BBO No. 629644)
Bonner Kiernan Trebach & Crociata, LLP
One Liberty Square - 6th Floor
Boston, MA 02109
(617) 426-3900

## Certificate of Service

I, Stephen E. Hughes, hereby certify that I have, on February 14, 2006, served a true copy of the foregoing document by first class mail, postage prepaid, to Plaintiff Joseph Carmack at 398 Columbus Ave., PMB 130, Boston, MA 02116-6008.

s/Stephen E. Hughes
Stephen E. Hughes